Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
drichard@sessions.legal
*Attorneys for Defendant Transworld Systems, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSWORLD SYSTEMS, INC.,<br><br>Defendant. | Case No.   5:18-cv-04081-BLF<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Defendant Transworld Systems Inc. ("Defendant") respectfully submits this Memorandum of Points and Authorities in support of Defendant's Motion for Summary Judgment as to this entire case initiated by Plaintiff Oskar Lizarraga-Davis ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56.

**I.      INTRODUCTION**

Federal District Courts have "seen an infestation of debtors using the FDCPA as a sword, not a shield. Some even seek to turn their own failure to pay into profit, repeatedly."

~*Bogue v. NCO Fin. Sys., Inc.,* No. C14-5799 RBL, 2014 WL 6886690, at *2 (W.D. Wash. Dec. 4, 2014), aff'd, 687 F. App'x 536 (9th Cir. 2017).

This is a case in point.

Plaintiff is a well-paid physician's assistant at Hazel Hawkins Memorial Hospital in Hollister, California. Plaintiff's career success was a result of his enrollment at University of California-Davis ("UC-Davis")—enrollment which was funded at least in part by a $25,000 student loan now owing National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4"), with an unpaid balance of $32,942.66.

Plaintiff does not deny that he applied for, obtained, and later defaulted on his $25,000 student loan used for his enrollment at the UC-Davis. Rather, Plaintiff asserts a specious "show the note" theory, claiming only that his current student loan creditor NCSLT 2006-4, and its servicer, Defendant, do not maintain sufficient documentation to show proof of ownership of his student loan. (First Amended Complaint ("FAC") ¶¶ 11, 33.) Plaintiff is wrong.[1]

It is also important at the outset to define clearly what this case is, and is not, about. This case is about a very specific issue—Plaintiff's student loan owing to NCSLT 2006-4. This case is not about past alleged practices which are the subject of the Consent Order, Admin. Proceeding No. 2017–CFPB–0018 (Consumer Financial Protection Bureau ("CFPB") Sept. 18, 2017) *available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf ("Consent Order"). (RJN Ex. 1; First Amended Complaint ("FAC") ¶¶ 16-17)—a judicially-noticeable public record which Plaintiff claims to attach to the FAC, but does not.

---

[1] *See generally e.g. Nat'l Collegiate Student Loan Tr. 2005-3 v. Dunlap,* 2018-Ohio-2701, ¶¶ 12, 21, ___ N.E.3d ___, available at 2018 WL 3360825, as well as unreported cases *Mock v. Nat'l Collegiate Student Loan Tr. 2007-4,* No. 01-17-00216-CV, 2018 WL 3352913, at *1 (Tex. App. July 10, 2018) and *Nat'l Collegiate Student Loan Tr. 2007-2 v. Villalva,* No. 1 CA-CV 17-0449, 2018 WL 2979358 (Ariz. Ct. App. June 14, 2018) for proposition that NCSLT entities serviced by Defendant maintain sufficient proof to prevail in breach of contract actions.

The only period covered by the Consent Order was from "November 1, 2014 to April 25, 2016." (RJN, Ex. 1, at ¶¶ 2, 15, m ("Relevant Period").) Defendant consented to entry of the Consent Order with the CFPB, "without admitting or denying any of the findings of fact or conclusions of law." (*Id.* at ¶ 2; Declaration of Bradley Luke ("Luke Decl.") ¶ 10.) However, the alleged collection activity in Plaintiff's Complaint begins "[s]ometime in early 2017." (FAC ¶ 18.) Plaintiff's loan account was not subject to the Consent Order. (Luke Decl. ¶¶ 9-12.)

During and after the CFPB investigation, Defendant conducted a review of all NCSLT 2006-4 accounts, including Plaintiff's, and determined that Plaintiff's account was not subject to the Consent Order. (*Id.*)

This lawsuit is part of a student loan debt avoidance scheme whereby the defaulted student loan borrower sues in federal court, falsely alleging FDCPA violations, in retaliation for the filing of state-court complaint for breach of contract on the underlying student loan. Plaintiff falsely attempts to boot-strap his alleged claims to the prior CFPB action. Summary judgment is warranted.

## II. STATEMENT OF UNDISPUTED FACTS

On June 10, 2006, Plaintiff applied for a student loan with GMAC Bank, N.A. in order to fund his enrollment UC-Davis. The terms of the student loan provided that the creditor "may assign this Credit Agreement at any time." (Luke Decl. ¶ 13, Ex. 1)

On June 26, 2006, the student loan was approved and $25,000.00 in student loan funds were disbursed to Plaintiff exclusively for the purposes of Plaintiff's enrollment at UC-Davis. None of the loan proceeds were returned or refunded. (*Id.* at ¶ 14, Ex. 2.)

On December 7, 2006, Plaintiff's student loan was then transferred, sold, and assigned to NCSLT 2006-4 for valuable consideration, in the ordinary course of the securitization process. The student loan was in good standing and not in default on

December 7, 2006, when it was assigned to NCSLT 2006-4, as Plaintiff was still enrolled at UC-Davis and the student loan had not yet become due. (*Id.* at ¶ 15.)

The assignment of the student loan to NCSLT 2006-4 was made pursuant to the Pool Supplement and Deposit and Sale Agreement. Upon assignment, the Credit Agreement and Note Disclosure Statement were simultaneously transferred to NCSLT 2006-4. (*Id.* at ¶ 16, Exs. 3-4.)

Between December 2009 and March 2014, Plaintiff acknowledged the transfer of the student loan, in writing, and requested seven (7) separate deferments from NCSLT 2006-4's servicer. (*Id.* at ¶ 17, Ex. 5.)

On February 27, 2010, the loan servicer sent Plaintiff a letter on behalf of NCSLT 2006-4 acknowledging one of his deferment requests and his updated enrollment to Foothill College, the header on the first page of the letter stated, "National Collegiate Trust." (*Id.* at ¶ 18, Ex. 6.)

Prior to his default, and refusal to pay, Plaintiff made several payments on his student loan, with the last payment posted on February 13, 2015. (*Id.* at ¶¶ 19-20, Exs. 7-8.) After February 13, 2015, Plaintiff failed to make another payment on his student loan, and an unpaid balance of $32,726.55 remains due and owing to NCSLT 2006-4. (*Id.* at ¶ 21.)

Defendant is the current "servicer," "agent and Service Provider," "servicing [] the student loan owned by" NCSLT 2006-4 to which Plaintiff remains obligated. (FAC ¶¶ 7-11, 16-17; RJN, Ex. 1 at ¶¶ o, 12, 14.)

As a result of the CFPB investigation and the CFPB Order, Defendant conducted a separate review of all NCSLT 2006-4 accounts, including Plaintiff's, and determined that Plaintiff's account was not subject to the Consent Order.

On May 6, 2017, Plaintiff was sued in state court by NCSLT 2006-4; however, the lawsuit was voluntarily-dismissed without prejudice "on or around late April 2018." (Compl. ¶ 34.)

Plaintiff's student loan account is not subject to the Consent Order for the following reasons:

a)   At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintained complete documentation that NCSLT 2006-4 owns Plaintiff's student loan;

b)   At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintained a complete chain of assignment evidencing that Plaintiff's student loan was transferred to and is owned by NCSLT 2006-4;

c)   Plaintiff's student loan was transferred and assigned to NCSLT 2006-4 shortly after Plaintiff originated the loan and prior to any payment becoming due; and

d)   At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently NCSLT 2006-4 maintains sufficient evidence to prove that Plaintiff's student loan debt exists and is in default.  (Luke Decl. at ¶ 12.)

### III.   LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.,* 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party has the burden of establishing that there is no dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona,* 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 252 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

## IV.   ARGUMENT

Plaintiff alleges a single-count FDCPA claim. There are four elements to an FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o. *Turner v. Cook,* 362 F.3d 1219, 1226-27 (9th Cir. 2004).

Plaintiff alleges Defendant "falsely represented the character, amount, or legal status of a debt," "threatened to take [] action that cannot legally be taken or that is not intended to be taken," and "used a false or deceptive means to collect or attempt to collect a debt," in violation of 15 U.S.C. § 1692e. (FAC ¶ 48.) Plaintiff's allegations are entirely premised on his theory that "documentation to prove the alleged debt . . . is owed to NCSLT 2006-4 does not exist." (FAC ¶ 33.)

NCSLT 2006-4's records maintained by Defendant are sufficient to prove ownership and enforceability of the student loan debt. *See e.g. Dunlap,* 2018-Ohio-2701, ¶¶ 12, 21, ___ N.E.3d ___, available at 2018 WL 3360825 (holding that NCSLT established standing in its action seeking to recover on a defaulted college loan from a borrower who challenged NCSLT's standing on the basis that it failed to establish a proper assignment from the original lender). In upholding the grant of summary judgment in *Dunlap,* the Court of Appeals of Ohio, Fourth District, noted:

> NCSLT filed a motion for summary judgment, supported by an affidavit of an employee of the subservicer of the student loan, which

is the designated custodian of records for the loan. NCSLT also included documentation attempting to establish NCSLT's standing to collect on the loan, the loan default, and the amount due on the loan. . . . The trial court granted NCSLT's motion for summary judgment . . . [a]ttached to and incorporated into the employee's affidavit were copies of other records, including: (1) a letter by the U.S. Bank National Association, in its capacity as the special servicer for various student loan trusts, including NCSLT, confirming that [TSI] is its subservicer for NCSLT and is the dedicated records custodian for all student loans owned by the trust . . . the pool supplement agreement . . . Schedule 1 of the pool supplement . . . Schedule 2 of the pool supplement . . . .

*Id.*

Here, the FAC *admits* that Defendant was, at all times relevant, acting in its capacity as a "service[r]," "agent and Service Provider," "servicing [] the student loan owned by" NCSLT 2006-4 to which Plaintiff remains obligated. (FAC ¶¶ 7-11, 16-17; RJN, Ex. 1 at ¶¶ o, 12, 14.) At all times relevant, Defendant was acting in its capacity as "the loan servicer and designated Custodian of Records for Plaintiff's student loan owing to NCSLT 2006-4." (Luke Decl. at ¶ 1.) Therefore, Defendant is not a "debt collector" under the statute. 15 U.S.C. § 1692a(6). Based on the Pool Supplement and Deposit and Sale Agreement, NCSLT 2006-4 was assigned Plaintiff's student loan prior to Plaintiff's default and before any payments were due. (*Id.* at ¶¶ 12(c), 15.) The FDCPA states that a "debt collector" does not include any person collecting on any debt owed or due to the extent such activity "concerns a debt which was not in default at the time it was obtained by such person." *Id.* If an entity, as assignee of a debt, acquired the debt prior to the debt being in default, then the entity is not considered a "debt collector" under the FDCPA. *See Harmon v. GE Money Corp.,* 2010 WL 2219345, *6 (E.D. Cal. June

1, 2010). The legislative history of the FDCPA "indicates conclusively that a debt collector does not include the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id.* at *6.

The "not in default" exception applies to servicers of student loans. *Brenner v. Am. Educ. Servs.,* 2014 WL 65370, *2 (E.D. Mo. Jan. 8, 2014); *Weber v. Great Lakes Educ. Loan Servs., Inc.,* 2014 WL 1683299 (W.D. Wis. Apr. 29, 2014); *Edmond v. Am. Educ. Servs.,* 2010 WL 4269129, *1 (D. D.C. Oct. 28, 2010); *Edler v. Student Loan Mktg. Ass'n,* 1993 WL 625570, *1 (D. D.C. Dec. 13, 1993) ("Because Elder's loans were not in default when EduServ began to service them . . . the FDCPA is inapplicable to EduServ as a matter of law.") *Edmond* is instructive and directly on point. 2010 WL 4269129, *1 (D. D.C. Oct. 28, 2010). In *Edmond,* the defendant serviced the student loans. *Id.* The plaintiff claimed the defendant violated the FDCPA in its attempts to collect on the debt. *Id.* In rejecting the plaintiff's claim, the Court concluded that "[a]bsent an allegation that plaintiff's loan was in default" when the defendant began servicing, the defendant "is not a debt collector and thus is not subject to the FDCPA." *Id.* at *5.

Here, Plaintiff's FDCPA claim fails as a matter of law because, as Plaintiff admits, Defendant is the servicer for the NCSLT 2006-4, and is therefore not a "debt collector." *See* 15 U.S.C. § 1692a(6)(F)(iii). This admission not only derives from the FAC, but also the judicially-noticeable Consent Order which Plaintiff expressly relies upon. (FAC ¶¶ 7-11, 16-17; RJN, Ex. 1 at ¶¶ o, 12, 14.) The Consent Order upon which Plaintiff expressly relies, repeatedly refers to Defendant as the servicer for NCSLT 2006-4. (*Id.*) *See also Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 ("The legislative history of section 1692a(6) [defining debt collector] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); *Radford v. Wells Fargo Bank,* No. 10–

00767, 2011 WL 1833020, at *15 (D. Haw. May 13, 2011) (original lender, transferee Wells Fargo, nominee MERS, and mortgage servicer are not "debt collectors" under FDCPA); *Lai v. Quality Loan Serv. Corp,* No. 10–2308, 2010 WL 3419179, at *2 (C.D. Cal Aug. 26, 2010) (lender's beneficiary MERS and servicing agent not debt collectors within FDCPA).

*Even if* the FDCPA were to apply to Defendant in its role as a servicer to NCSLT 2006-4, the alleged claim still fails. The state-court lawsuit, was filed by a California law firm, on behalf of NCSTL 2006-4. Plaintiff fails to specifically allege any collection activity by Defendant, let alone anything false or misleading under the Ninth Circuit's objective "Least Sophisticated Debtor" standard when based on the admittedly defaulted student loan.

Plaintiff accuses Defendant of "making false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(a)(5), and the "use of [a] false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10), all based on the theory that Defendant "does not have adequate records to prove [the] cases in court" or that the records "do[] not exist." (FAC ¶¶ 11, 33.)

However, other federal district courts have already rejected this attempt to convert common evidentiary challenges into FDCPA violations. In *Delisi v. Midland Funding, LLC,* No. 4:14CV2125 RWS, 2015 WL 4393901, at *7 (E.D. Mo. July 16, 2015), the federal district court reasoned:

> Delisi's allegations also do not amount to a . . . violation of the FDCPA. Even when construing the allegations in the light most favorable to Delisi, the complaint merely suggests that when Midland filed the state court suit, it did not have the evidence necessary to succeed at trial . . . A plaintiff's desire, and any associated legal strategy, to obtain a favorable judgment as inexpensively or expeditiously as possible is not

improper, nor is it a FDCPA violation.  As the Eighth Circuit has explained, although the FDCPA applies to litigation collection efforts, care must also be taken to preserve the judicial remedies of creditors.

*Id.* (citing *Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814, 818 (8th Cir. 2012).)

As set forth above, and in the declaration in support of this motion, Defendant has proven that it maintains as a Custodian of Records the requisite evidence which would enable to NCSLT 2006-4 to prevail in the state-court litigation.

## V. CONCLUSION

There is no genuine issue of material fact.  Defendant complied with all provisions of the FDCPA, if applicable, and therefore is entitled to judgment.  The Court should grant Defendant's motion for summary judgment.

Dated:  January 18, 2019          SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.

*/s/Damian P. Richard*
Damian P. Richard
Attorneys for Defendant
Transworld Systems, Inc.