Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
drichard@sessions.legal
*Attorneys for Defendant*
*Transworld Systems Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS, | ) Case No.   5:18-cv-04081 |
| Plaintiff; | ) DEFENDANT TRANSWORLD |
| | ) SYSTEMS INC.'S DECLARATION |
| vs. | ) IN SUPPORT OF MOTION FOR |
| | ) SUMMARY JUDGMENT |
| TRANSWORLD SYSTEMS, INC., | ) |
| Defendant. | |

I, Bradley Luke, hereby affirm and declare as follows:

1.      I am employed by Transworld Systems Inc. (hereinafter "TSI"), a servicer for National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4"), pertaining to the student loan forming the subject matter of this action filed by plaintiff,  Oskar Lizarraga-Davis  ("Plaintiff").    TSI is the loan servicer and designated Custodian of Records for Plaintiffs student loan owing to NCSLT 2006-4. TSI maintains loan history records for NCSLT 2006-4.

2.      I am over the age of 18 and competent to testify to the matters stated herein. I am the Director of Operations for TSI. I am duly authorized to make the representations contained in this declaration for and on behalf of both TSI and NCSLT 2006-4.

3.      As a loan servicer and Custodian of Records for NCSLT 2006-4, TSI maintains the dedicated system of records pertaining to NCSLT 2006-4 student loans on NCSLT 2006-4's behalf, including, but not necessarily limited to, student loan applications and agreements, loan origination and assignment documents, disbursements, payments, credits, deferments, interest accrual, collections, and any other records or transactions that could impact the servicing of the student loan.

4.      TSI replaced NCSLT 2006-4's prior servicer, the Pennsylvania Higher Education Assistance Agency, who conducts its student loan servicing operations commercially as American Education Services ("AES").  In addition to maintaining the NCSLT 2006-4's loan servicing system, TSI also maintains real-time, electronic access to the loan servicing records of AES.   TSI employees, including myself, receive education and training on the AES loan servicing system and how to view and retrieve AES servicing records.

5.      It is a regularly-conducted business practice of NCSLT 2006-4 to incorporate the loan origination and AES servicing records into the NCSLT 2006-4 business records, and NCSLT 2006-4 relies on the accuracy of these records in the ordinary course of its student loan business.

6.      These student loan records referenced below and attached as exhibits to this Declaration were created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record.  Such records are created, kept, maintained, and relied upon in the course of the ordinary and regularly conducted business activity of NCSLT 2006-4 and TSI as servicer and Custodian of Records for NCSLT 2006-4.

7.    I have reviewed the student loan records described in this declaration.

**The CFPB Consent Order**

8.    On September 14, 2017, TSI entered a Stipulation and Consent to the to the Issuance of a Consent Order with the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau ("CFPB").   The CFPB Consent Order is cited at 1M 12-15 of Plaintiffs' First Amended Complaint ("FAC"). (Dkt. 23.)

9.    The period covered by the Consent Order was from November 1, 2014 to April 25, 2016.

10.    TSI entered the Consent Order without admitting or denying any wrongdoing.

11.    During and after the CFPB investigation TSI conducted a review of all NCSLT 2006-4 accounts, including the student loan account pertaining to Plaintiff, and determined that Plaintiff's account was not subject to the Consent Order.

12.    Plaintiff's student loan account is not subject to the Consent Order for the following reasons:

a. At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintained complete documentation that NCSLT 2006-4 owns Plaintiff's student loan;

b. At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintained a complete chain of assignment evidencing that Plaintiff's student loan was transferred to and is owned by NCSLT 2006-4;

c.  Plaintiff's student loan was transferred and assigned to NCSLT 2006-4 shortly after Plaintiff originated the loan and prior to any payment becoming due; and

d.  At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently NCSLT 2006-4 maintains sufficient  evidence to prove that Plaintiffs student loan debt exists and is in default.

**Plaintiff's NCSLT 2006-4 Student Loan**

13.  On June 10, 2006, Plaintiff executed a "Loan Request/Credit Agreement" with GMAC Bank, N.A. in order to fund his enrollment at the University of California-Davis ("UC-Davis") during the academic period from May 2006 through December 2006 in the amount of $30,000. The loan is subject to the terms and conditions affixed to the Credit Agreement.  The first paragraph on page 1 of the terms and conditions states, "The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement." Page 3, ¶ L(4) stated that "You may assign this Credit Agreement at any time."  Attached as **Exhibit 1** to this Declaration is a true and correct copy of the Credit Agreement signed by Plaintiff.

14.  On June 26, 2006, the student loan was approved and $25,000.00 in student loan funds were disbursed to Plaintiff exclusively for the purposes of Plaintiffs enrollment at UC-Davis.  None of the loan proceeds were returned or refunded.  Attached as **Exhibit 2** to this Declaration is a true and correct copy of the Note Disclosure Statement.  Exhibits 1 and 2 were made in the regular course of a business and prepared by NCSLT 2006-4's Program Lender, GMAC Bank, N.A., and are now kept in the ordinary course of business within the NCSLT 2006-4's loan servicing system maintained by TSI.

15.  On December 7, 2006, Plaintiffs student loan was then transferred,

sold, and assigned to NCSLT 2006-4 for valuable consideration, in the ordinary course of the securitization process.  The student loan was in good standing and not in default on December 7, 2006, when it was assigned to NCSLT 2006-4, as Plaintiff was still enrolled at UC-Davis and the student loan had not yet become due.

16.     The assignment of the student loan to NCSLT 2006-4 was made pursuant to the Pool  Supplement and Deposit and Sale Agreement.   Upon assignment, the Credit Agreement and Note Disclosure Statement were simultaneously transferred to NCSLT 2006-4.   Attached as **Exhibits 3 and 4** respectively, are true and correct copies of the Pool Supplement and Deposit and Sale Agreement.   Both Exhibits 3 and 4, along with the Credit Agreement, and Note Disclosure Statement, are kept in the NCSLT 2006-4 loan servicing system, maintained by TSI.   Exhibit 3 contains a redacted excerpt from the Schedule of transferred student loans referenced within the Pool Supplement, documenting the assignment and transfer of Plaintiff's student loan to NCSLT 2006-4.

17.     Between December 2009 and March 2014 Plaintiff acknowledged the transfer  of the student loan, in writing,  and requested seven   (7)  separate deferments from NCSLT 2006-4's prior servicer, AES.  Attached as **Exhibit 5** to this Declaration is a true and correct copy of Plaintiff's Deferment/Forbearance records.

18.     On February 27, 2010, AES sent Plaintiff a letter on behalf of NCSLT 2006-4 acknowledging one of his deferment requests and his updated enrollment to Foothill College, the header on the first page of the letter stated, "National Collegiate Trust."   Attached as **Exhibit 6** to this Declaration is a true and correct copy of the letter.

19.     Prior to his  default,  and refusal  to pay,  Plaintiff made  several payments on his student loan, with the last payment posted on February 13, 2015.

Attached as Exhibit 7 is a true and correct copy of the AES servicing records pertaining to Plaintiff's student loan, including the Loan Financial History.

20.    Attached as **Exhibit 8** is a true and correct copy of Plaintiff's post-default Loan Payment History Report.

21.    After February 13, 2015, Plaintiff failed to make another payment on his student loan, and an unpaid balance of $32,726.55 remains due and owing to NCSLT 2006-4.

**I** declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of January, 2019, at Peachtree. Corners, Georgia.

Bradley Luke

# Exhibit 1

Exhibit 1

(Page 2 of 2)

56208 065315

---

## * Cosigned *    Loan Request/Credit Agreement – Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

GMAC Bank Undergraduate Loan                                      Academic Period: 05/2006-12/2006

Lender: GMAC Bank                        School: UNIVERSITY OF CALIFORNIA DAVIS

Loan Amount Requested: $25000.00          Repayment Option: Interest Only
Deferral Period Margin: 4.75              Repayment Period Margin: 4.75          Loan Origination Fee Percentage: 5.00
                                                                                This fee may vary – see paragraph F, page 3 –
                                                                                Bank will always assess the fee at origination.

### STUDENT BORROWER INFORMATION (Must be old enough to enter into a binding contract)

Borrower Name: Oskar A Lizarragadavis          Home Address: ▮▮▮▮ San Diego, CA 92103
Social Security #: ▮▮▮-4043          Date of Birth: ▮▮/1983          Home Telephone: ▮▮▮4267

Student Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen(Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Magdalena Anderson          Reference Home Tel #: (▮▮▮) ▮-7152          Work Tel #: ▮▮▮▮8616
Reference Street Address: ▮▮▮▮▮▮▮
Reference City/State/Zip: La Mesa, CA 91942

### COSIGNER INFORMATION (Must be old enough to enter into a binding contract)

Cosigner Name: Consuelo B Hayes          Home Address: 2▮▮▮▮▮ San Diego, CA 92139
Social Security #: ▮▮▮0110          Date of Birth: ▮▮/1924          Home Telephone: ▮▮▮8366
Have you ever defaulted on a student loan or declared bankruptcy?  ☒ No    ☐ Yes
Current Employer: UNITED STATES FEDERAL GOVERNME          Employer Telephone: ▮▮▮8386
Current Position: Retired          Years There: 30 Years
Years at Previous Employment: 30 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Student.
Personal Reference Name: Esther Goodwall          Reference Home Tel #: ▮▮▮-2221          Work Tel #: ▮▮▮▮8998
Reference Street Address: ▮▮▮▮▮▮▮
Reference City/State/Zip: National City, CA 91950

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit
Agreement GM.05-06.CSX1.20.0406 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is
subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on
nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit
Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law,
(ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notice to be an original document, (iii) to conduct business with the
Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my
obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-9406

Signature of Borrower _____          Date _6-10-06_

### BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _Consuelo B Hayes_          Date _6-15-06_

---

GM.05-06.CSX1.20.0406                    LENDER COPY
PN01_GM_05-06_CSX1_F_X_LIZARRAGAD_A103826471.pdf                    GMCUIO

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts

owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the Commonwealth of Pennsylvania. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, **if** I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.
3. Repayment Terms - My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that

this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in Pennsylvania and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement. If in the future I apply for a loan that is guaranteed by TERI and funded by another lender, I also authorize the sharing of application information for this loan (other than information in a consumer report) with the other lender and TERI and the reuse of such information by such new lender and TERI in my new application.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of

this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17.  If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.  If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original.  However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M.  DISCLOSURE NOTICE**

<div style="border:2px solid black; padding:10px;">

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

***Important information about procedures for opening a new account:***
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

***What this means for you:***
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

</div>

**N. BORROWER'S CERTIFICATION:**  I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## FEDERAL COSIGNER NOTICE

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER:**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

# Exhibit 2

Exhibit 2

# NOTE-DISCLOSURE STATEMENT

$ 26315.79

Loan No. 03826471

Borrower(s) Oskar A Lizarragadavis
Consuelo B Hayes

Student:   Oskar A Lizarragadavis
Date:     06/26/2006
           Lender Name and Address:
           GMAC Bank
           3710 Kennett Pike
           Wilmington, DE 19807

This disclosure statement relates to your Loan Note disbursed on June 26, 2006.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.006 % | $ 33574.94 | $ 25000.00 | $ 58574.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 002 | $ 203.51 | On the 26th day of each month beginning July 2006 |
| 001 | $ 200.72 | On the 25th day of each month beginning September 2006 |
| 240 | $ 241.53 | On the 25th day of each month beginning October 2006 |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The Index is (check one):

☐ Prime Rate Index Adjusted Monthly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly – The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐ LIBOR Index Adjusted Monthly – The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

| | | |
|---|---|---|
| Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) | | $ 26315.79 |
| Itemization of Amount Financed | | |
| Amount paid to Oskar A Lizarragadavis and | $ | |
| Amount paid to Consuelo B Hayes | $ 25000.00 | |
| Total Amount Financed | | $ 25000.00 |
| Itemization of Prepaid Finance Charge | | |
| Origination Fee | $ 1315.79 | |
| Total Prepaid Finance Charge(s) | | $ 1315.79 |

# Exhibit 3

Exhibit 3

## 2006-4 POOL SUPPLEMENT
## GMAC BANK

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of May 30, 2003, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation and GMAC Bank (the "Program Lender"). This Supplement is dated as of December 7, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1:  Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each GMAC Bank Conforming Loan described in the attached Schedule 1 (the "Transferred GMAC Bank Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred GMAC Bank Loans. The Depositor in turn will sell the Transferred GMAC Bank Loans to The National Collegiate Student Loan Trust 2006-4 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each GMAC Bank Note evidencing such GMAC Bank Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said GMAC Bank Notes on said terms and conditions.

### Article 2:  Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3:  Representations and Warranties.

#### 3.01.  By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02.  By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its

properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred GMAC Bank Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred GMAC Bank Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred GMAC Bank Loans included in the Pool.

### Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred GMAC Bank Loans described in Schedule I, other than any right to obtain servicing after the date hereof.  It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.  The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred GMAC Bank Loans, and Program Lender hereby releases any security interest it may have in such collateral.  Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

{F0001033.1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
    John A. Hupalo
    President

{F0001033.1}

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name: _____
    Title: _____

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By:_____
    John A. Hupalo
    President

{F0001033.1}

**National Collegiate Student Loan Trust 2006-4**
**Roster:** 0

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|--------|-------------|----------|--------------|------|
| GMAC BANK | 900005IP | GMAC Bank | DTC - Undergraduate | ▇▇▇-4043 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---------|-----------|------|-----------|--------|
| 03826471 | 26-Jun-06 | 1 | IO | 0.0475 |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|-----------------|----------------|---------------|----------------------|---------------------|
| 0.05 | 0.015 | 0.05 | $26,315.79 | $25,000.00 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---------------------|---------------------------|-----------------------------------|-----------------------------------|--------------------------------------------------|
| $24,917.50 | $0.00 | $26,228.95 | $174.18 | $0.00 |

| | | | **Final Reconciliation Settlement Figures** | |
|---|---|---|---|---|
| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
| $100.00 | $1,245.88 | $747.53 | **$498.35** | **$27,001.48** |

# Exhibit 4

Exhibit 4

EX-99.5 7 d587610.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.5

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of December 7, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of December 1, 2006 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.      Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.      Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.      Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.      Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.     General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)       The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)       The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.     Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.     Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

<div align="center">

**ARTICLE V**
**PURCHASE OF LOANS; REIMBURSEMENT**

</div>

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee, and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

<div align="center">

**ARTICLE VI**
**LIABILITY OF SELLER; INDEMNITIES**

</div>

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)       The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)       The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this

Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
### MERGER OR CONSOLIDATION OF, OR ASSUMPTION
### OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
### LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
### SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2006-4
> c/o Wilmington Trust Company, as Owner Trustee
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all

outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC,
as Seller

By:     GATE Holdings, Inc., Member


By:     /s/ John A. Hupalo
Name:   John A. Hupalo
Title:  President




THE NATIONAL COLLEGIATE STUDENT LOAN TRUST
2006-4, as Purchaser


By:     Wilmington Trust Company, not in its individual
        capacity but solely as Owner Trustee


By:     /s/ Michele C. Harra
Name:   Michele C. Harra
Title:  Financial Services Officer

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated December 7, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- Charter One Bank, N.A., dated December 7, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Asrtive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, ThinkFinancial Alternative Loan Program, UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program..

- Citizens Bank of Rhode Island, dated December 7, 2006, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, Alternative Loan Program, Navy Federal Referral Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Loan Program.

- First National Bank Northeast, dated December 7, 2006, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- GMAC Bank, dated December 7, 2006, for loans that were originated under GMAC Bank's Alternative Loan Program.

- HSBC Bank USA, National Association, dated December 7, 2006, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated December 7, 2006, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated December 7, 2006, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank, dated December 7, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated December 7, 2006, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated December 7, 2006, for loans that were originated under National City Bank's Alternative Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated December 7, 2006, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, Regions Bank Alternative Loan Program, and Varsity Group Alternative Loan Program.

- Sovereign Bank, dated December 7, 2006, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated December 7, 2006, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated December 7, 2006, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated December 7, 2006, for loans that were originated under U.S Bank's Alternative Loan Program.

### SCHEDULE B

#### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's Alternative Loan Program

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- JPMorgan Chase Bank, N.A,, (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Porgam, Old National Bank Alternative Loan Program, Regions Bank Alternative Loan Program, and Varsity

Group Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

# Exhibit 5

Exhibit 5

```
  ITS31*****4043;                    AES/PA      VTAM NAIC       TSX31
DATE 09/14/16 18:24:40 DEFERMENT/FORBEARANCE LOAN DETAIL


BORROWER SSN: ***-**-4043 NAME: OSKAR A LIZARRAGA-DAVIS
1ST DISB DATE: 06/26/06   OWNER: NCT                   LOAN PGM: ALPLN
LOAN SEQ: 001        GUARANTOR: TERI

                                                         MORE:    +
                                                  TOTL
                 BEGIN     END    GRACE   CAP  DAYS DAYS  MOS   CERT
     DEFER/FORB TYP  DATE   DATE   END DATE IND  USED LEFT  USED   DATE
  _  F - ADMINISTRV 11 01 13 03 31 14       Y   151 UNL   6.0  02 24 14
  _  F - ADMINISTRV 06 01 11 06 30 11       Y    30 UNL   6.0  06 28 11
  _  F   GEN/TEMP   04 01 11 04 30 11       Y    30    3 11.9  04 15 11
  _  F   GEN/TEMP   12 01 10 02 28 11       Y    90    3 11.9  12 15 10
  _  F   GEN/TEMP   07 01 10 10 30 10       Y   122    3 11.9  07 08 10
  _  F - GEN/TEMP   02 01 10 05 31 10       Y   120    3 11.9  03 12 10
  _  F - LAT SCH NT 12 12 09 12 31 09       Y    20 UNL   .7  01 20 10



F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN
```

# Exhibit 6

Exhibit 6

RECEIVED

OCT 0 i 2008

FINANCIAL AID
FOOTHILL COLLEGE

# THE EDUCATION RESOURCES INSTITUTE
## REQUEST FOR DEFERMENT

***PLEASE COMPLETE ALL FIELDS BELOW. YOUR REQUEST MAY BE DENIED IF TILE FORM IS NOT COMPLETED CORRECTLY.***

**ACCOUNT NUMBER** 6766

**BORROWER NAME** Davis

**ADDRESS**                              STATE   ZIP CODE iuzi

**TELEPHONE NUMBER** 0303   ALTERNATE TELEPHONE NUMBER (

**WORK TELEPHONE NUMBER (___)**        EMAIL ADDRESS **0411.110y44.)Z0^11**

Yes, I am in a degree granting program and I hereby request the deferment selected below for all of my private loans guaranteed by 'The Education Resources Institute (TERI). If the deferment is being requested for specific loans, please list the first disbursement dates of each. _____

SCHOOL DEFERMENT: )0 FULL TIME ____ HALF TIME ____
GRADUATE STUDIES
CI  CHIROPRACTIC (CHIRO LOANS ONLY)
0 VETERINARY (IHELPO/3 LOANS ONLY)
0 INTERNSHIP/RESIDENCY

| AUTHORIZED OFFICIAL'S CERTIFICATION REQUIRED FOR DEFERMENT |
|---|

**PROGRAM BEGIN DATE** of/Lio ef?   **PROGRAM END DATE I L.**_____ **EXPECTED GRAD DATE** J Lin7
MOM AID OMCE
**INSTITUTION/ORGANIZATION NAME** 1037,'11 CC M        **DOE CODE** no t
**ADDRESS** .        1234.5 El. MONTE ROAD
_Rose Myers_ STATE  St ,T05 RILLS, CA 9402!   **ZIP**_____ **TELEPHONE NUMBER**  72—
Vic . Procident of Nucienl
oni andIoWuckOn                                           tcy3    .8?
**SIGNAftinF AUTHORIZED OFFICIAL**   **NAME/TITLE OF OFFICIAL**   **DA:**

My signature indicates that I am an Authorized Official and I have read and agree that the certification above is true to the best of my knowledge.

I meet the qualifications as stated in the cover letter for the deferment type checked above and request my lender/servicer to defer repayment of my educational loan(s). if my loan program allows, accrued and unpaid interest may be capitalized, added to the principal balance, in accordance with the terms of my original promissory ote. 1 understand that, should my situation under which I applied for the deferment change, I must notify my lender/servicer  edictely.

**BORROWEOIGNATURE •** _____   **DATE** 10/1/08

RETURN CObiPLECIZD FORM TO: American Education Services • P. O. Box 2461 • Harrisburg, PA 17105-2461

# Exhibit 7

Exhibit 7

I-PS oattnv

# PRIVATELY INSURED LOAN
### Dertirydant Option Firm

**BORROWER ACCOUNT' NUMBER** ██████ 6 61

**BORROWER NAME** _Oskaa A. Lizakkaaa-Davis_

**ADDRESS** ████████████████

**CTTY** _4N4417ᵈ te_     **STATE** _C4_     **ZIP CODE** _94061_

**TELEPHONE NUMBER** N1213120

**ALTERNATE TELEPHONE NUMBER**

**WORK TELEPHONE NUMBER** _JM.MgyAkoo_

**EMAIL ADDRESS**

**Section 1:**
If your ilmoreial situation is making it hard to make timely mascots ao, ycnir education Worst. you may want to corinider MODIFIED GRADUATED REPAYMENT SCHEDULE I MORS1. This schedule offer=

- 11 months of payments at St% of the regular monthly principal and kserest payment amount
- i 2 mob of Interest only momenta equalbig 31 days of Immo
- a A return to fun principal and intent-re prryttx-res forth balance at yntie lean period.
  Thew Tavenner may be higher than your previous monthly payments due to the !4 months of reduced payments Peed above.

_____ Yes, I would like to apply for die MORS iIf you are applying fbr the MGRS. you may skip Seenoto 2 and gain melon 3-

_____ No. I ant unable to make at kiss !On of my regatzr monthly payment for the Toth:Twin rationm

_4Litref  dillAdtfAjed  441  Ault  ny2  j0-h_ p
_ir₁e_

**Stolen**
If your financial difficulties pervert you from making timely peoymcnts under a Modified Graduated Reveyalent Schedule tMORp an your Privately insured log mo. you may be elittolde for a Foram:nee. Forbearance is panted at the owners discretion far a *few* months as an sbernative to rests' monthly peymema. The Forbearance be tonally panted in increments of one to sic months with a manirrom of North" months during the life or the loan. The Forbearance period may be botkdated-to cover periods of delinquency. if any onist. However. any De-wive repeats that were submitted to credit lattetrus will not be removed if the Forbearance is panted retroactively.

Yea. 1 *tiermay* request a Forheersnee for all of my ei₊ Privately Immoral /omits). If the Finite:inn= Is being requested for speellit ₊2rfi.- please list the firs &drone:mem dales of each  1)

Number of moans you are nectars/big Forbearaucer    _monilAS (bat May change_  3040. _irk,_
_herffteR_    _Galli kW a job by then_

Seedy* 31

You mon continue frisking your regoiar monthly payments until *the* Forbearance or *MGRS* him been approved. You will receive written notice of the kris:evil or denial of this request. once it has been processed.

I certify that I eat ttroible to make Taymems according to the prevent lama of my (wettish. I torderstaorl that accrued and unpaid inirres1 will be empitallied at the etpiratton of the MGM or Po:betimes period. and included io a new repayment schedule. This new rep:lriant schedule will decrease my repayment period Arai increase my monthly payment amount.

I understand this request and all supporting doctonordiricat will remain the property or the lender. and/or its agent. The owner reserves *the* right to obtain a  ropy of my credit report. Additional debt beered or preferential par:taro to other creditor' could mot In thr denial or termination of my forbearance request- I mderstood that should my rtzettion under which I applied for Forbearance ehantw. I moat immediately notify *ASS* Graduate and ?Wank/mil Services. The above information is true and correct to the hest of my lenowlcdge. I tmderdand that misreptesentation may lend to the denial of any request. I have read and understand end apt' to the straw of this request. If I selected I understand that I have arreed to amend ate repayment tcrj fof *the* original yrvt  beery note for my Privately lroured knot 0.

Borrower Sign:stun _____   Date _____

**Os***

• **SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE. BUT NOT BOTH** *

** **ALL ITEMS MUST BE COMPLETED OR INDICATE "WA".** *ANY* **INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL.** **

---

**THIS        ION MUST BE COMPLETED FOR ACCOUNTS WITH C040RROWERSI**

| | |
|---|---|
| ?PI CO-BORROWER  **CO4S1A 7 Raj es** | TELEPHONE NUMBER{ __ ) |
| ACCOUNT NUMBER | ALTERNATE PHONE NUMBER( ) |
| ADDRESS | EMPLOYER *NAME* |
| CTTY         g        STATE—CL ZW **013/** | EMPLOYER TELEPHONE NUMBER 4 ) |
| EMAIL ADDRE33   **Ni 4** | |

| | |
|---|---|
| 2nd CO-BORROWER | TELEPHONE NUMBER ( ) |
| ACCOUNT NUMBER | ALTERNATE PHONE NUMBER ( ) |
| ADDRESS | EMPLOYER NAME |
| CITY         STATE      ZIP_ | EMPLOYER TELEPHONE NUMBER i ) |
| EMAIL ADDRESS | |

# Exhibit 8

Exhibit 8

**3/15/10 rme**

GP

*Fax :*                              • *7 q*

*(I)i'\1 =*

L\x    *mi* s7eu

*egll*                          0)0.;

€ *pedal Ce*   *cmcisl*   104   ....xx41f'

'*Mad*  [11]*W*[7]. 2[4]/• /:#4Q[9]/ ,       44/4

*ceartiiiwie*   *fiio!*   iPhu   *tau*/  446  *frie*(4 1

*OW(*

8C-TIENCT

# PRIVATELY INSURED LOAN
### Remrant Opdest Perm

BORROWER ACCOUNT NUMBER

BORROWS& NAME      os a   CuAzitt                                    .

ADDRESS

CITY      Mito        1 4     STATE              zu' cops   *4 06/

Ttl.P.PROVE **Ripen**                    le**3°3**

ALTERNATE TELEPHONE *NUMBER (*      I       –   04

WORK **Triamon** MUMBO

EMAIL ADORERS                    *kelrt*    *a:*        **1 m 1**

Bowden 1;
If your fitiorial   wooden is toskitg it hard to molar timely peyarraw en  *year*  education          you nay want to toraidet I
MODIFIED GRADUATED REPAYMENT SCHEDULE funks). 71116          prom

- 17 menis et piratztts    SOA of the molar muddy wirwipal and Worst motet mow&
. Months of Waal only peymeets nailing 11 days of Miura
- Anton so fiall prise tpal aad laterals per      far the balsam Of your Iota pered.
  **Theo** forams ow⇒ higior than **rex pro.iotto** muddy payments do to the 24 **mess** of Wooed poysneatt find ohm.

Yrs, I would like iv apply Ibr the Mr= dry= sot applyios for the MQU. rot coy flip Sectioo 2 *cad* so to **wheel**

No. I am unablo to trete es lout SO% of my regular lowochly **prim rot eht** folletresp :edam

─────────────────────────────
─────────────────────────────
─────────────────────────────

**Seeds® t**
It yaw fessosial &Moabite low® re hoot mishit; lie soly **Forman** reek a Medifed Graduated Repayment Schedule WORE  Do rosy
nimbly hewed toacumoon may be slivble far a Perbearanoe.. Forbearanta it genus' at tbs arm.. dizretiou fits few mattes es *no*
attestatin to revoke muddy psytnews. The Potbearnes is nonswIty mold is **hcimesas of ea®** to **date ma® hit I amazon of twelve**
monde daring the life of ile dose. The Fterlesarsaat period atay be becidsled le saw winds or defiant:soy. Jim mist. **liovrovcr, ivy ago.e**
tapirs that wore esibtritied to weds hones will mot bs resumed if Ile Feebewuce 3s gontai trreactivet Y•

We. 1 herelrf rated   Porbasemea for el *of*      4lll0U ?Avail flayed boats). 11 the Portioned it Wag requested for "male
ll**4**-planet lit the flat disburse:twat data( adds:

─────────────────────────────

rumor or moan you we 'quoin Forbearer:et:                    wulated 7 ad A

2010-03 1513'51          LIZARRAGA     6196924267 ,"     FAX                                    $t$ 4/4

*Stein h*
I'm Dt    cominus inairicipper twin. monthly powwow mil the Fortweronee or *MGRS* roil teen approved Yoe witl *rereFre* wines noire* of
btw approval et dents1 of this rerpsek liter it has *bees imrocesse.d.*

WU# lbw I am =obit is make permeate scoordios to at. Fiilitrif casts of sty Icarrisl. F oodersessel that accrued srd raFaid idriart wJI 1.
cepirsRzed sr the cephditre of the MORS or Pothesewe period, and ioduded sr a now repeyirseat schedule. This ate ittelyerreor oclsrdule will
$d_{orr} = -r_{ow}$ l9mmel ritiod and ineresee my road* Firms stromt-

I miasma Mb trquru sad ill etwonies docomouretioa      =too lho property of *du* Imearr, smelter ire war. The owner 1444 riftt Ikc
flea hi ehts la a  copy of my *mgg&#62;* report. Makes! *dabl ittiprlid or* prefer:mpg payments to other eviiilbri Mild     Ii the drcli or
remissikes of   fearrarsce regimes. t aselorstand tlet skald my situation model which 1 opprad for $F$ *abeam*= duns, I Num earaodisiciy
*notify* AZIS Onetime tad Protewikers1 &Tripes. T   show arrant= is too sad =rod to the Irrni of my lthowiedpe. I tddemesad that
mwropeorreisdes troy Iced to the denial of crw mow. I how read and arderonelsnd swo to MA terms of tins rectos!. If I sobered MOO, 1
mularetaod that I hew ward re eiresel thoroperaem hummer the twighollsreenissory ads for lay Privately lamed toasts r

Borrower Stnature                                              Dsto  ___3/12/10___

• UIECF EITHER *MGRS* OR ECONOMIC HARDER? FORBEARANCE. BUT NOT BOTR •

" ALL ITEMS MUST DE COMPLETED OR INDICATE "*N/A*". ^ANY^ INCOMPLETE ITEM WILL BE CAUSE FOR DENIM.. "

---

THIS SECTIONvi 1ST DE COMPLETED POR ACCOrTS WM" CO-                    w>        i if-

Isl. CO-BORROWER    *Decl'f*_ge_    T $^t_{01}$  ISO   #$^{11}$X$^t$11  Lied  / Ca*fit i(lik.,*  NW, /
                                                   TELETRONE NOMA(   W_{ir/l(al,)  iy)/7 /6 /vet/
ACCOUbT NUMBER                        *ALTERNATE* PHONE *NUMBER* (___ )  -,
*ADDRESS*                             EMPLOYER *NAME*
CITY              STATii    'LP       EMPLOYER TELEPHONE NUMBER f ---.— I
EMAIL ADDRESS
CO-BORROWER SIGNATURE                                          DATE

Ind CO•DORROWER    **NI A**                TELEPHONE NUMBER (
ACCOUNT NUMBER                      ALTERNATE PRONE raDABLIt
ADDRESS                             EbITL OYER NAME
CITY              STATE    ZIP       EMYLGYEi I 'TELEPHONE NUMBER/
EMAIL ADDRESS                                    _____
CO•IORROWERSIGNATURE                             _____     DATE _____

**If you bays additional to-ligDers. pkaie be tare 10 attach their Information to the application including their Ognaleres.**

*P5.   /kJ*        *Jt&#770;ceetil "flfriaf" Kik/*        4_1'0
*feiviy   4,i/X*

## 3/1 5/1 0 rme

### 11['71 : GPS

*KIK*

FROM :

*li7eutet:aia* – DA vas

*5'713*

*O)O3*

e e

Fore insurance iCipoa- 4: pctiiiily
insured loan. )i/ y4'0991 , Lili71 ih144
certificate this Advli an/ 41h **444**
out

Se-FIONCT

# PRIVATELY INSURED LOAN
**Ritayineut Opine Foos**

rIOILROWIER AccQurrr NumBEA _ . _ **1111111111116**

BORROWER MAME _____

ODIUM

crry __Adtvj̈ _I_ ı ıf°  smn __IA__ zip CODE __1/01f1

T ELEꞭHONE HUM BEA _____ 0 0 3

ALTERNATE **Truman** NUMBER ( ) .. g 4 ° ı/e=

WORK TELEPHONE HUMBER t, ) —''----

EMAIL ADDRESS _____  J.ΔÃco • copq .

**Sadism I:**
if your flosachil shoe= is tasking it bard lo male thusly payment oo your Atomics hares), rum troy ware to essisiikr MODIFIED GRADUATED REPAYMENT SCHEDULE ihman This ackidale Wart:

- 12 3,0ehl of paymeals sl 3014 of the result: moodily prinoipel tad hostas] pisymati taco=
- 12 roads of is achy payoueas slistos 31 days (baseeas.
- A roma to MI protopaltoi iestirsal payrosota fen lbw litlsori of your lose period.
  Thom minium ahoy bo highs: duo yam presieios moodily piryinsats dot to dis 24 mania of rod used mourns Es** @bow.

  Yrs, I rattld like so op* for lb' 14013 of yam art ipplying far the MGM yes any skip firedogs 3 seal go to maim 3.

Y² tto, 1 am ambit to mks at least WA sf ory mien sraistWy feria for The following meow

_____
_____
_____

**Statism**
11 rim lantoobsi dittitdti.s Fume you ftens inskisi timily payments totter s Flofirisd Gradossed Bisoysortt Schtslolt tfift3REI oa }ow ni•saily Inemd lean a), you tity be visible far • Fortirsrstoe. Fortearsoot Is passed at Ms moat drsorstion fors frit mouths is sia shintoist is isplir muddy psysneass. The Fotbastaits Ia Romany pitied in it:MUM it ana to dote mew with • =liar= at ttrehv /Maths &Ms the WS of tha lass The Fortissimos period may bo baekdatad to emir perk* ref Asliaqutocy, tinny exit. Frowesse. toy ospers repeals that were submitted to credit hotaisairitl not bs toitoyed if the Fortissimos it plated triasietire1y.

Yet,, I horst*'reessisi • Fastuarstro for all of my    nal: lowed bawd- It Me torbeareact 1 kokts rsquesed for optairic
lar*144:iii Ira she first erobtursouteat don of aorta    ʌᵗ¹ ʌᵗ¹·ᵇ·

Ntunbor of moods you are retreolts Fatten:sow  Iyr: ı ACe/ 3 itilda$A4° ≤ 4Ľa 2⁄6
                                               *Ma/0* ʌ/67.J

Simko 3.

Yw ..ao t.eretour meleionyaity septet ie.eoshiy yeysneele omit tt. Ferlwnnre err 1.lfittS tna t.crit rl_mmed. Yea vnll receive *valuta natio, of rhiepproval cc dead of this request. sfter it hes istoo proecaersl.

I candy that loot uottalo to make payments seceding to Me FOWOT terms el my korai). I underworld that accrued awl writ roma will be ropltsllsst1 st the exphation of lbi Maas et Parboil= prviod, end iteloded .s at. TCPY914,11 ""bath*- Thisnof" rtPaYmituf Poludtd, will &rarest* my repsyraii period sad metes ss my monthly yaymaat trams.

I urslerstand the mime sod all supporting eloo.unentatioa will remain the property of the loodor astlier irs spat The owner meows the right to obtain. copy of my credo trpert Additional &IA ism:arced or prefermiol paystsents to other creditors could nob is las 6001 of temnioshoo of my forbearance request 1 induct:sod that shoobi my situation arida write *applied for Forbore= came, i ue imagist* notify AE3 &adults sod Professional Sal=n Tio sisros infortrisioa is true aM torrid TO the best of my knowierlpe. I underOvarl thst crsisterreteumioa may lead to the denial of my rapase. I haw mod mei *mend and sc b SIta vs= of Ibis moat. IF [1] arbeted MGRS, I undetawad that I bow spool to mood Ike forme* terns of die oriFfeol prorniosary acts ter my Privately mitred

Borrower Slgodure _____     Data  3/12/10

• SELECT EITHER MORS OR MONO VIC HA RDSFIIP FORBEARANCE. BVT NaT BOTH

•• ALL ITEMS MUST RE COMPLETED OR INDICATE •7oAn ANY INCOMPLETE !TIM WILL BE CAME FOR DENIAL ••

---

### THIS REenor4 M si BE COMPLETED TOR ACCOUNTS WITH CO-     9WERS/

| | | | |
|---|---|---|---|
| 1st CO-BORROWER | Dece4 | 01 | iSo          e     aighticak. Aid |
| | | | TELEPHONE tIIIMISER I          Agdfi/9    i0.//7  ad e.'eff |
| ACCOUNT NUMBER | | | ALTERNATE PHONE NUMBER        p   / |
| ADDRESS | | | EMPLOYER NAME |
| CITY | mos | ZIP | EMPLOYER TELEPRONE NUMBER ( |
| EMAIL ADDRESS | | | |
| CO-11ORROWER SIUNATURE | | | DATE |

| | | | |
|---|---|---|---|
| Pod CO-BORROWER | 411 | | TELEPHONE NUMBER I |
| ACCOUNT NUMBER | | | ALTERNATE PHONE NUMBER(     ) |
| ADDRESS | | | EMPLOYER NAME |
| CITY | STATE | ZIP | EMPLOYER TELEPHONE NUMBER(    / |
| EMAIL ADDRESS | | | |
| CO-BORROWER SIGNATURE | | | DATE |

If you how additional co-signers, &lwo b. tam lo attach their information to rho application including their ritnatorts.

P5. Wo i  /V, ..seee/tel h4'4')!          41so

Y

P

SCFRONCT

# PRIVATELY INSURED LOAN
## Reparmot Optima Form

**BORROWER ACCOUNT** *NUMBER*

**BORROWER NAME**      DS      *l.44LO i* ‾D

**ADDRESS**

**CITY**   *bilA/00A*   CU   **STATE** '11   **ZIP CODE** fsmt

**TELEPHONE NUMBER**   EMT= Ofo3

**ALTERNATE TELEPHONE NUMBER** (——— )——— s4 01

**WORK TELE/HONE NUMBER** (———   ALA

**EMAIL ADDRESS**   l=1110   Li I OO   COM

**RECEIVED**

**MAR I ll 20t0**

**AES SERVICING**

**Seeders I:**
ir your financial situation is making it hard to make timely moms on your education 1ll=1.1 ₁— tray ware to catoider •
MODIFIED GRADUATED REP'AYMENT SCHEDULE (MORS). This 0:beau!' offers:

- t 2 moods of payments st SO% of the resider monthly principal sod interest paymerd smogtnt
- 12 months of boxed only proms equaling 31 days of interest.
- A rattan to full principal sat Interest payments for the haln'' of your lam period.
  Thew payments tray be trigbar than you proviocts moot* payments clue *ni* the 24 moths of reamed payments Wed above.

——— Yes, E would like to apply for the MGRS ilf you ere applyiog fbr the MORS, you may skip Sectico 2 and 90 to section 3.

..?a- No. I am =able to wake at least SO% of my nabs monthly paymsot for the following ream=

_____

_____

_____

**Seetleu**
If your forincial difTrentoes provout yogi from making. timely paymess radar a Modified Graduated Ra**mos**= Schedule MORS) oa your
Privately Instmel knots), you may be efigiblo for a Forbearance. Porivarenee is grimed at the owner's discretion for a few meads as an
aherastiva to regular molly payments. The Forbestance is Dorsally pawed in itseuxus of one to throe mouths, with 0 maximum of twelve
mouths chains the life of the loan. The Forbearsneoperiod may be backdated K. ewer periods of dellorprom if soy exist. However, turf uegative
reports that were submitted to catch bureaus will not be removed if the Forbearance is gamed retroactively.

Yea, I hereby regret a Forbearance for all of my eligible Pt          Insured buts). If the Forbeirsoce is being rep:0A for specific
please list the first rfeshursemeen dates of

_____

**Nombez of ssonds you ors =pealing Frabearasoc**   *y . ᵣ4e1f   f 10141041,11 Z ɑd*
*a/6   Auf/4;fa   ffilef*

**Section 3:**

You meat continue makiag your regular monthly payments mail the Forbearance or MGRS has been apptoved. Yon will receive written notice of the approval *at* detail of this request, after it has been processed.

I **mily** that I am unable to make payments according to the resew terms of my boats). I understand that socrnod sad unpaid boarou will be aphorised at the a:ph-mien of the MORS or Forbeentooe period, sod included is now repayment achetinie. This sew repayment solludnis will decrease or/ repsyuseat period end increase my monthly payment mot=

   tusierstand this request end all supporting daraznemation will merlin the property of the tendon ard/or its agent. no owner reserves the Tifil to obtain a   copy of my credit report. tuiditiousl debt incorred or proferential payments to other 11114SOTI mold retal in the denial or tamiostion of my forbearance request. I tadentand that should my situation order which l appred *for* Forbeererce change, I mast intmecrotely notify AES Gradate and Profemkosel Services. The signnv information is true and correct to the best of my knowledgo. I anderstomi that misrcpreetwatien may had to the denial of my request. I   read and moderato:xi-end agree to the teems of this request. if I selected MORS, I uadeasseel dot I hove agreed to=cod the ropers:cm   of the out   promissory note for ray P*rately Inured lam)=

Borrower Signature _____          Data __3/12/10__

• **SELF**= EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE. BUT NOT 1301111*

'' ALL ITEMS MIST BE COMPLETED OR INDICATE 'WA''. ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL ''

---

**THIS SECTION M**   **BE COMPLETED FORACCO**   **WITH CO-00**   **WERSI**

| | | | | |
|---|---|---|---|---|
| tat CO-BORROWER | | | TELEPHONE Nt | ER ( |
| *ACCOUNT KUMMER* | | | ALTERNATE PHONE NUMBER | |
| ADDRESS | | | EMPLOYER NAME | |
| CITY | STATE | ZIP | EMPLOYER TELEPHONE NUMBER | ) |
| EMAIL ADDRESS | | | | |
| CO.BORROWER SIGNATURE | | | DATE | |

| | | | | |
|---|---|---|---|---|
| 2nd CO-BORROWER | | | TELEPHONE *N*MUM (-- f | |
| ACCOUNT NUMBER | | | ALTERNATE PHONE NUMBER ( | |
| AD DRESS | | | EMPLOYER NAMB | |
| CITY | STATE | ZIP | EMPLOYER TELEPHONE NUMBER (— > | |
| EMAIL ADDRESS | | | | |
| CO-BORROWER SIGNATURE | | | DATE | |

It you have additional eo-signers, please be sure to attach their information to the application including their signatures.

# Exhibit 9

Exhibit 9

# *Fecitz*
Office

# Fax Cover Sheet

| | |
|---|---|
| Date _/o_ | Number of pages **3** (including cover page) |

## To:
NameG_e_S

## From:
lack iNa me    QSAL _O7·0AgIL_r_ftAif_

| | |
|---|---|
| Company | Company |
| Telephone _OS·S·7_ . | Telephone _Q?o3_ |
| Fax ▉▉▉▉▉ _39/6_ | |

Comments _gS_g/_   _w",egst_          _4,edivetzeafi_   **44** _/01&,4_4- 44_

sC-PREINCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

**BORROWER ACCOUNT NUMBER** ███████ 676

**BORROWER NAME** _Oskar ██████_

**ADDRESS**

**CITY** _Redward City_   **STATE** _CA_   **ZIP CODE** _94066_

**TELEPRONE HEMMER** (██████ 0303

**ALTERNATE 'TELEYEIGNE NUMBER** (-- ) ____ - ___

**WORK TELMIONZ NUISIBE:R** ( ___ 7 __

**EMAIL** _ADDRZSS_   ✍ ___   1   _QQ.CA/..,_

**Section I:**

It your financial situation is roaltint it hard to melte timely payments on yew education iceuis1, you may aunt to c=adet a MODIFIED GRADUATED REPAYMENT SCHEDULE/MORS). This schedule offer

- 12 =Mho errs/SW=1st 50% of the regular weedily principal end Interest payment amount
- 12 trsatehs of fewest may pernests equaling 31 days of Wertz
- A return to full prioclpel and hemmer payment for the balance of your lone period
   Maas payment, may be bitther then your wevietta monthly payments this to the 24 =mint of rethiced piymertis listed shove.

— Yes, would like to *My for dm MGRS off you are applying Ihr the MORS, you may skip Sectitre   nod so to section 3.

.>Q He, I our =bb to rake "beast SO% of my t   trr ruhly peymord for tie fol!ferieu ream==

_/1111_   /   ²--_q111_   _lizfifflaWiffe_   _am_

___ _41111M'@*_ -_4111_

**Uttar, 2t**

If yew finatteial dillitoitics promo you from melting timely payments mu* o Modified Grndumed Repsyroest Seitedule 'MORS) on yaw Privately Ineored Immo. you may be eligible fora Forbearance. Fiche/triune is metal et tho °mode discretion for a few mentthc u _weft_ alternative to resultr muddy payments. The Forberrance is rtortnally Fumed fa lectemems of orie to three moist* with n maxim vet of twelve mamba durift$ the life of the loan. The Forbearance period troy be backdated to cover periods of delinquency▶ if any miss. However, the neFelva reports that were admitted to audit burrow will not be removed if the Forbearance is grouted retroactively.

_____ hereby request e Foote:mance for ail of my eligibk Privately Insured boas). If the Forbeatentat is bang requested for specific _·2 ◄f W_ list the first dbbursomers dates of eosin _____

**Number of months you Me mqutathnt Forbearer** ___➤

**Section 3s**

You emu continue making your regular monthly psymema enrol the Fetbeannite or MORS hai beet) approved. You will receive retest notice of the approval or denkti err this rarest, idler it *brie* beoc pnxisteatt.

certify that Ism tumble to maim payments neoonfing to dos proem tenne of my Iointiy, I understand that ictnaed and espiid intenut will be capitalized at the ortgirstioa of *a MORS or Forbearance period, and lot:laded in a new repayment ached*. This new repayment soheduio will demesne my repayment ponied nod lacresse cal monthly payment amount.

undemtaad this rummer and all 'appalling documentation will narrate ttio property of the lender, andlor its *gem. The owner memo the right to obtain a   copy of my credit report. Additional debt Incurred or preferential payments to other creditors conid rest* in the denial or immittioion of my rorhearaccis request. I =denied that abotdd my situation tinder which I applied for Forbearance change, I moat Immediately notify ASS Onuluato and Profanities! Screlcea. The "boys information is toe end mom to the best of my Imawkidge. I enderseutd that atisrepresettericet may lend to the &Dial of coy request. I bore read and onderstand.mal agree to the terms of this request. If 1 sawn/ MARS, I understand that I inn" armed to amend the repayment feria of the ars          note roe *my* Privately Iniened hum)

Borrower Sitoatnri _____                    Dato _____

SELECT EITHER MORS OR ECONOMIC HARDSHIP FORBEARANCE. BUT NOT BOTH *

"" ALL ITEMS MUST BE COMPLETED OR *INDICATE "NIA", ANY INCOMPLETE ITEM* WILL >3E CAUSE FOR DENIAL ⁴*

_____          _____          _____

THIS SECTION arm E COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!

| | | | |
|---|---|---|---|
| st CO-BORROWER _Deceased_ | | TELmoNE NUMBER ( ) | |
| ACCOUNT NUMBER | | ALTERNATE PHOnE NUMBER ( ___ | _____ |
| ADDRESS | | EMPLOYERNA ME | _____ |
| CITY | STATE    ZIP | EMPLOYES TELEPHONE NUMBER | _____ |
| EMAIL ADDRESS | | | |
| CO-BORROWER SIGNATURE _ | | DATE | |

| | | | |
|---|---|---|---|
| zed CO-BORROWER | | TELEPHONE NUMBER( ___ | _____ |
| ACCOUNT *NUMBER* | | ALTERNATE PHONE NUMBER r | |
| ADDRESS | | EMPLOYER NAME | |
| CITY | STATE    ZI | EMPLOYER *TELEPHONE NUMBER* (--- ) | |
| EMAIL ADDRESS | | | |
| CO-BORROWER *SIGN ATURE* | | DATE | |

**If you have additional co-signers, pkasa be sore to attach their information to the application including their signatures.**

# Exhibit 10

Exhibit 10

## FecikzOffice.

**FedEx Kinkia's is now FedEx CI lice**

# Fax Cover Sheet

Date  *12/10/10*                              Number of pages  **3**   (including cover page)

**To:**                                        **From:**

Name  *Aa*  *1 LIR*  *Loan Servc*             Name  *Oskar Lizarraga-Davis*

Company _____                     **Company** _____

**Telephone** ████████████                    **Telephone** ████████████  *02o3*

**Fax** ████████████ *3916*

**Comments** *Renewal-Forebearance  Request*

_____

_____

```
7  90363  00711  1
```
**Fax • Local Send**

!!!!!!MINIIRIA111,1111,        7⁄11!!!!!1 19.1P111,

**fedex.com**  11100.GoFedEit 11100.463.3339

I1 SOO Forte., All 00119⁹  matm.(4.₈  Met) Are hall/rs  Ty tly Meht1011. 1A.0 POO CU tEr                    **MOS**

Case 5:18-cv-04081-BLF   Document 35   Filed 05/18/19   Page 56 of 85

SCLPñSPCCT

# PRI VATELY INSURED LOAN
## Arturattst Opt= Swett

BORROWER ACCOUNT NUMI BER ▮▮▮▮ lo7lol

BORROWER NAM Oskar Lizarraga -Davis

ADDRZSII ▮▮▮▮▮

CITY kkAAAL.   STATE c4   ZIP CODE 94O6l
O₃O₃

NUMBER

AVIERNATE TELEPFIONEi MERE___)___-___Same

WORK TIMMONS NUM R(___-___

EMAIL ADDRESS _____   OO r coin

Section
If your filmuebl sinnuku. is  pselcisy. it  bad as make timed, mosses on rot *dietitian Ioautxl. you may swan to consider MODIFIED oimottATEDitsi ATIKERT SCHEDULE t PAGRS)Mret rnbelal• offer=

- ill mouths of pry   ti :at MIK of tba ropier monthly priocipal tad Interest payment emount.
- 1 7 mouths of imam- idy payatenta equaling 31 days of Itcorest
- A let= to ran Owl 60 mid balm, payloads for the bobnce of your Icon period.
  'Those mow= moy be higher than your previa= mosaddrmount: du to the 24 moots of reduced pummel listed above.

- Yet. I would Re to   ly Forte I4GR21 Orr:RIM'' applying Ibr the MGRS. you may skip Settee 2 mud go to yeti= 3.

-- No. Para   blot to nal c tt leas; 501 o  eery tesubr ably parneut fur the following

*[handwritten:]* I retake my ntl. boalds in March and then have to look falk full-time job after I pass. I work part-time while studying and have too many bills to attend everything

Section kr  At     n

if  yarn- financial diffianltio l³ PITO Pi from ttrsitleg IbnelY Parana' trades • Modified Graduated Rtpsyieem Selsrzhdo (MORO oe year privately Insured loco% you any be anti*, fora -Probcoratroe. forbtamos is gamed at the owner': discreticu for a four moat% as an eltererive to reviler moat   't womb. Tiro Ferbesauuet Is normally wood in iriersatona of we ᴛᴏ tbroct mout s. with a oweimora of twelve mouths during tin life ado lo a The Pettieunanobiteriod troy be bacisfirted w cover periods of defimpserray. If soy exist. flowerer, Rey peptise reports don were tularolletd to 4 /ea Imam well not bee ᴍᴵᴵᴵCᵣₑᵣd if    Forbemanue it graded reuctscrbrely.

Yet,,1 hereby :egotist   Frobeatunco for ail of my efipille Privately kneed Iowa} If rIsts Forlactranca k being requested for specific loam, picot list the feu disha  meat dm: deceit

Number of mouths you sn:rec testing         frtosi   f

**Section 3:**
Yost sons maim* roakingyeess   velar siesuhlypaysoema reaB got Forhesterme er MORS bee been approved. Yost will moire, wiloon make of the avowal or denial of this amp est, after I's Ica bees prooramed.

I Lenity that I am amble to owl a Formate according to ilas present mnam of my loanto. I understood *that* mewed and unpaid imams* will be espitalitad *et* the expirstion of ti s MORS or Porbe-wane period, nod included inn new repro:rot schedule. This new ref:smelt, schedule will deereasa sty ropaymeot period ei d increase my monthly **minter** ammo.

understood this term sod i   sapponins doesorshoutirea will =nip goe pmpatty of the laider, sadier 1ta ova. The owner reserves the sight to Obbio tt  copy of my • rosin opal. AskEtkrast debt /Mend er prafestoatiel payroesan to other ermEtors eyelid ma* lo the denial or tantiemirm of my fothearnme r spent I roderstood that slinetd eta ahines:et ancler which I applied 13,r Irerbearenre apace, I time hornerhmaly racily AES Grisham and PM' camel Services- The above infbnemiamt ie use and tweet m the heat of my lerawelesly'' 1 anderosod that nil   presentation may lead to e o deoial of my respites&   have reed     and arse to the terms of this memeat. If I islemod *MORS,* l oaderwood time [hove mooed to Mend the                    of lies    promissory unto far my Privately brazed loads)..

Borrewer Sim ms:ire                                                   Data  *4·2·11*

SELECT EITHER MGRS 011 ECONOMIC HARDSHIP IFORBEARANCE. BUT NOT**limn** •

*'' ALL ITEMS MUST BE C *METED OR INDICATE ''MX: ANY INCOMPLETE ITEM WILL BE *CAUSE* FOR DENIAL.

TE1 :SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERBI

| JA CO-BORROWER | 70 kel b | S | TELEPH ONE NUMBER (— → |
| ACCOUNT NUMBER | V.-60 | 4 itt7'4 | ALTERNATE rooMENUMNER ( ) |
| ADDRESS | | 4442led | ninny xa. E8 |
| CITY | STATE | ZIP | EMPLOYER TELEPHONE NUMBER ( |
| EMAIL ADDRESS | | | |
| CO-BORROWER SIGNATURE | | | DATE |

| 2nd CO-BORROWER | | TEE.EPEONE N*UMBER* (— |
| ACCOUNT NUMBER | ,,,111.091±11, | ALTERNATE PHONE NUMBER |
| ADDRESS | | EMPLOYER*NAME* |
| CITY | STATE | ZIP, | EMPLOYER TELEPHONE NUMBER ) |
| EMAIL ADDRESS | | |
| CO-BORROWER SIGNATURE | | DATE |

Ityou have additional co-s; goers, please be sore to attach their information to the application including their signatures.

# Exhibit 11

Exhibit 11

## FfecitzOfta.,

FedEx KInko's is now FoclEi  Office

# Fax Cover Sheet

Data _____ **0.6'** I/ (

Number of pages          (including cover page)

## To:

Name

Company          -04

**Tele**phone

Fax _____

**Comments** _____

## From:

Name _____ _Oskar   Lizarraga-Davis_

Company _

Telephone            mus> 3

SC-FliBNCT

# UVATELY INSURED LOAN
## Rkpayoulta Option Form

BORROWER ACCOUNT Ii )MBER ███████████ 6761

BORROWER NAME ████ Oskak Lfallaga-Hass █████

All ████████

rniv _I W wood City_  STATE _CA_  ZIP CODE _9406l_

TELEPDONE NUMBER █████████  03_0___

ALTERNATE TELEPHONI NUMBER  _5 cte-v..._

WORK TELEPHONE NMI 3ER (.————  —

EMAIL ADDRESS  ti₌₇  _y/LhUO_ **CO14 1**

### Section I:

IC  your firs eeial  simatkm 1  making it  hard  to  make timely payments on your edneatien  loantel.  you may went to consider MODIFIED GRADUATED It. "WENT SCHEDULE iMORSI. This schedules offer=

- II months of parrs titer SO% of the regular monthly principal sad interest pyrnem amount.
- 12 month* of intent t only payments equallisg.31 days of intent
- A roam to foil prin ipal and Interest payments for the halstrice of your lain peried.
  _'niece_ payments tral r be higher than your preview monthly payments duo in the 24 _triontha_ of reduced payments limed nbovc.

. Yes. I would Bins to ir **or for** the MGRS _elf_ line Arr. applying for the MORS, you any skip Section 2 end go to section 3.

—  Ho, I ____ unable to mg fors id | 50.4 • r fey ____ mauthly payment for the ____ • ____ reasons?

_Working mnimal hrs/part-time while studying to
retake my NH-certitenho exam to work in profession
as Physician Asst. and obtain full-time job in my field._

### Section 2:

If !..aur financial ditticrilks p event you thorn malting timely payments inkier a Madifled Graduated Repayment Sehtdoki WOKS) en your Priviniely Inuorod Instal, you may be eligible fors Farbeitraues. Forbearance is granted at ?ha °wads discristioo for II few months as an alternative to rsgulsr monthly **aysnem** The Forbearance la norcrrolly granted in inclement% of one tc throe triorahrt. with a inattirriam of twelve moths durirts _the_ life of the ____ nu The Forbearance period may be backdated in cover periods of delinquency, if any milt. However. nay ttersuivc reports that were submitted t@l redk bureaus will ant be removed like Farbertrinee is gunned rittroactivtly.

k/es, I hereby rceinearl  Forbears:see for **all of my eligible Privately bowed lotto,.** if the Forbenranct is being requested fur specific lotto', please Ust Me first disbud meet dates of earh:

_____  _____  _____

Nuriber of mouths you _sol_ reci _é_ tins Forbcorstita: _____

**Section 3:**
You era continue rnablia yo    replar monthly payments until the Forbearance at' MC RS hal been approved. You will receive written notice of illa approval 'Iᵗ 'iecust of this r    rest, after it line been processed.

certify that I am use    to u Ate payments ner.arding to die present tenor of my triantst. I undcrstAnd that teemed and unpaki interest will be repurtlited at the aspiration el the MGRS or Forbearance period, mad inc'uded in a new repayment schedule. This new repayment aclitchile will decrease my repayment period mod inereana my monthly payment! amount.

I understand tvis request And  II supporting dotriunentation will remain the poverty of the leAder. ᵐᵐⁱⁱˡⁱᵏⁱʳ its 11=0. The owner reserve's the ritdit to &run *  copy of mI credit report. Additional debt Incurred or preferential payments to oilier creditor; ooniti result In the denial or termination of my forbearance rerpmet. I understand that should my situation wider which I applied for Forbearance change, I must immediately notify AES graditrite and Pre 'ensional Services. The above tutors: oaken is true *sad* correct to the best *of my* knowledge. I undonstood that misrepresentation may lead to  be &rat or my to 'ᵍ'ᵉ'- I bave read and understand and ayste to the terms of this request III *elected MORS, understand that I have ettreed   amend the reptya  at term:Lai the    idnal prnertissory cote for my Privately !marred 'Dante).

Bnrrower Monitore ———_                                                     -        Date                  £
                              x7#"'

· SELECT EITHER NIGRS·)R ECONOMIC 13AR1 SflIP FORBEARANCE. RUT NOT ROTH "

*- ALL ITEMS MUST DE d OMPLETED OR INDICATE "NIA", ANY INCOMPLETE ITEM WILL LIE CAUSE FOR DENIAL

---

T111 ; SECTION mum' SE COMPLETED FOR ACCOUNTS WITH CO-IIORROWERS!

I sr CO-BORROWER ————————————————    TELEPHONE NUMBER (——— ——————————

ACCOUNT NUMBER                                     ALTERNATE PHONE NUMBER (       ————————

ADDRESS                                            EMPLOYER NAME              —————————

cm'                    STATE,      ZIP————    EAIPLOYER TELEPHONE NUMBER (——— ——— ——————————

EMAIL ADDRESS                                                                ——————————

CO-BORROWER SIGNATURE                              DATE

2nd CO-BORROWER                                    TELEPHONE NUMBER (        i

ACCOUNT NUMBER   ———,                               ALTERNATE PRONE NUMBER (         /

ADDRESS                                            EMPLOYER NAME

CITY                 STATE.        ZIP             EMPLOYER TELEPHONE NUMBER (       1

EMAIL ADDRESS

CO-BORROWER SIG NATURE —.                           DATE            ————————

If you have additional co-sigi ices, plense he sure to attach their information to the application including their signal': res.

# Exhibit 12

Exhibit 12



*PRIM?Wif,*
*ifxir Home Offices*

## Fax Cover Sheet

| | | |
|---|---|---|
| P Par\ Sikkic pu#: 11 1- | | |
| *Freaut)81%.9.* A. thAlutkDAiii 5 Date: **15 - I I** | | |
| Pages Onekireig awe* Timm **I a** LI{q4$^4$N=) | | |
| **lierktioto**$^3$**4** 1-111 0$_4$44Frisaik **aiMIS**Om coin | | |

Coamente:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Cire eciinlity Chanes The lofoonation contained in this Sur massage is privileged and confidential infbneation intended only far the use of the individual or amity named above. U' the reader of this =map is not the recipient of the employee or agent nrapoosilde to deliver it to the intended reeipleat, you are hereby rot notice that you ore in prenention of ca al and pdvileged Information. Any rassemintdian, di**m or copying** *of* thin coommnioation is strictly prohibited. Please konsedtatob- notify the sender by telephone of yoor inadvertent teoeipt, and return the original her=seep to the sender at the address above via *the* U.S. Natal Service. '

siC-PitltiCT

# PRIVATELY INSURED LOAN
## Retsayoptag Option Pane

**BORROWER ACCOUNT NUMBER** ▬▬▬ **WO**I

**aoRRasna** NAME  *Oskar Lizarraga-Davis*

**ADDRESS** ▬▬▬▬▬

**CffY**                                    ZIP CODE ◦ ̲ ◦**W**

**TELEPHONE NUMBER (** _____ **0303**

**ALTERNATE TELE/WOKE PIUMEER** _____ _____

**wORK**=**spoon meantt** _____ ‗

**EMAIL ADDRESS** ‗ ̲ ̲ **00 , COM** .

Seed= 1:
If your fmancis1 minutia is enakito is band so wake tinily Hymen op yoar edscatioo bons).  you unto' won to con:idle MODt lED GE.ADUATED IFWATMENT SmilY17LE, li4GI4Il. Tie's Weida, afro%

- 12 mouths of payments st 50% of to re pobs' t000thly yrioeipoi ad attain payment sew═══
- 12 moths of intents only paymoms equefses 21 'toyed icemen.
- A rat= to fa peitteipal sad Wave* payoteots forint balm* of yew last period.
  nett payairmszpay be*ear dna yoar goyim= tootably precis dyes to the 24 gavotte of teamed payments Sued shovw.

-   et weld like ea apply for the MORS tIf you sie entiying firths MGRS., you troy skip Section 7 sowt go ow woke 3,

No, Para    We to mks to beau 517%   my molar mood* Termed for the folkovisig ──────

**lo¹ ⁴P**            **/14444**        # **aye** ,

Section        **a** *Aizz* ●
I f your Mamie! **eifrogaies** protest yen frau snaking timely portents ander a Maas' Graduated IP.epayntent Stbrdale I MGRX) an *groat* Privately lontand tozotai you may ho eftglla• foe e Pfxbestraoto. Prebtuataae is 'coated at the enwroes &wed= fare *finr* months Ns *art* alterative to mauler snood* prams. *The* Potkonsnot it normally gotnicalitsitereaxeis of ons **an* 'DIM* whh  =IOC= Or WON‗** **=Win dlikl\* rho** llfe Odes We. Tle*Fotheasanos period may be toolalsIod to caw periods of dernelosnay. if soy *exist* floweveer, any peptise repels thot **were** salnoistal to milt lemon cal art hr Trosnett, Mho Forionrite it granted eisoietirely..

-   k/`' '"
    Yee,, I herebymese i Nahanni*. fur all of my .Ebb Primal kerma know. If tho Fbebsatsoce is being toressesi fir specific loans, pima fist the Vaal dirbuturoacut data: of tech: _____

Number of mood* you aro reiptiting Fothoss000r─ ─ ─ **☞** ̣**lt/t**

Seedan

Yen soon coati:ma maiinslast trod= aseenhiypsystwees awl the Forbeinsoce or MORE *hss* ham apposed. Yen *ID leesivs ovinen mike of eye approval or &ski etrhip nsroos4 neer h has bocarrouessext

I certify tint 1 sm tun bk to make gammas acconlios to this present mons of ley issults). I understand the seemed and tiepin" kiting will be espitalized st ter atpindian alio MORE or Forbes/sore period, *sod* included in el new repaymeas schedule. This new repayment schecale will decrease any toperneer period nisi lens ate *lay* monthly parneve aolotmt.

I ursilsouwil this request and ill soppartinte documentation aril masts this property of the kador, andfor lta Bps& The °weer ressiven the right to obtain a  ropy of *etsy* cm& newt. Adcitianal debt liana" *or* preferential mama% to other eresTnom could result its the denial or termination of my ibrheasainse resposer. I yokels:ad that oluseld *ant* s  nd= tinder which I ;NEW for Foss clause, I tins innoesSesely notify AES Gosiusic end Profcatiomil Serrices. The above isentmatiess is roc sod coma to the hest of my Imariedge. I atdirsand that **lion may lead to the desist of my request.**  have read          and ssree to the lei     of this relent. If selected MGRS, I undo   Rand that 1 have speed to =god Ihe ropovin    of the            promissory bate for ivy Privately hewed lotrags)..

Borrertnr Signature _____    Date ‾6‾/‾15‾/‾11‾

SELECT tinitEtt MGRSOR ECONOMIC HARDSHIP FORBEARANCE. Sin *NOT* 10TH

ALL ITEMS MIST BE COMPLETED OR INDICATE "NfA". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. "

---

THIS SECTION MUST BE COMPLETED FORACCOUNTS WITH CO-BORROWERS.

ist CO-BORROWER   *ColSkelo*          *C*        TEL EIPBONE NUMBER(—   ⟩

ACCOUNT NUMBER       *e/24*        *4 d2IttlX*    ALTERNATE PHONE NUMBER (          )

ADDRESS   *Cab- A ; (a /*     *#4*    *el-44-41*    EMPLOYER

CITY                    STATE           *ZIP*        EMPLOYER TELEPHONE NUMBER (          /

EidAIL ADDRESS  — — _

CO-BORROWER SIGNATURE                                   DATE

2nd CO-BORROWER                                TELEPHONE NUMBER(

ACCOUNT NUMBER                                ALTERNATE *PHONE* NUMBER(

ADDRESS                                          EMPLOYER NAME

**env**                    STATE– **ZIP.**        **WM-0Y=** TELEPHONE NUMBETt ( ——

EMAIL ADDRESS

CO-BORROWER SIGNATURE                                   DATE

**If you have additional co-signers, please be sure to attach their information to the application including their signatures.**

# Exhibit 13

Exhibit 13



# National™
# Collegiate
# Trust

**FEBRUARY 27, 2010**

American Education Services
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B164 4387 6902 27L2#
OSKAR A LIZARRAGA-DAVIS
■■■■■■■■ ■

REDWOOD CITY CA 94061-3602

ACCT NUMBER: ████6761

---

| THIS LETTER IS FOR YOUR INFORMATION ONLY. |
|---|

**WHY WE ARE CONTACTING YOU**
Based on enrollment information we recently received, changes were made to the separation date, deferments, and/or forbearances on your education loan(s). Please refer to the reverse side of this letter for complete details regarding the changes that were made.

**ADDITIONAL INFORMATION YOU MAY FIND HELPFUL**

| If: | Then: |
|---|---|
| a deferment was granted/adjusted on a FFELP loan(s)... | ...you will be billed for the accrued interest on loans that are not federally subsidized. If you choose not to pay the interest, it will be *capitalized* (added to the principal balance of the loan) in accordance with the terms of your promissory note(s). Capitalized interest may increase your monthly payment amount. |
| | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, any outstanding interest will be *capitalized* and your loan(s) will be set up for immediate repayment. |
| a deferment was granted/adjusted on an Alternative loan(s)... | ...the interest may be *capitalized* or billed in accordance with the terms of the loan. |
| | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, your loan(s) will be set up for immediate repayment. |
| a deferment or forbearance was ended on your loan(s)... | ...repayment will resume within 60 days of the new end date. |
| a deferment or forbearance was ended on your loan(s) and you had been using Direct Debit, our automatic payment service, prior to the deferment or forbearance... | ...we will resume automatically withdrawing your payments from your bank account. Please notify us immediately if you no longer wish for your payments to be debited from your bank account or if your account information changed during the deferment/forbearance period. |
| you feel the information listed on the reverse side of this letter is incorrect... | ...in most cases we will automatically receive the new enrollment information that will correct the status of your loan(s). Please allow up to 4 weeks for us to receive and process new information. |

SXP8:PS06BSAPPM
████6761  ████6761    MR 00090100570001403

**'WHAT IS CAPITALIZATION?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your unsubsidized loan(s) during periods of deferment. If you fail to make required interest payments before the resumption of principal repayment, the lender may capitalize such interest. The principal balance of your loan(s) will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When your deferment ends and you begin repaying your loan(s), your monthly payment amount will be higher or, if your loan(s) is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on loans where interest is paid during the deferment and loans where the interest is capitalized. This example uses an interest rate of 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $ 0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

* Total amount repaid includes $1,238 of interest paid by the borrower during the deferment.

**Result:** During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

FEBRUARY 27, 2010

AES
SCHOOL ENROLLMENT STATUS CHANGE LOAN DECLARATION

ACCOUNT NUMBER:        6761        NAME:     OSKAR A LIZARRAGA-DAVIS

NEW ENROLLMENT STATUS
SCHOOL              :    FOOTHILL COLL
SEPARATION DATE     :    12/11/09
SEPARATION REASON   :    GRADUATED
SEPARATION SOURCE   :    CH-CLEARINGHOUSE
DATE NOTIFIED       :    02/25/10

LISTED BELOW ARE THE LOANS THAT WERE AFFECTED BY THE ABOVE REQUESTED SCHOOL
ENROLLMENT STATUS CHANGE. AS A RESULT, YOUR REPAYMENT START DATE MAY HAVE
CHANGED AND DEFERMENT OR FORBEARANCES MAY HAVE BEEN EITHER APPLIED TO YOUR
LOAN OR MODIFIED.

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | CURRENT PRINCIPAL | REPAYMENT DATE |
|---|---|---|---|---|
| ALPLN | NCT | 06/26/06 | $26,869.93 | 09/16/06 |

ACTION

CHANGED D-FULL TIME SCHOOL DEFERMENT.  NEW DATES ARE 09/02/08 TO 12/11/09
ADDED F-LATE SCHL NOTIFICA FORBEARANCE FROM 12/12/09 TO 12/31/09

SXP8:PS06BSAPPM
      6761        6761        MR 00090100570001403

# Exhibit 14

Exhibit 14

```
ITS2C*****4043;;                    AES/PA        VTAM NAIC        TSX2D
DATE 09/14/16 18:24:30      LOAN FINANCIAL ACTIVITY      PAGE  1 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                 CUST ACCT:  LTI1  ORIG BAL:  26,315.79
BOND ISSUE: NCT20064   PD AHEAD:    STATUS: ACTIVE     CURR BAL:     0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 03/03/15 | 03/03/15 | 5003A | 5.00CR | 0.00 | 0.00 |
| 2 |  | 03/02/15 | 03/02/15 | 1030A | 29,689.05CR | 11.74 | 0.00 |
| 3 |  | 02/27/15 |  | 2601A | 5.00 | 58.71 | 29,099.01 |
| 4 |  | 02/12/15 | 02/13/15 | 1010C | 100.00CR | 62.63 | 29,099.01 |
| 5 |  | 01/27/15 |  | 2601A | 5.00 | 58.71 | 29,099.01 |
| 6 |  | 01/12/15 | 01/12/15 | 1010C | 100.00CR | 62.63 | 29,099.01 |
| 7 |  | 12/27/14 |  | 2601A | 5.00 | 117.43 | 29,099.01 |
| 8 |  | 11/27/14 |  | 2601A | 5.00 | 27.40 | 29,099.01 |
| 9 |  | 11/20/14 | 11/21/14 | 1010C | 100.00CR | 93.94 | 29,099.01 |
| 10 |  | 10/27/14 |  | 2601A | 5.00 | 46.97 | 29,099.01 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C*****4043;;              AES/PA      VTAM NAIC     TSX2D
   DATE 09/14/16 18:24:35   LOAN FINANCIAL ACTIVITY     PAGE  2 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN   OWN: 1229621P-NCT
GUARANTOR: TERI                CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00


     REV  EFFECTIVE   POSTED    TRAN      TRAN      INTEREST    PRINCIPAL
     REA    DATE      DATE      TYPE     AMOUNT     ACCRUED      BALANCE
 1        10/15/14  10/16/14   1010C     100.00CR    70.42    29,099.01
 2        09/27/14             2601A       5.00      58.59    29,099.01
 3        09/12/14  09/15/14   1010C     100.00CR    62.50    29,099.01
 4        08/27/14             2601A       5.00      62.50    29,099.01
 5        08/11/14  08/12/14   1010C     100.00CR    58.59    29,099.01
 6        07/27/14             2601A       5.00     117.22    29,099.01
 7        06/27/14             2601A       5.00     180.06    29,099.01
 8        05/12/14  05/12/14   1010C     125.00CR   121.36    29,099.01
 9        04/11/14  04/14/14   1010C     125.00CR    39.26    29,102.65
10        04/01/14  04/01/14   7001A       0.00     158.66    29,188.39


     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                  AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:35      LOAN FINANCIAL ACTIVITY     PAGE  3 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT:  LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 02/19/14 | 02/20/14 | 1010C | 125.00CR | 127.70 | 28,709.48 |
| 2 | | 01/17/14 | 01/17/14 | 1010C | 125.00CR | 166.82 | 28,709.48 |
| 3 | | 12/05/13 | 12/06/13 | 1010C | 125.00CR | 151.53 | 28,709.48 |
| 4 | | 10/27/13 | | 2601A | 5.00 | 11.65 | 28,709.48 |
| 5 | | 10/24/13 | 10/24/13 | 1010C | 123.92CR | 104.94 | 28,709.48 |
| 6 | | 09/27/13 | | 2601A | 5.00 | 7.78 | 28,709.48 |
| 7 | | 09/25/13 | 09/26/13 | 1010C | 123.12CR | 112.91 | 28,709.48 |
| 8 | | 08/27/13 | 08/27/13 | 1010C | 120.69CR | 163.52 | 28,709.48 |
| 9 | | 08/27/13 | | 2601A | 5.00 | 0.00 | 28,709.48 |
| 10 | | 07/16/13 | 07/16/13 | 1010C | 120.69CR | 112.91 | 28,709.48 |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                    AES/PA        VTAM NAIC      TSX2D
DATE 09/14/16 18:24:36       LOAN FINANCIAL ACTIVITY      PAGE  4 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT:  LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00


      REV   EFFECTIVE   POSTED    TRAN        TRAN      INTEREST    PRINCIPAL
      REA     DATE       DATE     TYPE       AMOUNT     ACCRUED      BALANCE
 1          06/17/13   06/17/13   1010C      120.69CR    54.50     28,709.48
 2          06/03/13   06/03/13   1010C      122.40CR    27.25     28,709.48
 3          05/27/13              2601A        5.00     151.84     28,709.48
 4          04/18/13   04/19/13   1010C      122.40CR   113.00     28,709.48
 5          03/20/13   03/20/13   1010C      122.40CR    85.82     28,709.48
 6          02/26/13   02/27/13   1010C      122.40CR   101.43     28,709.48
 7          01/31/13   02/01/13   1010C      122.40CR    15.60     28,709.48
 8          01/27/13              2601A        5.00     105.34     28,709.48
 9          12/31/12   12/31/12   1010C      122.40CR    15.65     28,709.48
10          12/27/12              2601A        5.00     140.91     28,709.48


      SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                 AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:36    LOAN FINANCIAL ACTIVITY      PAGE  5 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:    0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 11/21/12 | 11/21/12 | 1010C | 122.40CR | 105.68 | 28,709.48 |
| 2 | | 10/25/12 | 10/26/12 | 1010C | 122.40CR | 121.34 | 28,709.48 |
| 3 | | 09/24/12 | 09/25/12 | 1010C | 122.40CR | 164.39 | 28,709.48 |
| 4 | | 08/13/12 | 08/14/12 | 1010C | 122.40CR | 109.59 | 28,709.48 |
| 5 | | 07/16/12 | 07/16/12 | 1010C | 111.99CR | 109.90 | 28,709.48 |
| 6 | | 06/18/12 | 06/18/12 | 1010C | 107.35CR | 122.07 | 28,709.48 |
| 7 | | 05/18/12 | 05/18/12 | 1010C | 107.35CR | 137.82 | 28,709.48 |
| 8 | | 04/13/12 | 04/16/12 | 1010C | 107.35CR | 121.77 | 28,709.48 |
| 9 | | 03/13/12 | 03/13/12 | 1010C | 107.35CR | 113.73 | 28,709.48 |
| 10 | | 02/13/12 | 02/13/12 | 1010C | 107.35CR | 129.42 | 28,709.48 |

```
      SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;              AES/PA        VTAM NAIC      TSX2D
DATE 09/14/16 18:24:37    LOAN FINANCIAL ACTIVITY      PAGE  6 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                CUST ACCT: LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064  PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 01/11/12 | 01/11/12 | 1010C | 107.35CR | 117.09 | 28,709.48 |
| 2 |  | 12/12/11 | 12/13/11 | 1010C | 107.35CR | 109.01 | 28,709.48 |
| 3 |  | 11/14/11 | 11/14/11 | 1010C | 107.35CR | 132.37 | 28,709.48 |
| 4 |  | 10/11/11 | 10/12/11 | 1010C | 107.35CR | 113.06 | 28,709.48 |
| 5 |  | 09/12/11 | 09/12/11 | 1010C | 107.35CR | 124.84 | 28,709.48 |
| 6 |  | 08/11/11 | 08/11/11 | 1010C | 107.35CR | 89.73 | 28,709.48 |
| 7 |  | 07/19/11 | 07/19/11 | 1010C | 212.31CR | 310.60 | 28,709.48 |
| 8 |  | 05/01/11 | 05/02/11 | 7001A | 0.00 | 238.38 | 28,709.48 |
| 9 |  | 03/01/11 | 03/01/11 | 7001A | 0.00 | 467.00 | 28,471.10 |
| 10 |  | 10/31/10 | 11/01/10 | 7001A | 0.00 | 574.57 | 28,004.10 |

```
      SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                    AES/PA        VTAM NAIC        TSX2D
DATE 09/14/16 18:24:37      LOAN FINANCIAL ACTIVITY      PAGE  7 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                CUST ACCT: LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:    STATUS: ACTIVE    CURR BAL:    0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|-----|----------|----------|-------|-----------|----------|-----------|
| 1  |     | 06/01/10 | 06/01/10 | 7001A | 0.00      | 554.35   | 27,429.53 |
| 2  |     | 01/01/10 | 02/26/10 | 7001A | 0.00      | 73.86    | 26,875.18 |
| 3  |     | 12/12/09 | 02/26/10 | 7001A | 0.00      | 1,710.40 | 26,801.32 |
| 4  |     | 10/21/08 | 10/22/08 | 1010C | 176.40CR  | 375.01   | 24,892.31 |
| 5  |     | 08/07/08 | 08/08/08 | 1010C | 256.06CR  | 156.64   | 24,892.31 |
| 6  |     | 07/07/08 | 07/07/08 | 1010C | 256.06CR  | 173.77   | 24,991.73 |
| 7  |     | 06/06/08 | 06/09/08 | 1010C | 256.06CR  | 166.88   | 25,074.02 |
| 8  |     | 05/08/08 | 05/08/08 | 1010C | 256.06CR  | 178.93   | 25,163.20 |
| 9  |     | 04/07/08 | 04/08/08 | 1010C | 256.06CR  | 203.49   | 25,240.33 |
| 10 |     | 03/07/08 | 03/10/08 | 1010C | 256.06CR  | 189.54   | 25,292.90 |

```
        SELECTION __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2C*****4043;;                    AES/PA        VTAM NAIC        TSX2D
DATE 09/14/16 18:24:37        LOAN FINANCIAL ACTIVITY      PAGE  8 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT:  LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/08/08 | 02/08/08 | 1010C | 256.06CR | 203.50 | 25,359.42 |
| 2 | | 01/09/08 | 01/09/08 | 1010C | 256.06CR | 211.17 | 25,411.98 |
| 3 | | 12/10/07 | 12/10/07 | 1010C | 256.06CR | 221.26 | 25,456.87 |
| 4 | | 11/09/07 | 11/12/07 | 1010C | 256.06CR | 200.29 | 25,491.67 |
| 5 | | 10/12/07 | 10/15/07 | 1010C | 256.06CR | 247.92 | 25,547.44 |
| 6 | | 09/07/07 | 09/10/07 | 1010C | 256.06CR | 204.87 | 25,555.58 |
| 7 | | 08/09/07 | 08/09/07 | 1010C | 283.65CR | 240.60 | 25,606.77 |
| 8 | | 07/06/07 | 07/09/07 | 1010C | 302.59CR | 205.99 | 25,649.82 |
| 9 | | 06/07/07 | 06/08/07 | 1010C | 302.59CR | 220.89 | 25,746.42 |
| 10 | | 05/07/07 | 05/07/07 | 1010C | 302.59CR | 221.59 | 25,828.12 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
 ITS2C*****4043;;                    AES/PA      VTAM NAIC      TSX2D
 DATE 09/14/16 18:24:38    LOAN FINANCIAL ACTIVITY      PAGE  9 OF 10


 BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
 1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
 GUARANTOR: TERI                CUST ACCT:  LTI1  ORIG BAL: 26,315.79
 BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00


        REV  EFFECTIVE   POSTED    TRAN      TRAN     INTEREST    PRINCIPAL
        REA    DATE       DATE     TYPE     AMOUNT    ACCRUED      BALANCE
     1       04/06/07   04/09/07  1010C      302.59CR    72.15    25,909.12
     2       03/27/07   03/27/07  1010C       50.00CR    43.32    26,139.56
     3       03/21/07   03/21/07  1010C      252.59CR   195.38    26,146.24
     4       02/22/07   02/23/07  1010C      252.59CR   224.54    26,203.45
     5       01/22/07   01/22/07  1010C      252.59CR   253.72    26,228.95
     6       12/18/06   12/19/06  1010C      252.59CR    79.83    26,228.95
     7       12/07/06   12/07/06  0390A   26,403.13       0.00    26,228.95
     8       12/07/06   12/07/06  0395A   26,403.13CR   174.18        0.00
     9       11/13/06   11/14/06  1010C      252.59CR   181.93    26,228.95
    10       10/19/06   10/19/06  1010C      252.59CR   222.36    26,299.61


        SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C*****4043;;              AES/PA        VTAM NAIC      TSX2D
   DATE 09/14/16 18:24:38    LOAN FINANCIAL ACTIVITY      PAGE 10 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                   CUST ACCT: LTL1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00


      REV  EFFECTIVE  POSTED   TRAN        TRAN      INTEREST     PRINCIPAL
      REA    DATE      DATE    TYPE       AMOUNT      ACCRUED      BALANCE
 1         09/18/06  09/18/06  1010C      189.59CR    189.60     26,315.79
 2         08/22/06  08/23/06  1010C      141.74CR     84.26     26,315.79
 3         08/10/06  08/11/06  1010C      242.82CR    314.34     26,315.79
 4         06/26/06  06/26/06  0101A   26,315.79        0.00     26,315.79
 5
 6
 7
 8
 9
10


      SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2X*****4043;                  AES/PA        VTAM NAIC        TSX2Y
   DATE 09/14/16 18:24:46 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  2

   BORROWER SSN ***-**-4043    NAME OSKAR A LIZARRAGA-DAVIS

            SCHED    INSTALL   REPAY   REPAY  1ST DUE 1ST DISB    LOAN
   SEL STA TYPE    AMOUNT    LVLS    TERM    DATE    DATE      PGM      OWNER
    1  I   RP      100.00     3      156   02/11/15 06/26/06 ALPLN     NCT
    2  I   L       245.94     2      163   07/11/14 06/26/06 ALPLN     NCT
    3  I   RP      125.00     3      166   04/11/14 06/26/06 ALPLN     NCT
    4  I   L       234.92     2      173   09/11/13 06/26/06 ALPLN     NCT
    5  I   TG      233.97     3      176   06/11/13 06/26/06 ALPLN     NCT
    6  I   TG      122.40     4      187   07/11/12 06/26/06 ALPLN     NCT
    7  I   TG      107.35     4      198   08/11/11 06/26/06 ALPLN     NCT
    8  I   L       212.31     2      200   06/11/11 06/26/06 ALPLN     NCT
    9  I   L       209.82     2      202   04/11/11 06/26/06 ALPLN     NCT
   10  I   L       203.69     2      206   12/11/10 06/26/06 ALPLN     NCT
   11  I   L       195.62     2      211   07/11/10 06/26/06 ALPLN     NCT
   12  I   L       189.61     2      216   02/11/10 06/26/06 ALPLN     NCT

   SELECTION  __


   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2X*****4043;                AES/PA        VTAM NAIC      TSX2Y
 DATE 09/14/16 18:24:47 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  2

 BORROWER SSN ***-**-4043    NAME OSKAR A LIZARRAGA-DAVIS

          SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
 SEL STA TYPE   AMOUNT    LVLS   TERM   DATE    DATE       PGM     OWNER
  1  I   L       213.73     2     216  09/22/08 06/26/06  ALPLN     NCT
  2  I   L       256.06     2     228  09/22/07 06/26/06  ALPLN     NCT
  3  I   L       252.59     2     239  10/22/06 06/26/06  ALPLN     NCT
  4  I   L       242.82     2     239  08/11/06 06/26/06  ALPLN     NCT
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************
  0  ******************************************************************

  SELECTION  __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

# Exhibit 15

Exhibit 15

# Loan Payment History Report
## Date: 2017-03-10

| | | | |
|---|---|---|---|
| Account Number: | ████4043-001-PHEA | | |
| Social Security Number: | ████4043 | Product: | |
| Name: | LIZARRAGA-DAVIS, OSKAR A | Officer Code: | 777064 |
| Birth Date: | 1983-0██ | School: | UNIVERSITY OF CALIFORNIA - DAVIS |
| Address 1: | ██████████ | Program Year: | 200506 |
| Address 2: | | | |
| City: | HOLLISTER | Variable Rate Code: | FU QUARTERLY LIBOR |
| State: | CA | Interest Rate: | 5.31% |
| Zip Code: | 95023-0000 | Last Payment Date: | 2015-02-13 |
| | | Last Payment Amount: | $100.00 |
| | | Payment Due Date: | |
| Contract Date: | 2006-06-26 | Last Interest Date: | 2017-03-10 |
| Date Assigned: | 2017-03-07 | Accrued Interest: | $3,046.14 |
| Charge Off Date: | 2015-03-02 | Recovered Interest: | $0.00 |
| Charge Off Amount: | 29689.05 | Net Interest: | $3,046.14 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $29,689.05 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-06-26 | Net Costs: | $0.00 |
| Disbursement Amount: | $26,315.79 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2015-03-31 | 00:01 | 82 | $29,689.05 @ 4.910 / 03/05/2015 - 03/31/2015 | $119.82 |
| System | 2015-04-02 | 00:01 | 82 | $29,689.05 @ 4.910 / 03/31/2015 - 04/02/2015 | $7.99 |
| System | 2015-04-30 | 00:01 | 82 | $29,689.05 @ 4.920 / 04/02/2015 - 04/30/2015 | $112.05 |
| System | 2015-05-31 | 00:01 | 82 | $29,689.05 @ 4.920 / 04/30/2015 - 05/31/2015 | $124.06 |
| System | 2015-06-30 | 00:01 | 82 | $29,689.05 @ 4.920 / 05/31/2015 - 06/30/2015 | $120.06 |
| System | 2015-07-01 | 00:01 | 82 | $29,689.05 @ 4.920 / 06/30/2015 - 07/01/2015 | $4.00 |
| System | 2015-07-31 | 00:01 | 82 | $29,689.05 @ 4.930 / 07/01/2015 - 07/31/2015 | $120.30 |
| System | 2015-08-31 | 00:01 | 82 | $29,689.05 @ 4.930 / 07/31/2015 - 08/31/2015 | $124.31 |
| System | 2015-09-07 | 00:01 | 82 | $29,689.05 @ 4.930 / 08/31/2015 - 09/07/2015 | $28.07 |
| System | 2015-09-30 | 00:01 | 82 | $29,689.05 @ 4.930 / 09/07/2015 - 09/30/2015 | $92.23 |
| System | 2015-10-01 | 00:01 | 82 | $29,689.05 @ 4.930 / 09/30/2015 - 10/01/2015 | $4.01 |
| System | 2015-11-04 | 00:01 | 82 | $29,689.05 @ 4.940 / 10/01/2015 - 11/04/2015 | $136.62 |
| System | 2015-12-31 | 00:01 | 82 | $29,689.05 @ 4.940 / 11/04/2015 - 12/31/2015 | $229.04 |
| System | 2016-01-01 | 00:01 | 82 | $29,689.05 @ 4.940 / 12/31/2015 - 01/01/2016 | $4.01 |
| System | 2016-01-31 | 00:01 | 82 | $29,689.05 @ 4.960 / 01/01/2016 - 01/31/2016 | $120.70 |
| System | 2016-02-29 | 00:01 | 82 | $29,689.05 @ 4.960 / 01/31/2016 - 02/29/2016 | $116.68 |
| System | 2016-03-03 | 00:01 | 82 | $29,689.05 @ 4.960 / 02/29/2016 - 03/03/2016 | $12.07 |

| System | 2016-03-31 | 00:01 | 82 | $29,689.05 @ 4.960 / 03/03/2016 - 03/31/2016 | $112.66 |
|--------|------------|-------|----|-----------------------------------------------|---------|
| System | 2016-04-01 | 00:01 | 82 | $29,689.05 @ 4.960 / 03/31/2016 - 04/01/2016 | $4.02 |
| System | 2016-04-30 | 00:01 | 82 | $29,689.05 @ 5.180 / 04/01/2016 - 04/30/2016 | $121.85 |
| System | 2016-05-31 | 00:01 | 82 | $29,689.05 @ 5.180 / 04/30/2016 - 05/31/2016 | $130.26 |
| System | 2016-06-30 | 00:01 | 82 | $29,689.05 @ 5.180 / 05/31/2016 - 06/30/2016 | $126.06 |
| System | 2016-07-01 | 00:01 | 82 | $29,689.05 @ 5.180 / 06/30/2016 - 07/01/2016 | $4.20 |
| System | 2016-08-01 | 00:01 | 82 | $29,689.05 @ 5.220 / 07/01/2016 - 08/01/2016 | $131.26 |
| System | 2016-08-31 | 00:01 | 82 | $29,689.05 @ 5.220 / 08/01/2016 - 08/31/2016 | $127.03 |
| System | 2016-09-06 | 00:01 | 82 | $29,689.05 @ 5.220 / 08/31/2016 - 09/06/2016 | $25.41 |
| System | 2016-09-30 | 00:01 | 82 | $29,689.05 @ 5.220 / 09/06/2016 - 09/30/2016 | $101.62 |
| System | 2016-10-01 | 00:01 | 82 | $29,689.05 @ 5.220 / 09/30/2016 - 10/01/2016 | $4.23 |
| System | 2016-10-05 | 00:00 | 44 | Interest Adjustment | $-7.99 |
| System | 2016-10-05 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/01/2016 - 10/05/2016 | $17.03 |
| System | 2016-10-31 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/05/2016 - 10/31/2016 | $110.73 |
| System | 2016-11-30 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/31/2016 - 11/30/2016 | $127.76 |
| System | 2016-12-31 | 00:01 | 82 | $29,689.05 @ 5.250 / 11/30/2016 - 12/31/2016 | $132.02 |
| System | 2017-01-01 | 00:01 | 82 | $29,689.05 @ 5.250 / 12/31/2016 - 01/01/2017 | $4.27 |
| System | 2017-01-31 | 00:01 | 82 | $29,689.05 @ 5.310 / 01/01/2017 - 01/31/2017 | $129.57 |
| System | 2017-02-28 | 00:01 | 82 | $29,689.05 @ 5.310 / 01/31/2017 - 02/28/2017 | $120.94 |
| System | 2017-03-07 | 00:01 | 82 | $29,689.05 @ 5.310 / 02/28/2017 - 03/07/2017 | $30.23 |
| System | 2017-03-10 | 00:01 | 82 | $29,689.05 @ 5.310 / 03/07/2017 - 03/10/2017 | $12.96 |