J. Erik Heath, Esq. (SBN 304683)
J. ERIK HEATH, ATTORNEY AT LAW
369 Pine St., Ste. 410
San Francisco, CA 94104
Tel.:    (415) 426-7850
Fax:    (415) 449-6556
erik@heathlegal.com

Attorney for Plaintiff
OSKAR LIZARRAGA-DAVIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS,<br>    Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.;<br>    Defendant. | Civil Action No. 5:18-cv-4081-BLF<br><br>**DECLARATION OF OSKAR LIZARRAGA-DAVIS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      July 25, 2019<br>Time:     9:00 a.m.<br>Courtroom:  3, 5th Floor<br>Judge:    Hon. Beth L. Freeman |

I, Oskar Lizarraga-Davis, being first duly sworn, depose and state under oath as follows:

1.      I am the plaintiff in the above-styled case. I am over the age of 18 years, and am competent to testify. The facts contained in this declaration are within my personal knowledge, and I could and would testify truthfully to those facts if called under oath to do so.

2.      At some point in early 2017, I received a letter from the Law Office of Patenaude & Felix ("P&F"), informing me that I had an outstanding balance of more than $30,000 for a student loan debt owed to the National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4").

3.      I did not recognize the name NCSLT 2006-4, and went to P&F's website to submit a request that they provide me with verification of the debt.

4. I was concerned about who NCSLT 2006-4 was because there are so many data leaks and scams out there. I did not know whether this was a legitimate company, and whether it had a legitimate right to collect money from me. That was very concerning to me. If I really did owe money to NCSLT 2006-4, I did not want to skirt my obligation. But I did not want (and could not afford) to pay them money if I did not legally owe them anything.

5. In response to my request to P&F, the law firm sent me a letter, dated April 21, 2017, thanking me for my request, and explaining that enclosed were "documents that support [my] underlying obligation" to NCSLT 2006-4. A true and correct copy of that letter is attached as Exhibit 1.

6. The documents did little to allow me to connect the dots between an old student loan and NCSLT 2006-4.

7. Because I still had not received what I requested, on May 15, 2017, I sent another request to NCSLT 2006-4 to provide proof of ownership and payment history of this account. A true and correct copy of that letter is attached as Exhibit 2.

8. In response to that request, P&F sent me a letter, dated May 19, 2017, which essentially repeated the language and supporting documents from April 21, 2017. Neither letter fully explained the identity of this entity NCSLT 2006-4, who was demanding I pay over $30,000 to them. A true and correct copy of the May 19, 2017, letter is attached as Exhibit 3.

9. On or around May 31, 2017, I sent a third request to the attorneys representing NCSLT 2006-4, again insisting to see account documents, such as proof of who NCSLT 2006-4, and whether this entity had the right to collect money from me. I sent this request by certified mail. A true and correct copy of this correspondence is attached as Exhibit 4.

10. Even though the certified mail receipt shows that P&F received my May 31, 2017 request, they never responded to it.

11. The next time I heard about NCSLT 2006-4, it was because I was served with a summons to a lawsuit. That was Sunday, July 16, 2017. A true and correct copy of the packet I was served with is attached as Exhibit 5.

12.     Days after being served with the lawsuit, P&F sent me a letter, pressuring me to settle the case, so it could "discontinue" the pending litigation. A true and correct copy of that letter, dated July 18, 2017, is attached as Exhibit 6.

13.     On August 14, 2017, filed an answer to the lawsuit. After doing some research, I learned that I needed to provide some defenses, such as lack of privity and lack of standing. It cost me over $400 to file that answer, but I felt like I had no choice. A true and correct copy of my answer is attached as Exhibit 7.

14.     At some point while conducting my research, I came across the case that the Consumer Financial Protection Bureau (CFPB) filed against NCSLT for its practices of sending debts to litigation that it could not prove. The CFPB case caught my eye because I had been complaining about that issue for months.

15.     A Case Management Conference was held on the matter on October 4, 2017. I went to the courthouse to appear, and I raised my concern to the Court that NCSLT 2006-4 has not proven ownership of the account. The judge explained that they should not be suing me unless they had proof. In response, I told the judge about the CFPB case against NCSLT. Because I did not have a copy of the CFPB filing, the judge asked me to bring it with me to court for the next conference.

16.     Approximately six weeks later, a second case management conference was held. This time, I printed out a copy of the CFPB action against NCSLT. In open court, and again in the presence of NCSLT's counsel, I referenced the CFPB action against NCSLT, and compared my case to that one. The judge at the conference urged me to hire an attorney because I could not defend the case on my own.

17.     Shortly after that, a trial was scheduled for May 18, 2018. A true and correct copy of that notice is attached as Exhibit 8.

18.     Not wanting to face a trial on my own, especially after hearing the judge's advice, I started to put together some money for an attorney. By the beginning of 2018, I was able to put together enough money to hire J. Erik Heath to represent me in the NCSLT case.

19. As trial got closer, I began to make arrangements to show up in person to testify.

20. At the beginning of May 2018, less than three weeks before trial, I found out that NCSLT voluntarily dismissed its case and walked away. A true and correct copy of the dismissal notice is attached as Exhibit 9.

21. The result from the lawsuit was hardly satisfying. It cost me a lot of time, money, and emotional energy, to fight off NCSLT's lawsuit even though I had been complaining for over a year that I had not seen proof that I owed any money to NCSLT 2006-4.

22. I incurred expenses, such as filing fees and attorney's fees. I also had to take time off work to deal with the case, such as attending the two case management conferences.

23. The entire process also caused a great deal of distress to me. Each time I submitted a dispute, I felt like nobody was listening. Each time I received a phone call from the attorneys regarding the case, I became nervous and anxious.

24. Further, being sued is a frightening prospect. I am a law-abiding citizen, and always try to do the right thing. But once I got served with the lawsuit, I suddenly started to have all kinds of legal worries. I was worried that my paycheck was going to be garnished. Even worse, I was worried that I could lose my job, or even my professional license, simply because I was sued. This fear was always in the back of my mind especially because P&F had once called my workplace.

25. It was not easy to ignore these fears. I was a stay-at-home father for years, and had fairly recently rejoined the workforce when I was sued. At that point, I was also the sole provider for my family. The thought that my new career could be derailed, and that I could have difficulty providing for my family, stood out in my mind for months. I lost sleep, and at times even felt nauseous, because I was so worried about the effects of the lawsuit.

26. Being sued was also embarrassing. I live in Hollister, which is a small town where people gossip. Every time I stepped foot into the courthouse, I risked someone seeing me, and spreading news that I had been sued to others in the town. I was ashamed.

27.    Overall, I felt powerless.  I felt like NCSLT was trying to strong arm me into either settling with them or paying money to fight them.  They just put me in a lose-lose situation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of January, 2019, in Hollister, California.

_____
Oskar Lizarraga-Davis

# EXHIBIT 1

LAW OFFICES OF

# PATENAUDE & FELIX, A.P.C.
### A PROFESSIONAL LAW CORPORATION
4545 MURPHY CANYON ROAD, 3RD FLOOR, SAN DIEGO, CALIFORNIA 92123
TEL (858) 244-7600 OR (800) 832-7675 FAX (858) 836-0318
www.pandf.us

| ARIZONA | NEVADA | NEW MEXICO | OREGON | PENNSYLVANIA | WASHINGTON |
|---|---|---|---|---|---|
| 3260 NORTH HAYDEN RD #209 | 7271 W. CHARLESTON BLVD #100 | 8500 MENAUL BLVD. NE #A-313 | 1618 SW 1st AVE., #205 | 501 CORPORATE DRIVE | 19401 40th AVE. WEST, #280 |
| SCOTTSDALE, AZ 85251 | LAS VEGAS, NV 89117 | ALBUQUERQUE, NM 87112 | PORTLAND, OR 97201 | SOUTHPOINTE, SUITE 205 | LYNNWOOD, WA 98036 |
| TEL: (800) 832-7675 | TEL: (702) 952-2032 | TEL: (800) 832-7675 | TEL: (503) 208-2676 | CANONSBURG, PA 15317 | TEL: (425) 361-1662 |
| FAX: (480) 247-2783 | (800) 867-3092 | FAX: (858) 836-0318 | (800) 832-7675 | TEL: (412) 429-7675/(866) 772-7675 | (800) 832-7675 |
| | FAX: (702) 992-6286 | | FAX: (503) 954-3586 | FAX: (412) 429-7679 | FAX: (425) 967-3508 |

April 21, 2017

778984/855971

OSKAR A LIZARRAGA-DAVIS
850 EL CERRO DR
HOLLISTER CA 95023-5118

RE:  NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4
    Account Number:     XXXXXXXXXXXXXXXPHEA
    Case Number:
    Our Reference Number:   17-13404

Dear Oskar A Lizarraga-Davis:

    Thank you for your recent request for debt validation in the above-referenced matter. Enclosed please find the documents that support your underlying obligation to our client.

    Please contact our office if you have any questions or comments at (800) 832-7675. Thank you for your attentiveness to this matter.

Very truly yours,

LAW OFFICE OF PATENAUDE & FELIX

MICHAEL R. BOULANGER, ESQ.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR**
**This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

**\* Cosigned \*    Loan Request/Credit Agreement – Signature Page**

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

GMAC Bank Undergraduate Loan

Academic Period: 05/2006-12/2006

Lender: GMAC Bank          School: UNIVERSITY OF CALIFORNIA DAVIS

Loan Amount Requested: $25000.00
Deferral Period Margin: 4.75

Repayment Option: Interest Only
Repayment Period Margin: 4.75

Loan Origination Fee Percentage: 5.00
This fee may vary – see paragraph F, page 3 –
Bank will always assess the fee at origination.

**STUDENT BORROWER INFORMATION (Must be old enough to enter into a binding contract)**

Borrower Name: Oskar A Lizarragadavis          Home Address: ▮▮▮▮ San Diego, CA 92103

Social Security #: ▮▮▮4043          Date of Birth: ▮▮▮1983          Home Telephone: ▮▮▮4267

Student Citizenship (check one box):    ☒ U.S. Citizen    ☐ Eligible Non-Citizen(Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Magdalena Anderson          Reference Home Tel #: ▮▮▮▮          Work Tel #: ▮▮▮▮
Reference  Street Address:
Reference City/State/Zip: ▮▮▮▮

**COSIGNER INFORMATION (Must be old enough to enter into a binding contract)**

Cosigner Name: Consuelo B Hayes          Home Address ▮▮▮▮ San Diego, CA 92139

Social Security #: ▮▮▮0110          Date of Birth: ▮▮▮1924          Home Telephone: ▮▮▮8388

Have you ever defaulted on a student loan or declared bankruptcy?    ☒ No    ☐ Yes
Current Employer: UNITED STATES FEDERAL GOVERNME          Employer Telephone: ▮▮▮▮
Current Position: Retired
Years at Previous Employment: 30 Years          Years There: 30 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):    ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name: Esther Goodwalt          Reference Home Tel #: ▮▮▮▮          Work Tel #: ▮▮▮▮
Reference  Street Address:
Reference City/State/Zip: ▮▮▮▮

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement GM.05-06.CSX1.20.0406 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature or nor to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-9406**

Signature of Borrower _Oskar Lizarragadavis_          Date _6-10-06_

## BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _Consuelo B Hayes_          Date _6-15-06_

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make my loan check co-payable to me and the Cosigner.
2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the "Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts

owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the Commonwealth of Pennsylvania. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal.* The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have repaid all of the principal and interest and any other charges I may owe under this Credit Agreement.
3. Repayment Terms - My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that

this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:
1. I understand that you are located in Pennsylvania and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement. If in the future I apply for a loan that is guaranteed by TERI and funded by another lender, I also authorize the sharing of application information for this loan (other than information in a consumer report) with the other lender and TERI and the reuse of such information by such new lender and TERI in my new application.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of

this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICE

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## FEDERAL COSIGNER NOTICE

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER:**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

## GMAC Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ **1. REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Signatures of the borrower and cosigner must match the names pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ **2. ATTACH proof of income**

- For regular wage earners: provide a copy of the cosigner's **current paycheck stub not more than 60 days old that contains the company name, the name of the employee, and year-to-date earnings.**
- For self-employed individuals: provide the cosigner's **Federal tax returns for the last 2 years**, complete with all applicable schedules and signatures.
- For retired individuals: provide the cosigner's **pension statement (1099) or social security statement (1099) for the last year.**
- If the cosigner is relying on alimony, child support, or separate maintenance payments to repay this loan, please provide a complete copy of the divorce decree and a signed copy of the cosigner's federal tax return for the past year. Alimony, child support or separate maintenance payments need not be disclosed if you do not wish to have it considered as a basis for repaying this obligation.

_____ **3. ATTACH proof of school enrollment (all forms must contain student and school name and must reflect the same academic period as the period for which the loan is requested) and other required information**

- Copy of current tuition bill from the school for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of acceptance letter from the school verifying enrollment for loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of current registration schedule from the school for the loan period indicated on this Loan Request/Credit Agreement.
- If either the student or cosigner is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from CIS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If either the student or cosigner has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If this loan is for a past due balance, please submit a current invoice (no more than 60 days old) indicating the name of the school, the name of the student, and the dates of and the amount owed for the specific academic period.

_____ **4. RETURN signed paperwork and all requested documents**

- Please return all information described in Steps 2 and 3 above to the address below. If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), return all pages that require signature. Retain all remaining pages for your records.

  For regular delivery, mail to:          For overnight delivery, send to:
  TERI                                     TERI
  P.O. Box 848108                          One Cabot Road, Second Floor
  Boston, MA  02284-8108                   Medford, MA 02155-5141

- For faster loan processing, you can FAX to [_____] **FROM A U.S. DOMESTIC FAX NUMBER** the information described in Steps 2 and 3, and, if any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), all pages that require signature.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon receipt of the signed signature page and proof of income and enrollment and other requested information. Please allow 2 business days from receipt of your completed paperwork to set a disbursement date for your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.

**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

**APPLICATIONS NOT COMPLETED WITHIN 90 DAYS WILL BE CONSIDERED WITHDRAWN.**
Borrower and Cosigner: Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal Law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.

# NOTE DISCLOSURE STATEMENT

$ 26315.79

Loan No. ███ 6471

Borrower(s) Oskar A Lizarragadavis
Consuelo B Hayes

Student:     Oskar A Lizarragadavis
Date:        06/26/2006
             Lender Name and Address:
             GMAC Bank
             3710 Kennett Pike
             Wilmington, DE 19807

This disclosure statement relates to your Loan Note disbursed on June 26, 2006.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.006 % | $ 33574.94 | $ 25000.00 | $ 58574.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 002 | $ 203.51 | On the 26th day of each month beginning July 2006 |
| 001 | $ 200.72 | On the 25th day of each month beginning September 2006 |
| 240 | $ 241.53 | On the 25th day of each month beginning October 2006 |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐   **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐   **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☒   **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐   **LIBOR Index Adjusted Monthly** - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $ 26315.79

Itemization of Amount Financed
Amount paid to Oskar A Lizarragadavis and     $
Amount paid to Consuelo B Hayes     $ 25000.00
Total Amount Financed     $ 25000.00

Itemization of Prepaid Finance Charge
Origination Fee     $ 1315.79
Total Prepaid Finance Charge(s)     $ 1315.79

CSA TRAJ 6/03 9736

# 2006-4 POOL SUPPLEMENT
## GMAC BANK

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of May 30, 2003, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation and GMAC Bank (the "Program Lender"). This Supplement is dated as of December 7, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each GMAC Bank Conforming Loan described in the attached Schedule 1 (the "Transferred GMAC Bank Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred GMAC Bank Loans. The Depositor in turn will sell the Transferred GMAC Bank Loans to The National Collegiate Student Loan Trust 2006-4 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each GMAC Bank Note evidencing such GMAC Bank Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said GMAC Bank Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its

properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred GMAC Bank Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred GMAC Bank Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred GMAC Bank Loans included in the Pool.

{F0001033 1}

## Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred GMAC Bank Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred GMAC Bank Loans, and Program Lender hereby releases any security interest it may have in such collateral. Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

{F000103J.1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
    John A. Hupalo
    President

[F0001033.1 ]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By:_____
    John A. Hupalo
    President

# EXHIBIT 2

Re: National Collegiate Student Loan Trust/Services

Since you are not the originator of this loan, I need proof of ownership linking you directly back to the originator of the loan and also a detailed payment history. Thank you for your time.

Sincerely,

Oskar Lizarraga-Davis

Email- Jakoam01@yahoo.com

Copy

# EXHIBIT 3

LAW OFFICES OF

# PATENAUDE & FELIX, A.P.C.

### A PROFESSIONAL LAW CORPORATION

4545 MURPHY CANYON ROAD, 3RD FLOOR, SAN DIEGO, CALIFORNIA 92123

TEL (858) 244-7600 OR (800) 832-7675 FAX (858) 836-0318

www.pandf.us

| **ARIZONA** | **NEVADA** | **NEW MEXICO** | **OREGON** | **PENNSYLVANIA** | **WASHINGTON** |
|---|---|---|---|---|---|
| 3260 NORTH HAYDEN RD #209 | 7271 W. CHARLESTON BLVD #100 | 8500 MENAUL BLVD. NE #A-313 | 1618 SW 1st AVE., #205 | 501 CORPORATE DRIVE | 19401 40th AVE. WEST, #280 |
| SCOTTSDALE, AZ 85251 | LAS VEGAS, NV 89117 | ALBUQUERQUE, NM 87112 | PORTLAND, OR 97201 | SOUTHPOINTE, SUITE 205 | LYNNWOOD, WA 98036 |
| TEL: (800) 832-7675 | TEL: (702) 952-2032 | TEL: (800) 832-7675 | TEL: (503) 208-2676 | CANONSBURG, PA 15317 | TEL: (425) 361-1662 |
| FAX: (480) 247-2783 | (800) 867-3092 | FAX: (858) 836-0318 | (800) 832-7675 | TEL: (412) 429-7675/(866) 772-7675 | (800) 832-7675 |
| | FAX: (702) 992-6286 | | FAX: (503) 954-3586 | FAX: (412) 429-7679 | FAX: (425) 967-3508 |

May 19, 2017

778984/855971

OSKAR A LIZARRAGA-DAVIS
850 EL CERRO DR
HOLLISTER CA 95023-5118

RE: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4
     Account Number:     XXXXXXXXXXXXXXPHEA
     Case Number:
     Our Reference Number:   17-13404

Dear Oskar A Lizarraga-Davis:

     Thank you for your recent request for debt validation in the above-referenced matter. Enclosed please find the documents that support your underlying obligation to our client.

     Please contact our office if you have any questions or comments at (800) 832-7675. Thank you for your attentiveness to this matter.

Very truly yours,

LAW OFFICE OF PATENAUDE & FELIX

MICHAEL R. BOULANGER, ESQ.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR**
**This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

███████████

## * Cosigned *  Loan Request/Credit Agreement – Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

GMAC Bank Undergraduate Loan                                    Academic Period: 05/2006-12/2006

Lender: GMAC Bank                          School: UNIVERSITY OF CALIFORNIA DAVIS

Loan Amount Requested: $25000.00         Repayment Option: Interest Only
Deferral Period Margin: 4.75             Repayment Period Margin: 4.75          Loan Origination Fee Percentage: 5.00
                                                                                This fee may vary – see paragraph F, page 3 –
                                                                                Bank will always assess the fee at origination.

**STUDENT BORROWER INFORMATION (Must be old enough to enter into a binding contract)**

Borrower Name: Oskar A Lizarragadavis       Home Address: ███████████ San Diego, CA 92103
Social Security #: ████4043                 Date of Birth: ██ ██ 1983          Home Telephone: ████4267

Student Citizenship (check one box): ☒ U.S. Citizen    ☐ Eligible Non-Citizen(Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Magdlena Anderson              Reference Home Tel #: ███████        Work Tel #: ███████
Reference  Street Address: _____
Reference City/State/Zip: ███████████

**COSIGNER INFORMATION (Must be old enough to enter into a binding contract)**

Cosigner Name: Consuelo B Hayes             Home Address ███████ San Diego, CA 92139
Social Security #: ████0110                 Date of Birth: ██ ██ 1924          Home Telephone: ████8388
Have you ever defaulted on a student loan or declared bankruptcy?  ☒ No   ☐ Yes
Current Employer: UNITED STATES FEDERAL GOVERNME                               Employer Telephone: ███████
Current Position: Retired              Years There: 30 Years
Years at Previous Employment: 30 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box): ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name: Esther Goodwalt              Reference Home Tel #: ███████        Work Tel #: ███████
Reference  Street Address: ███████████
Reference City/State/Zip: _____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit
Agreement GM.05-06.CSX1.20.0406 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is
subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on
nor to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on or to sign electronically this Credit
Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law,
(ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the
Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my
obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-9406

Signature of Borrower _____*Oskar Lizarragadavis*_____        Date 6-10-06

### BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _____*Consuelo B Hayes*_____        Date 6-15-06

GM.05-06.CSX1.20.0406                LENDER COPY
PN01_GM_05-06_CSX1_F_X_LIZARRAGAD_A103826471.pdf                               GMCUIO

# NOTE DISCLOSURE STATEMENT

$ 26315.79

Borrower(s) Oskar A Lizarragadavis
Consuelo B Hayes

Loan No. ████6471

Student:     Oskar A Lizarragadavis
Date:        06/26/2006
             Lender Name and Address:
             GMAC Bank
             3710 Kennett Pike
             Wilmington, DB 19807

This disclosure statement relates to your Loan Note disbursed on June 26, 2006.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.006 % | $ 33574.94 | $ 25000.00 | $ 58574.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 002 | $ 203.51 | On the 26th day of each month beginning July 2006 |
| 001 | $ 200.72 | On the 25th day of each month beginning September 2006 |
| 240 | $ 241.53 | On the 25th day of each month beginning October 2006 |
| | | |

VARIABLE RATE: The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly – The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐ LIBOR Index Adjusted Monthly – The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

LATE CHARGES: If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
PREPAYMENT: If you pay off early, you will not have to pay a penalty.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

| | |
|---|---|
| Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) | $ 26315.79 |
| Itemization of Amount Financed | |
| Amount paid to Oskar A Lizarragadavis and | $ |
| Amount paid to Consuelo B Hayes | $ 25000.00 |
| Total Amount Financed | $ 25000.00 |
| Itemization of Prepaid Finance Charge | |
| Origination Fee | $ 1315.79 |
| Total Prepaid Finance Charge(s) | $ 1315.79 |

## 2006-4 POOL SUPPLEMENT
## GMAC BANK

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of May 30, 2003, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation and GMAC Bank (the "Program Lender"). This Supplement is dated as of December 7, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each GMAC Bank Conforming Loan described in the attached Schedule 1 (the "Transferred GMAC Bank Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred GMAC Bank Loans. The Depositor in turn will sell the Transferred GMAC Bank Loans to The National Collegiate Student Loan Trust 2006-4 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each GMAC Bank Note evidencing such GMAC Bank Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said GMAC Bank Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)    The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its

properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred GMAC Bank Loans.

(b)　　The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)　　The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred GMAC Bank Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)　　This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)　　The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)　　There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:　Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred GMAC Bank Loans included in the Pool.

[F00010J11]

Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred GMAC Bank Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred GMAC Bank Loans, and Program Lender hereby releases any security interest it may have in such collateral. Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

{F0001033.1}

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
    John A. Hupalo
    President

{F0001033.1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By:_____
    John A. Hupalo
    President

{F0001033.1 }

# EXHIBIT 4

5/31/17

Patenaude and Felix Attorneys:

To whom it may concern,

I, Oskar Lizarraga-Davis, am writing again to ask for proof of ownership and payment history for this loan/account. I received your documents, which show my original loan and then when they sold/transferred it to National Collegiate Services. However, how are you linked/connected? I would like Bill of Sales and also payment history, as I did not receive that after my previous request. Thank you.

Sincerely,

Oskar Lizarraga-Davis

*COPY mailed*
*6/1/17*
*Certified mail*

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paternack and Felix
4545 Murphy Canyon Rd
3rd Floor
San Diego, CA 92123

9590 9402 2658 6336 5015 66

2. Article Number (Transfer from service label)

7016 1970 0000 3761 7841

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Mike Kelley   6/5/17

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

JUN -5 2017
SAN DIEGO CA 92123 USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ____ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# EXHIBIT 5

| | **SUM-100** |
|---|---|
| # SUMMONS<br>*(CITATION JUDICIAL)* | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT(S):**
*(AVISO AL DEMANDADO):*
OSKAR A LIZARRAGA-DAVIS

and DOES 1 through 15, inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A
DELAWARE STATUTORY TRUST(S)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BENITO<br>SAN BENITO DIVISION - UNLIMITED CIVIL DIVISION<br>450 FOURTH STREET  HOLLISTER CA 95023 | **CASE NUMBER:**<br>*(Número de Caso):*<br>CU 17 - 00083 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

**LAW OFFICES OF PATENAUDE & FELIX, A.P.C.**
Michael R. Boulanger, (#226294) / Michael D. Kahn, (#236898) / Stephanie J. Boone, (#160182)
Jeffrey W. Speights (#265206) / Jessica F. Flynn, (#270304)
4545 Murphy Canyon Road, 3rd Floor, San Diego, CA 92123
Telephone No. (858) 244-7600

| DATE: JUN 06 2017 | Clerk, by | MARY ~~[illegible]~~ | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|

**PLD-C-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>**LAW OFFICES OF PATENAUDE & FELIX, A.P.C.**<br>Michael R. Boulanger, (#226294) / Michael D. Kahn, (#236898) / Stephanie J. Boone, (#160182)<br>Jeffrey W. Speights (#265206) / Jessica F. Flynn, (#270304)<br>4545 Murphy Canyon Road, 3rd Floor, San Diego, CA 92123<br>TELEPHONE NO.: (858) 244-7600     FAX NO. *(Optional):* (858) 836-0318<br>E-MAIL ADDRESS *(Optional):* Michael.Kahn@pandf.us<br>ATTORNEY FOR *(Name):* PLAINTIFF | **FOR COURT USE ONLY**<br><br>F I L E D<br>SUPERIOR COURT OF CALIFORNI<br>COUNTY OF SAN BENITO<br><br>MAY 0 6 2017<br><br>BY MARY MEDLAND<br>DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BENITO**
STREET ADDRESS: 450 FOURTH STREET
MAILING ADDRESS: 450 FOURTH STREET
CITY STATE AND ZIP CODE: HOLLISTER CA 95023
BRANCH NAME: SAN BENITO DIVISION - UNLIMITED CIVIL DIVISION

PLAINTIFF: NATIONAL COLLEGIATE STUDENT LOAN TRUST
2006-4, A DELAWARE STATUTORY TRUST(S)

DEFENDANT(S): OSKAR A LIZARRAGA-DAVIS,
☒ and DOES 1 through 15, inclusive

| CONTRACT | | |
|---|---|---|
| ☒ **COMPLAINT** | ☐ **AMENDED COMPLAINT** *(Number):* | |
| ☐ **CROSS-COMPLAINT** | ☐ **AMENDED CROSS-COMPLAINT** *(Number)* | |

| Jurisdiction *(check all that apply):*<br>☐ **ACTION IS A LIMITED CIVIL CASE**<br>Amount demanded ☐ does not exceed $10,000<br>☐ exceeds $10,000 but does not exceed $25,000<br>☒ **ACTION IS AN UNLIMITED CIVIL CASE** (exceeds $25,000)<br>☐ **ACTION IS RECLASSIFIED** by this amended complaint or cross-complaint<br>☐ from limited to unlimited<br>☐ from unlimited to limited | CASE NUMBER:<br><br>**CU - 17 - 00083** |
|---|---|

1. Plaintiff* (name or names): NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S)

alleges causes of action against defendant(s)* *(name or names):* OSKAR A LIZARRAGA-DAVIS, and DOES 1 through 15, inclusive

2. This pleading, including attachments and exhibits, consists of the following number of pages: 15

3. a. Each plaintiff named above is a competent adult
   ☒ except plaintiff *(name):* NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S)
   (1) ☐ a corporation qualified to do business in California
   (2) ☒ an unincorporated entity *(describe):* a Delaware Statutory Trust(s)
   (3) ☐ other *(specify):*
   b. ☐ Plaintiff *(name):*
      a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name *(specify):*
      b. ☐ has complied with all licensing requirements as a licensed *(specify):*
   c. ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant(s) named above is a natural person

| ☐ **except defendant** *(name):* | ☐ **except defendant** *(name):* |
|---|---|
| (1) ☐ a business organization, form unknown | (1) ☐ a business organization, form unknown |
| (2) ☐ a corporation | (2) ☐ a corporation |
| (3) ☐ an unincorporated entity *(describe):* | (3) ☐ an unincorporated entity *(describe):* |
| (4) ☐ a public entity *(describe):* | (4) ☐ a public entity *(describe):* |
| (5) ☐ other *(specify):* | (5) ☐ other *(specify):* |

*If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.     Page 1 of 2

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001 [Rev. January 1, 2007] | **COMPLAINT—Contract** | Code of Civil Procedure, § 425.12 |

CA_03B EFile Complaint Contract

| SHORT TITLE: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S)  VS. OSKAR A LIZARRAGA-DAVIS, | CASE NUMBER: |
|---|---|

**4. (Continued)**

    b.  The true names of defendant(s) sued as Does are unknown to plaintiff.

        (1) ☐ Doe defendant(s) *(specify Doe numbers):* _____ were the agents or employees of the named defendant(s) and acted within the scope of that agency or employment.

        (2) ☒ Doe defendant(s) *(specify Doe numbers):* <u>1 through 15</u>_____ are persons whose capacities are unknown to plaintiff.

    c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

    d. ☐ Defendant(s) who are joined under Code of Civil Procedure section 382 are *(names):*

**5.** ☐ Plaintiff is required to comply with a claims statute, **and**

    a. ☐ has complied with applicable claims statutes, *or*

    b. ☐ is excused from complying because *(specify):*

**6.** ☐ This action is subject to  ☐ Civil Code section 1812.10   ☐ Civil Code section 2984.4.

**7.** This court is the proper court because

    a. ☐ a defendant(s) entered into the contract here.

    b. ☐ a defendant(s) lived here when the contract was entered into.

    c. ☒ a defendant(s) lives here now.

    d. ☐ the contract was to be performed here.

    e. ☐ a defendant(s) is a corporation or unincorporated association and its principal place of business is here.

    f. ☐ real property that is the subject of this action is located here.

    g. ☐ other *(specify):*

**8.** The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

    ☒ Breach of Contract

    ☐ Common Counts

    ☒ Other *(specify):* Refer to Other allegations in number 9.

**9.** ☒ Other allegations: Before commencement of this action, in those cases where recovery of costs is dependent on such notices, Plaintiff informed the defendant(s) in writing it intended to file this action and that this action could result in a judgment against defendant(s) that would include court costs and necessary disbursements allowed by CCP Section 1033(b)(2).

**10. Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

    a. ☒ damages of: $32,726.55

    b. ☒ interest on the damages

        (1) ☒ according to proof

        (2) ☐ at the rate of *(specify):* _____ percent per year from *(date):*

    c. ☐ attorney's fees

        (1) ☐ of:

        (2) ☐ according to proof.

    d. ☒ other *(specify):* For such other relief as the Court deems just and fair.

**11.** ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: April 17, 2017

| [ ] MICHAEL R. BOULANGER | [ ] JEFFREY W. SPEIGHTS |
| [ ] MICHAEL D. KAHN | [ ] JESSICA F. FLYNN |
| [ ] STEPHANIE J. BOONE | |

                ▶           **/S/**

          (TYPE OR PRINT NAME)                           (SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

CA_03B EFile Complaint Contract                          P&F File No. 17-13404

PLD-C-001(1)

| SHORT TITLE: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S) vs. OSKAR A LIZARRAGA-DAVIS, | CASE NUMBER: |
|---|---|

FIRST
_(number)_     **CAUSE OF ACTION—Breach of Contract**

ATTACHMENT TO   ☒ Complaint   ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name)*: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S)

     alleges that on or about *(date)*: June 26, 2006

     a ☒ written ☐ oral ☐ other *(specify)*:

     agreement was made between (name parties to agreement): Plaintiff's assignor, GMAC BANK and OSKAR A LIZARRAGA-DAVIS,

     ☒ A copy of the agreement is attached as Exhibit A, or
     ☒ The essential terms of the agreement   ☐ are stated in Attachment BC-1   ☒ are as follows *(specify)*:

Defendant(s) entered into a written contract with Plaintiff's assignor, GMAC BANK, whereby Plaintiff's assignor loaned money to Defendant(s) for the financing of Education expenses. Plaintiff is the assignee of this contract. The terms and conditions under which Defendant(s) agreed to repay Plaintiff's assignor for the monies loaned are set forth in a written contract and /or loan agreement between the Defendant(s) and Plaintiff's assignor. Defendant(s) indicated his/her/their consent to be bound by these terms either by an authorizing signature on the agreement or by Defendant(s) taking possession of and using the monies provided by Plaintiff's assignor.

BC-2. On or about *(date)*: February 13, 2015
     Defendant breached the agreement by ☐ the acts specified in Attachment BC-2   ☒ the following acts
     (specify):    Defendant(s) failed to make payments on the contract as agreed, or otherwise defaulted upon the contract, and despite Plaintiff's demand Defendant(s) continues to refuse to pay Plaintiff the amount owed under the contract. Defendant(s) is/are in default and under the terms of the contract, Plaintiff is entitled to the unpaid balance, interest, and costs.

BC-3. Plaintiff has performed all obligations to Defendant(s) except those obligations Plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by Defendant's breach of the agreement
     ☐ as stated in Attachment BC-4   ☒ As follows :
     1. The principal sum of $32,726.55;
     2. Costs of suit;
     3. For such other and further relief as the Court deems just and fair.

BC-5. ☐ Plaintiff is entitled to attorney fees by an agreement or a statue
     ☐ of $
     ☐ according to proof:

BC-6. ☐ Other:

Page    3
         Page 1 of 1

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedures, § 426.12

# EXHIBIT "A"

# NOTE-DISCLOSURE STATEMENT

$26315.79

Loan No. [ ]6471

Borrower(s) Oskar A Lizarragadavis
Consuelo B Hayes

Student: Oskar A Lizarragadavis
Date: 06/26/2006
Lender Name and Address:
GMAC Bank
3710 Kennett Pike
Wilmington, DE 19807

This disclosure statement relates to your Loan Note disbursed on June 26, 2006.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.006 % | $ 33574.94 | $ 25000.00 | $ 58574.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 002 | $ 203.51 | On the 26th day of each month beginning July 2006 |
| 001 | $ 200.72 | On the 25th day of each month beginning September 2006 |
| 240 | $ 241.53 | On the 25th day of each month beginning October 2006 |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

| | |
|---|---|
| Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) | $26315.79 |
| **Itemization of Amount Financed** | |
| Amount paid to Oskar A Lizarragadavis and | $ |
| Amount paid to Consuelo B Hayes | $ 25000.00 |
| Total Amount Financed | $ 25000.00 |
| **Itemization of Prepaid Finance Charge** | |
| Origination Fee | $ 1315.79 |
| Total Prepaid Finance Charge(s) | $ 1315.79 |



## * Cosigned * Loan Request/Credit Agreement – Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

GMAC Bank Undergraduate Loan

Academic Period: 05/2006-12/2006

Lender: GMAC Bank | School: UNIVERSITY OF CALIFORNIA DAVIS

Loan Amount Requested: $26000.00
Deferral Period Margin: 4.75

Repayment Option: Interest Only
Repayment Period Margin: 4.75

Loan Origination Fee Percentage: 6.00
This fee may vary – see paragraph F, page 3 –
Bank will always assess the fee at origination.

**STUDENT BORROWER INFORMATION** (Must be old enough to enter into a binding contract)

Borrower Name: Oskar A Lizarragadavis
Social Security #: ▓▓4043
Home Address: ▓▓▓▓ San Diego, CA 92103
Date of Birth: ▓▓▓1983
Home Telephone: ▓▓▓4267

Student Citizenship (check one box): ☒ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of C/S or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Margaret Anderson _____   Reference Home Tel #: ▓▓▓▓   Work Tel #: ▓▓▓▓
Reference Street Address: _____
Reference City/State/Zip: _____

**COSIGNER INFORMATION** (Must be old enough to enter into a binding contract)

Cosigner Name: Consuela B Hayes
Social Security #: ▓▓▓0110
Home Address: ▓▓▓▓ San Diego, CA 92139
Date of Birth: ▓▓▓1924
Home Telephone: ▓▓▓8388

Have you ever defaulted on a student loan or declared bankruptcy?  ☒ No  ☐ Yes
Current Employer: UNITED STATES FEDERAL GOVERNME
Current Position: Retired   Years There: 30 Years
Years at Previous Employment: 30 Years
Employer Telephone: ▓▓▓▓

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box): ☒ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Student.
Personal Reference Name: Esther Goodwin _____   Reference Home Tel #: ▓▓▓▓   Work Tel #: ▓▓▓▓
Reference Street Address: _____
Reference City/State/Zip: _____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement, GM.05-06.CSX1.20.0406 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**PLEASE SIGN BELOW – RETURN** This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-0406

Signature of Borrower _~signature~_   Date 6-10-06

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (I) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner _Consuela B Hayes_   Date 6-15-06

GM.05-06.CSX1.20.0406          **LENDER COPY**
PN01_GM_05-06_CSX1_F_X_LIZARRAGAD_A103826471.pdf          GMCUIO

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan. the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts

owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the Commonwealth of Pennsylvania. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal.* The Index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms - My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that

this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in Pennsylvania and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS

OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit Institution.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement. If in the future I apply for a loan that is guaranteed by TERI and funded by another lender, I also authorize the sharing of application information for this loan (other than information in a consumer report) with the other lender and TERI and the reuse of such information by such new lender and TERI in my new application.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of

this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.
**M. DISCLOSURE NOTICE**

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## FEDERAL COSIGNER NOTICE

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER:**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

## 2006-4 POOL SUPPLEMENT
## GMAC BANK

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of May 30, 2003, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation and GMAC Bank (the "Program Lender"). This Supplement is dated as of December 7, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each GMAC Bank Conforming Loan described in the attached Schedule 1 (the "Transferred GMAC Bank Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred GMAC Bank Loans. The Depositor in turn will sell the Transferred GMAC Bank Loans to The National Collegiate Student Loan Trust 2006-4 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each GMAC Bank Note evidencing such GMAC Bank Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said GMAC Bank Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its

properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred GMAC Bank Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred GMAC Bank Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred GMAC Bank Loans included in the Pool.

## Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred GMAC Bank Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred GMAC Bank Loans, and Program Lender hereby releases any security interest it may have in such collateral. Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

{F000103).1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
John A. Hupalo
Senior Executive Vice President

GMAC BANK

By: _____
Name:
Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:     GATE Holdings, Inc., Member

By: _____
John A. Hupalo
President

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Hupalo
    Senior Executive Vice President

GMAC BANK

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
    John A. Hupalo
    President

[F0001033.1]

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BENITO

MAY 0 6 2017

BY_____
DEPUTY CLERK

**LAW OFFICES OF**
**PATENAUDE & FELIX, A.P.C.**
Michael R. Boulanger, Esq. (#226294)
Michael D. Kahn, Esq. (#236898)
Stephanie J. Boone, Esq. (#160182)
Jeffrey W. Speights, Esq. (#265206)
Jessica F. Flynn, Esq. (#270304)
4545 Murphy Canyon Road, 3rd Floor
San Diego, California 92123
Tele: (858) 244-7600 Fax: (858) 836-0318

Attorneys for Plaintiff
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY
TRUST(S)

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN BENITO, SAN BENITO DIVISION - UNLIMITED CIVIL DIVISION**

| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S), | Case No. CU - 17 - 00083 |
|---|---|
| Plaintiff, | **DECLARATION RE: VENUE** |
| v. | |
| OSKAR A LIZARRAGA-DAVIS, and DOES 1 through 15, inclusive, | |
| Defendant(s). | |

I, Stephanie Boone, do hereby declare:

1. That I am the attorney at law, duly licensed to practice before all Courts in the state of California.

2. I am an associate with the Law Offices of Patenaude & Felix, APC, counsel of record for Plaintiff herein.

3. I make this Declaration based on my personal knowledge, except for those items which are stated to be based on my information and belief. If called to testify I could, and would, competently testify to the matters contained herein, based upon my personal knowledge, except for that which is stated to be based on my information and belief, and with the respect to those items, I believe them to be true.

1

**DECLARATION RE: VENUE**
CA_105B EFile Dec Venue Student Loan          P&F File No. 17-13404

1       4.  Based on the information in this office's file, this is the proper Judicial District

2  because at least one Defendant resides in this Judicial District.

3       5.  This Action is not subject to California Civil Code section 2984.4 or California Civil

4  Code section 1812.10.

5       I declare under the penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct. Executed on April 17, 2017, San Diego, California.

7

8                            **/S/**

9

10                        STEPHANIE BOONE, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PATENAUDE & FELIX, APC
ATTORNEYS AT LAW
4545 MURPHY CANYON ROAD, 3RD FLOOR
SAN DIEGO, CA 92123
TELE: (858) 244-7600 FAX: (858) 836-0318

2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
LAW OFFICES OF PATENAUDE & FELIX, A.P.C.
Michael R. Boulanger, (#226294) / Michael D. Kahn, (#236698) / Stephanie J. Boone, (#160182)
Jeffrey W. Speights (#265206) / Jessica F. Flynn, (#270304)
4545 Murphy Canyon Road, 3rd Floor, San Diego, CA 92123

TELEPHONE NO.: 858-244-7675          FAX NO.: (858) 836-0318
ATTORNEY FOR (Name):  PLAINTIFF

FOR COURT USE ONLY
F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BENITO

MAY 0 6 2017

BY_____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BENITO
STREET ADDRESS: 450 FOURTH STREET
MAILING ADDRESS: 450 FOURTH STREET
CITY AND ZIP CODE: HOLLISTER CA 95023
BRANCH NAME: SAN BENITO DIVISION - UNLIMITED CIVIL DIVISION

CASE NAME: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S) vs. OSKAR A LIZARRAGA-DAVIS,

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CU 17 - 00083 |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |
| | | JUDGE: |
| | | DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rul 3.740 collections (09)
☒ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial post-judgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary   b. ☐ non-monetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): ONE
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 17, 2017

[ ] MICHAEL R. BOULANGER     [ ] JEFFREY W. SPEIGHTS
[ ] MICHAEL D. KAHN          [ ] JESSICA F. FLYNN
[ ] STEPHANIE J. BOONE
_____         ►        /S/
(TYPE OR PRINT NAME)                                       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CA_01 EFile Civil Case Cover          P&F File No. 17-13404

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collection Cases.** A "collection case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice—Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(non medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quite title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quite Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ—Administrative Mandamus
    Writ—Mandamus on Limited Court Case Matter
    Writ—Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal—Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
    Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment ( Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BENITO
450 Fourth Street • Hollister, CA 95023 • (831) 636-4057 • Fax (831) 636-2046
www.sanbenito.courts.ca.gov

National Collegiate Student
Loan Trust 2006-4

Plaintiff(s)

vs.

Oskar A. Lizaraga-Davis

Defendant(s)

Case No. _CU-17-00083_

**NOTICE OF INCLUSION IN CIVIL CASE
MANAGEMENT SYSTEM AND NOTICE
OF CASE MANAGEMENT CONFERENCE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that this action is included in the Civil Case Management System. San
Benito Superior Court Local Rule Chapter 3 applies to this action. You are required to comply with
obligations specified therein or pursuant to this Notice. **Non-compliance may result in the
imposition of sanctions.**

You are further advised that a **Case Management Conference is scheduled for**

_October 4, 2017_ at _3:00 p_ m. Per California Rule of Court Rule 3.724
parties shall meet and confer no later than 30 calendar days before the first scheduled case
management conference. A case management statement shall be filed by each party with proof of
service on the opposing party no later than fifteen (15) days prior to the case management
conference. Counsel for each party and self-represented party must appear at the conference.

If you would like to appear telephonically, please contact CourtCall at 888-882-6878, option 3,
to make arrangements.

Dated: _6/14/17_, by _Mary Medland_, Deputy Clerk

Form Rev. 9/15

# EXHIBIT 6

LAW OFFICES OF

# PATENAUDE & FELIX, A.P.C.
### A PROFESSIONAL LAW CORPORATION
4545 MURPHY CANYON ROAD, 3RD FLOOR, SAN DIEGO, CALIFORNIA 92123
TEL: (858) 244-7600 OR (800) 832-7675 FAX (858) 836-0318
www.pandf.us

| **ARIZONA** | **NEVADA** | **NEW MEXICO** | **OREGON** | **PENNSYLVANIA** | **WASHINGTON** |
|---|---|---|---|---|---|
| 3260 NORTH HAYDEN RD #209 | 7271 W. CHARLESTON BLVD #100 | 8500 MENAUL BLVD. NE #A-313 | 1618 SW 1st AVE., #205 | 501 CORPORATE DRIVE | 19401 40th AVE. WEST, #280 |
| SCOTTSDALE, AZ 85251 | LAS VEGAS, NV 89117 | ALBUQUERQUE, NM 87112 | PORTLAND, OR 97201 | SOUTHPOINTE, SUITE 205 | LYNNWOOD, WA 98036 |
| TEL: (800) 832-7675 | TEL: (702) 952-2052 | TEL: (800) 832-7675 | TEL: (503) 208-2576 | CANONSBURG, PA 15317 | TEL: (425) 361-1662 |
| FAX: (480) 247-2783 | (800) 857-3092 | FAX: (858) 836-0318 | (800) 832-7675 | TEL: (412) 429-7675/(865) 772-7675 | (800) 832-7675 |
| | FAX: (702) 992-6286 | | FAX: (503) 954-3586 | FAX: (412) 429-7679 | FAX: (425) 967-3508 |

July 18, 2017

778984/855971

OSKAR A LIZARRAGA-DAVIS
850 EL CERRO DR
HOLLISTER CA 95023-5118

RE:  NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4
     Account Number:             XXXXXXXXXXXXXXPHEA
     Case Number:                CU-17-00083
     Our File Number:            17-13404
     Account Balance Due:       $33,161.55

Dear Oskar A Lizarraga-Davis:

      Our Client has requested that we contact you to inform you of a settlement opportunity regarding your outstanding balance.

      Our Client has authorized this office to discount a considerable portion of your obligation. All settlement agreements must be confirmed prior to receipt of funds. Please call to get specific details and to memorialize the arrangement. This opportunity will only be honored based on your response and confirmation. Upon receipt and clearing of settlement funds, your account will be considered Settled in Full and no more sums will be due and payable. In the event that litigation is pending, our office will perform all steps necessary to discontinue the matter.

      Please contact our office at your earliest convenience to inform us of your intentions. If you should have any further questions and/or comments, please do not hesitate to call.

Sincerely,

LAW OFFICE OF PATENAUDE & FELIX

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR**
**This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

# EXHIBIT 7

**PLD-C-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS): TELEPHONE: 619-507-0303 | |
| Oskar Lizarraga –Davis | |
| 850 El Cerro Drive | |
| Hollister, CA 95023 | |

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BENITO

2017 AUG 14 PM 1:58

ELSA RODRIGUEZ

DEPUTY

ATTORNEY FOR (NAME): In Pro Per

Insert name of court, judicial district or branch court, if any, and post office and street address:
Superior Court of California, County of San Benito
San Benito Division - Unlimited civil division
450 Fourth Street Hollister, CA 95023

PLAINTIFF:
Ntl. Collegiate Student loan Trust 2006-4

DEFENDANT:
Oskar Lizarraga-Davis

| **ANSWER—Contract** | CASE NUMBER: |
| ☑ TO COMPLAINT OF (name): Ntl. Collegiate Student loan Trust 2006-4 | CU-17-00083 |
| ☐ TO CROSS-COMPLAINT (name): | |

1. This pleading, including attachments and exhibits, consists of the following number of pages: **3**

2. DEFENDANT (name): Oskar Lizarraga-Davis
   answers the complaint or cross-complaint as follows:

3. Check ONLY ONE of the next two boxes:
   a. ☑ Defendant generally denies each statement of the complaint or cross-complaint. (Do not check this box if
      the verified complaint or cross-complaint demands more than $1,000.)
   b. ☐ Defendant admits that all of the statements of the complaint or cross-complaint are true EXCEPT:
      (1) Defendant claims the following statements are false (use paragraph numbers or explain):

 

☐ Continued on Attachment 3.b.(1).
(2) Defendant has no information or belief that the following statements are true, so defendant denies them (use
    paragraph numbers or explain):

 

☐ Continued on Attachment 3.b.(2).

If this form is used to answer a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Page 1 of 2

| Form Approved for Optional Use | **ANSWER—Contract** | Code of Civil Procedure, § 425.12 |
| Judicial Council of California | | www.courtinfo.ca.gov |
| PLD-C-010 [Rev. January 1, 2007] | | |

PLD-C-010

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| NH. Collegiate Student Loan Trust vs. Lizarraga-Davis | CU – 17 – 00083 |

**ANSWER—Contract**

4. ☑ AFFIRMATIVE DEFENSES Defendant alleges the following additional reasons that plaintiff is not
entitled to recover anything:

*See attachment 4*

☑ Continued on Attachment 4.

5. ☐ Other

6. DEFENDANT PRAYS
a. that plaintiff take nothing.
b. ☑ for costs of suit.
c. ☑ other (specify): *Attorney's fee and such other relief as the court may deem just and proper.*

Oskar Lizarraga-Davis
(Type or print name)

_____
(Signature of party or attorney)

PLD-C - 010 [Rev. January 1, 2007]          **ANSWER—Contract**                    Page 2 of 2

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| NH. Collegiate Student loan Trust vs. Lizarraga-Davis | CU-17-00083 |

ATTACHMENT *(Number):* 4 _____

*(This Attachment may be used with any Judicial Council form.)*

1. Failure to state a claim or cause of action
2. Lack of privity
3. Lack of standing
4. Unjust enrichment
5. Unclean hands
6. Waiver
7. Failure to mitigate damages
8. Uncertainty
9. No breach by defendant
10. Plaintiff's non-performance
11. Failure of Plaintiff to comply with Cal. Fair Debt Buyer Act, Civil Code Section 1788.50, et seq.
12. Agreement is void
13. Plaintiff has suffered no damages as a result of Defendant's conduct.
14. Plaintiff's claim is barred by the applicable statute of limitations

Defendant expressly and specifically reserves the right to amend this answer to add, delete, and/or modify defenses based upon legal theories, facts, and circumstances which may or will be divulged through discovery and/or further legal analysis of the parties' respective positions in this litigation.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___3___ of ___3___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

# EXHIBIT 8

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BENITO

DEC 1 3 2017

RACHELLE BARRAGAN

BY _____
DEPUTY CLERK

**IN THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN BENITO**
450 Fourth Street
Hollister, CA 95023

**National Collegiate Studen Loan**
    Plaintiff/Petitioner,

vs.

**Lizarraga-Davis, Oskar A**
    Defendant/Respondent.

)
)
)
)
)
)
)
)
)

Case No. **CU-17-00083**

**Notice of Status Conference and Court Trial**

**NOTICE IS HEREBY GIVEN** that the above-entitled case has been set for a Status Conference and

Court Trial in the Superior Court, 450 Fourth Street, Courtroom 1-Status Conference and Courtroom 2 for

Court Trial, Hollister, CA 95023.

    **Status Conference: April 25, 2018** at **4:00 pm**

    **Court Trial: May 18, 2018 at 1:30 pm**

Each party appearing in the case shall attend the conference by counsel, in person, or by conference call
and shall have knowledge and sufficient information of the case to proceed at this hearing. The person(s)
attending the conference <u>shall</u> be prepared to discuss settlement options, to schedule further settlement
conferences and/or schedule a trial date as necessary.

Each party shall also be prepared to inform the Court as to what discovery has been completed, what
further discovery may be required, and when such discovery may be completed.

                        GIL SOLORIO, Clerk of the Court

Date:    December 13, 2017        By: _____RACHELLE BARRAGAN_____
                                  Deputy Clerk

To:  **Oskar Lizarraga-Davis**
    **850 El Cerro Dr**
    **Hollister, CA 95023**

**Notice of Status Conference and Court Trial**

## Declaration of Mailing

I declare under penalty of perjury of the laws of the State of California that I am over the age of 18 years and not a party to this action. On the date shown below, I mailed the above document to the parties named below by depositing a true copy thereof in an envelope, first class postage prepaid and depositing the same in the United States Mail at Hollister, California.

Stephanie Boone
4545 Murphy Canyon Rd 3rd FL
San Diego, CA 92123

Oskar Lizarraga-Davis
850 El Cerro Dr
Hollister, CA 95023

GIL SOLORIO, Clerk of the Court

Date:     December 13, 2017          By:     RACHELLE BARRAGAN
                                            _____
                                            Deputy Clerk

# EXHIBIT 9

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| **LAW OFFICES OF PATENAUDE & FELIX, A.P.C.**<br>Michael R. Boulanger, (#226294) / Michael D. Kahn, (#236898)<br>Stephanie J. Boone, (#160182) / Jessica F. Flynn (#270304) / Gregory J. Cobb, (#133328)<br>4545 Murphy Canyon Road, 3rd Floor, San Diego, CA 92123<br>TELEPHONE NO.: (858) 244-7600  FAX NO. *(Optional)*: (858) 836-0318<br>E-MAIL ADDRESS *(Optional)*: Michael.Kahn@pandf.us<br>ATTORNEY FOR *(Name)*: PLAINTIFF | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BENITO
STREET ADDRESS: 450 FOURTH STREET
MAILING ADDRESS:
CITY AND ZIP CODE: HOLLISTER CA 95023
BRANCH NAME: SAN BENITO DIVISION - UNLIMITED CIVIL DIVISION

PLAINTIFF/PETITIONER: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S)

DEFENDANT/RESPONDENT: OSKAR A LIZARRAGA-DAVIS,

| **REQUEST FOR DISMISSAL** | CASE NUMBER: CU-17-00083 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. **TO THE CLERK: Please dismiss** this action as follows:
   a. (1) ☐ With prejudice  (2) ☒ Without prejudice
   b. (1) ☐ Complaint  (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name)*:　　　　　　　　　　　on *(date)*:
      (4) ☐ Cross-complaint filed by *(name)*:　　　　　　　　　　　on *(date)*:
      (5) ☒ Entire action of all parties and all causes of action
      (6) ☐ Other *(specify)*:*

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and cost for a party in this case. *(This information may be obtained from the clerk. If court fees and cost were waived, the declaration on the back of this form must be completed).*

Date: April 26, 2018
STEPHANIE J. BOONE, ESQ.
_____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
*If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _____
(SIGNATURE)
Attorney or party without attorney for: PLAINTIFF
☒ Plaintiff/Petitioner　　☐ Defendant/Respondent
☐ Cross-complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:
_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint—or Response (Family Law) seeking affirmative relief—is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

▶ _____
(SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner　　☐ Defendant/Respondent
☐ Cross-complainant

*(To be completed by clerk)*
4. ☐ Dismissal entered as requested on *(date)*:
5. ☐ Dismissal entered on *(date)*:　　　　　　　　　as to only *(name)*:
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*:

7. ☐ a. Attorney or party without attorney notified on *(date)*:
　　b. Attorney or party without attorney not notified. Filing party failed to provide
　　　☐ a copy to conform  ☐ means to return conformed copy

Date: _____  Clerk, by _____, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c);Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CA-43 Dismissal

P&F File No. 17-13404

| | |
|---|---|
| PLAINTIFF/PETITIONER: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, A DELAWARE STATUTORY TRUST(S) | CASE NUMBER: CU-17-00083 |
| DEFENDANT/RESPONDENT: OSKAR A LIZARRAGA-DAVIS, | |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court's has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived fees and cost in this action for *(name):*

2. The person in item 1 *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(if item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: April 26, 2018

STEPHANIE J. BOONE, ESQ.                                              ▶
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE )

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c);Cal. Rules of Court, rule 3.1390
*www.courts.ca.gov*

CA-43 Dismissal                                                    P&F File No. 17-13404