Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
drichard@sessions.legal
*Attorneys for Defendant*
*Transworld Systems Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS, | Case No.   5:18-cv-04081 |
| Plaintiff, | DEFENDANT TRANSWORLD |
| | SYSTEMS INC.'S DECLARATION |
| vs. | IN SUPPORT OF MOTION FOR |
| | SUMMARY JUDGMENT |
| TRANSWORLD SYSTEMS, INC., | |
| Defendant. | |

I, Bradley Luke, hereby affirm and declare as follows:

1.      I am employed by Transworld Systems Inc. (hereinafter "TSI"), a servicer for National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4"), pertaining to the student loan forming the subject matter of this action filed by plaintiff, Oskar Lizarraga-Davis ("Plaintiff").   TSI is the loan servicer and designated Custodian of Records for Plaintiff's student loan owing to NCSLT 2006-4. TSI maintains loan history records for NCSLT 2006-4.

2.      I am over the age of 18 and competent to testify to the matters stated herein. I am the Director of Operations for TSI. I am duly authorized to make the representations contained in this declaration for and on behalf of both TSI and NCSLT 2006-4.

3.     As a loan servicer and Custodian of Records for NCSLT 2006-4, TSI maintains the dedicated system of records pertaining to NCSLT 2006-4 student loans on NCSLT 2006-4's behalf, including, but not necessarily limited to, student loan applications and agreements, loan origination and assignment documents, disbursements, payments, credits, forbearance and deferments, interest accrual, collections, and any other records or transactions that could impact the servicing of the student loan.

4.     TSI replaced NCSLT 2006-4's prior servicer, the Pennsylvania Higher Education Assistance Agency, who conducted its student loan servicing operations commercially as American Education Services ("AES").  In addition to maintaining the NCSLT 2006-4's loan servicing system, TSI also maintains real-time, electronic access to the loan servicing records of AES.  TSI employees, including myself, receive education and training on the AES loan servicing system and how to view and retrieve AES servicing records.

5.     It is a regularly-conducted business practice of NCSLT 2006-4 to incorporate the loan origination and AES servicing records into the NCSLT 2006-4 business records, and NCSLT 2006-4 relies on the accuracy of these records in the ordinary course of its student loan business.

6.     These student loan records referenced below and attached as exhibits to this Declaration were created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record.  Such records are created, kept, maintained, and relied upon in the course of the ordinary and regularly conducted business activity of NCSLT 2006-4 and TSI as servicer and Custodian of Records for NCSLT 2006-4.

7.     I have reviewed the student loan records described in this declaration.

**The CFPB Consent Order**

8.     On September 14, 2017, TSI entered a Stipulation and Consent to the to the Issuance of a Consent Order with the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau ("CFPB"). The CFPB Consent Order is cited at ¶¶ 12-15 of Plaintiffs' First Amended Complaint ("FAC"). (Dkt. 23.)

9.     The period covered by the Consent Order was from November 1, 2014 to April 25, 2016.

10.     TSI entered the Consent Order without admitting or denying any wrongdoing.

11.     During and after the CFPB investigation TSI conducted a review of all NCSLT 2006-4 accounts, including the student loan account pertaining to Plaintiff, and determined that Plaintiff's account was not subject to the Consent Order.

12.     Plaintiff's student loan account is not subject to the Consent Order for the following reasons:

     a. At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintains complete documentation that NCSLT 2006-4 owns Plaintiff's student loan;

     b. At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently, NCSLT 2006-4 maintains a complete chain of assignment evidencing that Plaintiff's student loan was transferred to and is owned by NCSLT 2006-4;

c. Plaintiff's student loan was transferred and assigned to NCSLT 2006-4 shortly after Plaintiff originated the loan and prior to any payment becoming due; and

d. At the time NCSLT 2006-4 filed the state-court lawsuit against Plaintiff, on May 6, 2017, and currently NCSLT 2006-4 maintains sufficient evidence to prove that Plaintiff's student loan debt exists and is in default.

**Plaintiff's NCSLT 2006-4 Student Loan**

13.    On June 10, 2006, Plaintiff executed a "Loan Request/Credit Agreement" with GMAC Bank, N.A. in order to fund his enrollment at the University of California-Davis ("UC-Davis") during the academic period from May 2006 through December 2006 in the amount of $25,000. The loan is subject to the terms and conditions affixed to the Credit Agreement. The first paragraph on page 1 of the terms and conditions provides that, "The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement." On page 3, ¶ L(4) Plaintiff agrees to the term that his lender "may assign this Credit Agreement at any time." Attached as **Exhibit 1** to this Declaration is a true and correct copy of the Credit Agreement signed by Plaintiff.

14.    On June 26, 2006, the student loan was approved and $25,000.00 in student loan funds were disbursed to Plaintiff exclusively for the purposes of Plaintiff's enrollment at UC-Davis. None of the loan proceeds were returned or refunded. Attached as **Exhibit 2** to this Declaration is a true and correct copy of the Note Disclosure Statement. Exhibits 1 and 2 were made in the regular course of a business and prepared by NCSLT 2006-4's Program Lender, GMAC Bank, N.A., and are now kept in the ordinary course of business within the NCSLT 2006-4's loan servicing system maintained by TSI.

15.     On December 7, 2006, Plaintiff's student loan was then transferred, sold, and assigned to NCSLT 2006-4 for valuable consideration, in the ordinary course of the securitization process.   The student loan was in good standing and not in default on December 7, 2006, when it was assigned to NCSLT 2006-4, as Plaintiff was still enrolled at UC-Davis and the student loan had not yet become due.

16.     The assignment of the student loan to NCSLT 2006-4 was made pursuant to the Pool Supplement and Deposit and Sale Agreement.   Upon assignment, the Credit Agreement and Note Disclosure Statement were simultaneously transferred to NCSLT 2006-4.   Attached as **Exhibits 3 and 4** respectively, are true and correct copies of the Pool Supplement and Deposit and Sale Agreement.   Both Exhibits 3 and 4, along with the Credit Agreement, and Note Disclosure Statement, are kept in the NCSLT 2006-4 loan servicing system, maintained by TSI.   Exhibit 3 contains a redacted excerpt from the Schedule of transferred student loans referenced within the Pool Supplement, documenting the assignment and transfer of Plaintiff's student loan to NCSLT 2006-4.

17.     Between 2008 and 2011 Plaintiff requested seven (7) separate forbearances/deferments through NCSLT 2006-4's prior servicer, AES.   Attached as **Exhibit 5** to this Declaration is a true and correct copy of the AES Deferment/Forbearance record for Plaintiff's NCSLT 2006-4 loan.   Attached as **Exhibit 6** through **Exhibit 12** are the 7 separate written deferment requests sent by Plaintiff between 2008 and 2011.

18.     On February 27, 2010, AES sent Plaintiff a letter on behalf of NCSLT 2006-4 acknowledging one of his deferment requests and his updated enrollment to Foothill College, the header on the first page of the letter stated, "National Collegiate Trust."   Attached as **Exhibit 13** to this Declaration is a true and correct copy of the letter.

19.     Prior to his default, and refusal to pay, Plaintiff made several payments on his student loan, with the last payment posted on February 13, 2015. Attached as **Exhibit 14** is a true and correct copy of the AES servicing records pertaining to Plaintiff's student loan, including the Loan Financial History.

20.     Attached as **Exhibit 15** is a true and correct copy of Plaintiff's post-default Loan Payment History Report.

21.     After February 13, 2015, Plaintiff failed to make another payment on his student loan, and an unpaid balance of $32,726.55 remains due and owing to NCSLT 2006-4.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of February, 2019, at Peachtree Corners, Georgia.

Bradley Luke

# Exhibit 1

Exhibit 1

56208 065315

---

**\* Cosigned \*   Loan Request/Credit Agreement – Signature Page**

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

---

**LOAN PROGRAM INFORMATION**

GMAC Bank Undergraduate Loan                                     Academic Period: 05/2006-12/2006

Lender: GMAC Bank                          School: UNIVERSITY OF CALIFORNIA DAVIS

Loan Amount Requested: $25000.00      Repayment Option: Interest Only
Deferral Period Margin: 4.75               Repayment Period Margin: 4.75      Loan Origination Fee Percentage: 5.00
                                                                              This fee may vary – see paragraph F, page 3 –
                                                                              Bank will always assess the fee at origination.

---

**STUDENT BORROWER INFORMATION** (Must be old enough to enter into a binding contract)

Borrower Name: Oskar A Lizarragadavis          Home Address: ███████ San Diego, CA 92103
Social Security #: ████4043                    Date of Birth: ████1983          Home Telephone: ███4267

Student Citizenship (check one box):   ☒ U.S. Citizen   ☐ Eligible Non-Citizen(Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Magdalena Anderson          Reference Home Tel #: ████7152       Work Tel #: ████8616
Reference Street Address: _____
Reference City/State/Zip:  La Mesa, CA 91942

---

**COSIGNER INFORMATION** (Must be old enough to enter into a binding contract)

Cosigner Name: Consuelo B Hayes               Home Address: ███████ San Diego, CA 92139
Social Security #: ███-██-0110                Date of Birth: ████1924          Home Telephone: ███8388
Have you ever defaulted on a student loan or declared bankruptcy?   ☒ No   ☐ Yes
Current Employer: UNITED STATES FEDERAL GOVERNME                              Employer Telephone: 6194708388
Current Position: Retired
Years at Previous Employment: 30 Years           Years There: 30 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):   ☒ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name: Esther Goodwall          Reference Home Tel #: ████2221       Work Tel #: ████9998
Reference Street Address: _____
Reference City/State/Zip:  National City, CA 91950

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit
Agreement GM.05-06.CSX1.20.0406 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is
subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on
nor to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on or to sign electronically this Credit
Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law,
(ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the
Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my
obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO:** 800-704-9406

Signature of Borrower _____          Date  6-10-06

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR
JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner _Consuelo B Hayes_          Date 6-15-06

---

GM.05-06.CSX1.20.0406                          LENDER COPY
PN01_GM_05-06_CSX1_F_X_LIZARRAGAD_A103826471.pdf                    GMCUIO

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean GMAC Bank, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts

owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the Commonwealth of Pennsylvania. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, **if** I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.
3. Repayment Terms - My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that

this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in Pennsylvania and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. **I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement. If in the future I apply for a loan that is guaranteed by TERI and funded by another lender, I also authorize the sharing of application information for this loan (other than information in a consumer report) with the other lender and TERI and the reuse of such information by such new lender and TERI in my new application.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of

this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17.  If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.  If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original.  However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M.  DISCLOSURE NOTICE**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

**N. BORROWER'S CERTIFICATION:**  I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## FEDERAL COSIGNER NOTICE

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER:**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

# Exhibit 2

Exhibit 2

# NOTE-DISCLOSURE STATEMENT

$ 26315.79

Loan No. 03826471

Borrower(s) Oskar A Lizarragadavis
Consuelo B Hayes

Student:    Oskar A Lizarragadavis
Date:     06/26/2006
           Lender Name and Address:
           GMAC Bank
           3710 Kennett Pike
           Wilmington, DE 19807

This disclosure statement relates to your Loan Note disbursed on June 26, 2006.
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.006 % | $ 33574.94 | $ 25000.00 | $ 58574.94 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 002 | $ 203.51 | On the 26th day of each month beginning July 2006 |
| 001 | $ 200.72 | On the 25th day of each month beginning September 2006 |
| 240 | $ 241.53 | On the 25th day of each month beginning October 2006 |
| | | |

VARIABLE RATE: The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly – The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly – The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐ LIBOR Index Adjusted Monthly – The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

LATE CHARGES: If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%). PREPAYMENT: If you pay off early, you will not have to pay a penalty.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

| | |
|---|---|
| Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) | $ 26315.79 |
| | |
| Itemization of Amount Financed | |
| Amount paid to Oskar A Lizarragadavis and | $ |
| Amount paid to Consuelo B Hayes | $ 25000.00 |
| Total Amount Financed | $ 25000.00 |
| | |
| Itemization of Prepaid Finance Charge | |
|     Origination Fee | $ 1315.79 |
|     Total Prepaid Finance Charge(s) | $ 1315.79 |

CSA TRAJ 6/03 9736

# Exhibit 3

Exhibit 3

## 2006-4 POOL SUPPLEMENT
## GMAC BANK

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of May 30, 2003, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation and GMAC Bank (the "Program Lender"). This Supplement is dated as of December 7, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each GMAC Bank Conforming Loan described in the attached Schedule 1 (the "Transferred GMAC Bank Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred GMAC Bank Loans. The Depositor in turn will sell the Transferred GMAC Bank Loans to The National Collegiate Student Loan Trust 2006-4 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each GMAC Bank Note evidencing such GMAC Bank Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said GMAC Bank Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its

{F0001033.1 }

properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred GMAC Bank Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred GMAC Bank Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred GMAC Bank Loans included in the Pool.

{F000103J1}

### Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred GMAC Bank Loans described in Schedule I, other than any right to obtain servicing after the date hereof.  It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.  The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred GMAC Bank Loans, and Program Lender hereby releases any security interest it may have in such collateral.  Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
John A. Hupalo
Senior Executive Vice President

GMAC BANK

By: _____
Name:
Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
John A. Hupalo
President

{F0001033.1}

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
     John A. Hupalo
     Senior Executive Vice President

GMAC BANK

By: _____
     Name:
     Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
     John A. Hupalo
     President

{F0001033.1}

**National Collegiate Student Loan Trust 2006-4**
**Roster:** 0

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|--------|-------------|----------|--------------|------|
| GMAC BANK | 900005IP | GMAC Bank | DTC - Undergraduate | ████-4043 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---------|-----------|------|------------|--------|
| 03826471 | 26-Jun-06 | 1 | IO | 0.0475 |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|-----------------|----------------|---------------|-----------------------|---------------------|
| 0.05 | 0.015 | 0.05 | $26,315.79 | $25,000.00 |

| | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|--|----------------------------|-----------------------------------|-----------------------------------|--------------------------------------------------|
| Total Net Principal | | | | |
| $24,917.50 | $0.00 | $26,228.95 | $174.18 | $0.00 |

| | | | | **Final Reconciliation Settlement Figures** |
|--|--|--|--|--|
| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
| $100.00 | $1,245.88 | $747.53 | **$498.35** | **$27,001.48** |

# Exhibit 4

Exhibit 4

EX-99.5 7 d587610.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.5

<div align="center">

**DEPOSIT AND SALE AGREEMENT**
**THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4**

</div>

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of December 7, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

<div align="center">

**ARTICLE I**
**TERMS**

</div>

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

<div align="center">

**ARTICLE II**
**DEFINITIONS**

</div>

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of December 1, 2006 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

<div align="center">

**ARTICLE III**
**SALE AND PURCHASE**

</div>

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

<div align="center">

**ARTICLE IV**
**REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER**

</div>

Section 4.01.        General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)        The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)        The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.        Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.        Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

<div align="center">

**ARTICLE V**
**PURCHASE OF LOANS; REIMBURSEMENT**

</div>

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee, and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

<div align="center">

**ARTICLE VI**
**LIABILITY OF SELLER; INDEMNITIES**

</div>

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)        The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)        The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this

Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
### COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2006-4
> c/o Wilmington Trust Company, as Owner Trustee
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
### AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all

outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC,
as Seller

By:    GATE Holdings, Inc., Member

By:    /s/ John A. Hupalo
Name:  John A. Hupalo
Title: President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST
2006-4, as Purchaser

By:    Wilmington Trust Company, not in its individual
       capacity but solely as Owner Trustee

By:    /s/ Michele C. Harra
Name:  Michele C. Harra
Title: Financial Services Officer

### SCHEDULE A

#### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated December 7, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- Charter One Bank, N.A., dated December 7, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Asrtive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, ThinkFinancial Alternative Loan Program, UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program.

- Citizens Bank of Rhode Island, dated December 7, 2006, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, Alternative Loan Program, Navy Federal Referral Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Loan Program.

- First National Bank Northeast, dated December 7, 2006, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- GMAC Bank, dated December 7, 2006, for loans that were originated under GMAC Bank's Alternative Loan Program.

- HSBC Bank USA, National Association, dated December 7, 2006, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated December 7, 2006, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated December 7, 2006, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank, dated December 7, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated December 7, 2006, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated December 7, 2006, for loans that were originated under National City Bank's Alternative Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated December 7, 2006, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, Regions Bank Alternative Loan Program, and Varsity Group Alternative Loan Program.

- Sovereign Bank, dated December 7, 2006, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated December 7, 2006, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated December 7, 2006, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated December 7, 2006, for loans that were originated under U.S Bank's Alternative Loan Program.

**SCHEDULE B**

**_Student Loan Purchase Agreements_**

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's Alternative Loan Program

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- JPMorgan Chase Bank, N.A,, (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under National City Bank's Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Porgam, Old National Bank Alternative Loan Program, Regions Bank Alternative Loan Program, and Varsity

Group Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

# Exhibit 5

Exhibit 5

```
   ITS31*****4043;                  AES/PA      VTAM NAIC      TSX31
DATE 09/14/16 18:24:40 DEFERMENT/FORBEARANCE LOAN DETAIL


BORROWER SSN: ***-**-4043 NAME: OSKAR A LIZARRAGA-DAVIS
1ST DISB DATE: 06/26/06   OWNER: NCT               LOAN PGM: ALPLN
LOAN SEQ: 001         GUARANTOR: TERI

                                                      MORE:   +
                                                  TOTL
                 BEGIN     END    GRACE    CAP  DAYS DAYS  MOS    CERT
      DEFER/FORB TYP  DATE   DATE  END DATE IND  USED LEFT USED   DATE
 _  F - ADMINISTRV 11 01 13 03 31 14         Y  151 UNL   6.0  02 24 14
 _  F - ADMINISTRV 06 01 11 06 30 11         Y   30 UNL   6.0  06 28 11
 _  F   GEN/TEMP   04 01 11 04 30 11         Y   30    3 11.9  04 15 11
 _  F   GEN/TEMP   12 01 10 02 28 11         Y   90    3 11.9  12 15 10
 _  F - GEN/TEMP   07 01 10 10 30 10         Y  122    3 11.9  07 08 10
 _  F - GEN/TEMP   02 01 10 05 31 10         Y  120    3 11.9  03 12 10
 _  F - LAT SCH NT 12 12 09 12 31 09         Y   20 UNL   .7  01 20 10




 F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN
```

# Exhibit 6

Exhibit 6

**RECEIVED**

OCT 01 2008

FINANCIAL AID
FOOTHILL COLLEGE

## THE EDUCATION RESOURCES INSTITUTE
### REQUEST FOR DEFERMENT

*PLEASE COMPLETE ALL FIELDS BELOW. YOUR REQUEST MAY BE DENIED IF THE FORM IS NOT COMPLETED CORRECTLY.*

ACCOUNT NUMBER _____ 1 6761

BORROWER NAME Oskar Carrara-Davis

ADDRESS _____ STATE CA ZIP CODE 94061

TELEPHONE NUMBER ( ____ ) 0303 ALTERNATE TELEPHONE NUMBER ( ___ ) Same

WORK TELEPHONE NUMBER ( ___ ) ____-____ EMAIL ADDRESS Jakoam01@yahoo.com

☒ Yes, I am in a degree granting program and I hereby request the deferment selected below for all of my private loans guaranteed by The Education Resources Institute (TERI). If the deferment is being requested for specific loans, please list the first disbursement dates of each: _____.

☒ SCHOOL DEFERMENT:  ☒ FULL TIME  ___ HALF TIME ___
☒ GRADUATE STUDIES
☐ CHIROPRACTIC (CHIRO LOANS ONLY)
☐ VETERINARY (IHELP0/3 LOANS ONLY)
☐ INTERNSHIP/RESIDENCY

| AUTHORIZED OFFICIAL'S CERTIFICATION REQUIRED FOR DEFERMENT |
|---|

PROGRAM BEGIN DATE 9/2/08  PROGRAM END DATE 12/09  EXPECTED GRAD DATE 12/09

INSTITUTION/ORGANIZATION NAME FINANCIAL AID OFFICE FOOTHILL COLLEGE  DOE CODE 001199

ADDRESS 12345 EL MONTE ROAD
LOS ALTOS HILLS, CA 94022
CITY Rose C Myers STATE _____ ZIP _____ TELEPHONE NUMBER _____ 7246

SIGNATURE OF AUTHORIZED OFFICIAL   Vice President of Student Development and Instruction   NAME/TITLE OF OFFICIAL   DATE 10/3/08

My signature indicates that I am an Authorized Official and I have read and agree that the certification above is true to the best of my knowledge.

I meet the qualifications as stated in the cover letter for the deferment type checked above and request my lender/servicer to defer repayment of my educational loan(s). If my loan program allows, accrued and unpaid interest may be capitalized, added to the principal balance, in accordance with the terms of my original promissory note. I understand that, should my situation under which I applied for the deferment change, I must notify my lender/servicer immediately.

BORROWER SIGNATURE _____ DATE 10/1/08

08 OCT 14 PM 2: AES LS

RETURN COMPLETED FORM TO: American Education Services • P. O. Box 2461 • Harrisburg, PA 17105-2461

# Exhibit 7

Exhibit 7

I-PS 08/08

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER ▮▮▮▮ 6761

BORROWER NAME _Oskar A. Lizarraga-Davis_

ADDRESS ▮▮▮▮▮▮▮▮▮▮▮▮

CITY _Redwood City_ STATE _CA_ ZIP CODE _94061_

TELEPHONE NUMBER (▮▮▮) _0303_

ALTERNATE TELEPHONE NUMBER (____) _Same_

WORK TELEPHONE NUMBER (____) _N/A_

EMAIL ADDRESS _Jakoam01@yahoo.com_

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

☒ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

_I just graduated and have no job/no income._

**Section 2:**
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to six months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

☒ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: _n/a_

Number of months you are requesting Forbearance: _12 months (but may change @ 3mo. renewal, hopefully I will have a job by then)._

**Section 3:**
You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentations will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

**Borrower Signature** _____   **Date** __2/15/00__

\* **SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH** \*

\*\* **ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL.** \*\*

---

**THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!**

| | |
|---|---|
| **1st CO-BORROWER** Consuelo Hayes (Deceased) | **TELEPHONE NUMBER** ( ___ ) _____ |
| **ACCOUNT NUMBER** _____ | **ALTERNATE PHONE NUMBER** ( ___ ) _____ |
| **ADDRESS** ▬▬▬▬▬▬ | **EMPLOYER NAME** _____ N/A |
| **CITY** San Diego **STATE** CA **ZIP** 92139 | **EMPLOYER TELEPHONE NUMBER** ( ___ ) _____ |
| **EMAIL ADDRESS** N/A | |

| | |
|---|---|
| **2nd CO-BORROWER** N/A | **TELEPHONE NUMBER** ( ___ ) _____ |
| **ACCOUNT NUMBER** _____ | **ALTERNATE PHONE NUMBER** ( ___ ) _____ |
| **ADDRESS** _____ | **EMPLOYER NAME** _____ |
| **CITY** _____ **STATE** ___ **ZIP** ___ | **EMPLOYER TELEPHONE NUMBER** ( ___ ) _____ |
| **EMAIL ADDRESS** _____ | |

# Exhibit 8

Exhibit 8

**3/15/10 rme**

Attn: GPS

Fax: ████████ - 2774

FROM: Oskar Lizarraga - Davis

Fax: ████████ 5793

Cell ████████ 0303

-Forebearance Request for privately insured loan. 2nd attempt, with death certificate this time and also mailing out

8C-FRONT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER ▓▓▓▓▓▓▓ 6761

BORROWER NAME  Osker  Lizarraga · Davis

ADDRESS

CITY  Redwood City  STATE  CA  ZIP CODE  94061

TELEPHONE NUMBER ▓▓▓▓  0503

ALTERNATE TELEPHONE NUMBER (_____)_____ - same

WORK TELEPHONE NUMBER (_____)_____ :  N/A

EMAIL ADDRESS  Takaan 020 yahoo. com

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____  Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

X  No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

_____

_____

_____

**Section 2:**
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be included to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

X  Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each:  N/A

_____

Number of months you are requesting Forbearance:  1yr  but I understand I need to
apply multiple times

**Section 3:**
You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify ASS Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MORS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____        Date _____3/12/10_____

\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE. BUT NOT BOTH \*

\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\*

---

THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!

1st CO-BORROWER ___Deceased___ , I'm also taxing death certificate and

ACCOUNT NUMBER _____        TELEPHONE NUMBER (____) ___Mailing both as well___

ADDRESS _____        ALTERNATE PHONE NUMBER (____) _____

CITY _____ STATE ____ ZIP _____        EMPLOYER NAME _____

EMAIL ADDRESS _____        EMPLOYER TELEPHONE NUMBER (____) _____

CO-BORROWER SIGNATURE _____        DATE _____

2nd CO-BORROWER ___N/A___        TELEPHONE NUMBER (____) _____

ACCOUNT NUMBER _____        ALTERNATE PHONE NUMBER (____) _____

ADDRESS _____        EMPLOYER NAME _____

CITY _____ STATE ____ ZIP _____        EMPLOYER TELEPHONE NUMBER (____) _____

EMAIL ADDRESS _____

CO-BORROWER SIGNATURE _____        DATE _____

If you have additional co-signers, please be sure to attach their information to the application including their signatures.

P.S. this is my second attempt and I'm also sending death certificate this time.

3/15/10 rme

Attn: GPS

Fax : [redacted] 2774

FROM: Oskar Lizarraga-Davis

Fax : [redacted] 5793

Cell : [redacted] 0303

Forebearance Request for privately insured loan. 2nd attempt, with death certificate this time and also mailing out

SC-FRBNCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER _____ 6761

BORROWER NAME ___ Iskar Lizarraga · Davis

ADDRESS _____

CITY ___ Redwood City ___ STATE ___ CA ___ ZIP CODE ___ 94061

TELEPHONE NUMBER _____ 0803

ALTERNATE TELEPHONE NUMBER (____)_____ - Same.

WORK TELEPHONE NUMBER (____)_____ - N/A

EMAIL ADDRESS ___ Takuan φ2φ yahoo.com

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due in the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

_Ø_ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

_____
_____
_____

**Section 2:**
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

_X_ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: ___ N/A

Number of months you are requesting Forbearance: ___ 1yr  but I understand I need to apply multiple times

**Section 3:**
You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to extend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____     Date _3/12/10_

**\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \***

**\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A", ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\***

---

**THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!**

1st CO-BORROWER _Deceased, I'm also faxing death certificate, and_     TELEPHONE NUMBER (_____) _Mailing both as well._

ACCOUNT NUMBER _____     ALTERNATE PHONE NUMBER (_____) _____

ADDRESS _____     EMPLOYER NAME _____

CITY _____ STATE _____ ZIP _____     EMPLOYER TELEPHONE NUMBER (_____) _____

EMAIL ADDRESS _____

CO-BORROWER SIGNATURE _____     DATE _____

2nd CO-BORROWER _N/A_     TELEPHONE NUMBER (_____) _____

ACCOUNT NUMBER _____     ALTERNATE PHONE NUMBER (_____) _____

ADDRESS _____     EMPLOYER NAME _____

CITY _____ STATE _____ ZIP _____     EMPLOYER TELEPHONE NUMBER (_____) _____

EMAIL ADDRESS _____

CO-BORROWER SIGNATURE _____     DATE _____

If you have additional co-signers, please be sure to attach their information to the application including their signatures.

_P.S. this is my second attempt and I'm also sending death certificate this time._

SC-FRBNCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER _____ ████████ 6761 A10

BORROWER NAME __Oskar Lizarraga - Davis__

ADDRESS _____

CITY __Redwood City__ STATE __CA__ ZIP CODE __94061__

TELEPHONE NUMBER (████████) 0303

ALTERNATE TELEPHONE NUMBER (_____) __- Same__

WORK TELEPHONE NUMBER (_____) __- N/A__

EMAIL ADDRESS __Takvam 01@ yahoo. com__

RECEIVED

MAR 1 8 2010

AES SERVICING

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

_X_ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

_____

_____

_____

**Section 2:**
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

_X_ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: __N/A__

Number of months you are requesting Forbearance: __1 yr. but I understand I need to apply multiple times__

**Section 3:**

You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____   Date _____3/12/10_____

\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \*

\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\*

---

**THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!**

| | |
|---|---|
| **1st CO-BORROWER** _Deceased, I'm also faxing death certificate, and_ | **TELEPHONE NUMBER** (___) _mailing both as well._ |
| **ACCOUNT NUMBER** _____ | **ALTERNATE PHONE NUMBER** (___) _____ |
| **ADDRESS** _____ | **EMPLOYER NAME** _____ |
| **CITY** ____ **STATE** ____ **ZIP** ____ | **EMPLOYER TELEPHONE NUMBER** (___) ____ |
| **EMAIL ADDRESS** _____ | |
| **CO-BORROWER SIGNATURE** _____ | **DATE** _____ |

| | |
|---|---|
| **2nd CO-BORROWER** _N/A_ | **TELEPHONE NUMBER** (___) _____ |
| **ACCOUNT NUMBER** _____ | **ALTERNATE PHONE NUMBER** (___) _____ |
| **ADDRESS** _____ | **EMPLOYER NAME** _____ |
| **CITY** ____ **STATE** ____ **ZIP** ____ | **EMPLOYER TELEPHONE NUMBER** (___) ____ |
| **EMAIL ADDRESS** _____ | |
| **CO-BORROWER SIGNATURE** _____ | **DATE** _____ |

If you have additional co-signers, please be sure to attach their information to the application including their signatures.

P.S. this is my second attempt and I'm also sending death certificate this time.

# Exhibit 9

Exhibit 9


**Office**

# Fax Cover Sheet

Case 5:18-cv-04081-BLF   Document 42   Filed 02/08/19   Page 51 of 85

Date _____7/9/10_____

Number of pages ___3___ (including cover page)

## To:

Name _GRS ( grad. repayment srvc.-private )_
                                    loan

Company _American Education Srvc._

Telephone _███████-0557__

Fax _██████ 3916__

## From:

Name _Oskar Lizalraga-Davis_

Company _____

Telephone _██████ 0303__

Comments _Renewal request for forbearance for private loan_

SC-FRBNCT

# PRIVATELY INSURED LOAN
Repayment Option Form

**BORROWER ACCOUNT NUMBER** _____ 676l

**BORROWER NAME** _____ Oskar _____

**ADDRESS** _____

CITY _Redwood City_  **STATE** _CA_  **ZIP CODE** _94061_

**TELEPHONE NUMBER (.** _____ 0303

**ALTERNATE TELEPHONE NUMBER (** ___ ) ___ - ___

**WORK TELEPHONE NUMBER (** ___ )

**EMAIL ADDRESS** _____ Jakoam 01@yahoo.com

**Section 1:**

If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equalling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (if you are applying for the MGRS, you may skip Section 2 and go to section 3.

[X] No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

_Need to take certification exam_
_to get job, can't done with_
_school_

**Section 2:**

If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

[X] Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each:

_____

Number of months you are requesting Forbearance: _9 mo. (already used 3mo.) /renewal_

**Section 3:**

You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify ASS Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____   Date  7/8/10

\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \*

\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\*

---

**THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!**

1st CO-BORROWER _Deceased_   TELEPHONE NUMBER (____) _____
ACCOUNT NUMBER _Death Cert. on_   ALTERNATE PHONE NUMBER (____) _____
ADDRESS _____   _Record_   EMPLOYER NAME _____
CITY _____ STATE ____ ZIP _____   EMPLOYER TELEPHONE NUMBER (____) _____
EMAIL ADDRESS _____
CO-BORROWER SIGNATURE _____   DATE _____

2nd CO-BORROWER _N/A_   TELEPHONE NUMBER (____) _____
ACCOUNT NUMBER _____   ALTERNATE PHONE NUMBER (____) _____
ADDRESS _____   EMPLOYER NAME _____
CITY _____ STATE ____ ZIP _____   EMPLOYER TELEPHONE NUMBER (____) _____
EMAIL ADDRESS _____
CO-BORROWER SIGNATURE _____   DATE _____

If you have additional co-signers, please be sure to attach their information to the application including their signatures.

# Exhibit 10

Exhibit 10



FedEx Office.

FedEx Kinko's is now FedEx Office

# Fax Cover Sheet

Date ___12/10/10___

Number of pages ___3___ (including cover page)

To:

Name ___AES Private Loan Serv___

Company _____

Telephone _____

Fax ___3916___

Comments ___Renewal - Forebearance Request___

From:

Name ___Oscar Verauaga-Davis___

Company _____

Telephone _____ ___0303___

fedex.com 1.800.GoFedEx 1.800.463.3339

Fax - Local Send

© 2009 FedEx. All rights reserved. Products,+ rates and tariffs vary by location. 510.0/P09.009 .SEP05

Fax - Domestic Send

Fax - International Send

9C-FRBNCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER _____ 6761

BORROWER NAME __Oskar Lizarraga-Davis__

ADDRESS __92'6 Woodside Rd. #220__

CITY __Redwood City__ STATE __CA__ ZIP CODE __94061__

TELEPHONE NUMBER ( ____ ) ____ - 0303

ALTERNATE TELEPHONE NUMBER ( ____ ) ____ - Same

WORK TELEPHONE NUMBER ( ____ ) ____ - ____

EMAIL ADDRESS __Jakoam01@yahoo.com__

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

__✓__ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:
__I retake my ntl. boards in March and then have__
__to look for full-time job after I pass. I work part-time__
__while studying and have too many bills to afford everything__

**Section 2:** right nw.
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to a credit bureau will not be removed if the Forbearance is granted retroactively.

__✓__ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: _____

Number of months you are requesting Forbearance: __6 months__

**Section J:**
You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to extend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____ Date _12/8/10_

**\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \***

**\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\***

---

## THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!

| | |
|---|---|
| 1st CO-BORROWER _Consuelo Hayes_ | TELEPHONE NUMBER (_____) _____ |
| ACCOUNT NUMBER _Deceased + death_ | ALTERNATE PHONE NUMBER (_____) _____ |
| ADDRESS _Certificate on record_ | EMPLOYER NAME _____ |
| CITY _____ STATE_____ ZIP_____ | EMPLOYER TELEPHONE NUMBER (_____) _____ |
| EMAIL ADDRESS _____ | |
| CO-BORROWER SIGNATURE _____ | DATE _____ |

| | |
|---|---|
| 2nd CO-BORROWER _____ | TELEPHONE NUMBER (_____) _____ |
| ACCOUNT NUMBER _____ | ALTERNATE PHONE NUMBER (_____) _____ |
| ADDRESS _____ | EMPLOYER NAME _____ |
| CITY _____ STATE_____ ZIP_____ | EMPLOYER TELEPHONE NUMBER (_____) _____ |
| EMAIL ADDRESS _____ | |
| CO-BORROWER SIGNATURE _____ | DATE _____ |

**If you have additional co-signers, please be sure to attach their information to the application including their signatures.**

# Exhibit 11

Exhibit 11

**FedEx Office**

FedEx Kinko's is now FedEx Office

# Fax Cover Sheet

Date _____ 4/13/11 _____

Number of pages __3__ (including cover page)

## To:

Name _____ AES Edu. Serc. _____

Company _____

Telephone _____

Fax _____████████____ 2774 _____

Comments _____ Forbearance Request _____

## From:

Name _____ Oskar Lizarraga-Davis _____

Company _____

Telephone _____(████████____ 0803 _____



Fax - Local Send



Fax - Domestic Send

Fax - International Send

fedex.com 1.800.GoFedEx 1.800.463.3339

© 2004 FedEx. All rights reserved. Products, services and hours vary by location. 810.0P00.000  5EP09

22705

Case 5:18-cv-04081-BLF   Document 42   Filed 02/08/19   Page 59 of 85

SC-FRONCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER _____ 0761

BORROWER NAME _____ Oskar Grazelagg-Davis

ADDRESS _____

CITY _Redwood City_ STATE _CA_ ZIP CODE _94061_

TELEPHONE NUMBER ( _____ ) - 0303

ALTERNATE TELEPHONE NUMBER ( ___, ) _Same_

WORK TELEPHONE NUMBER ( _____ )- ____

EMAIL ADDRESS _____ Jakoam O1 @ yahoo.com

**Section 1:**
If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS. (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

✓ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:
_Working minimal hrs / Part-time while studying to_
_Retake my NM- obtitute exam to work in profession_
_as Physician Asst. and obtain full-time job in my field._

**Section 2:**
If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

✓ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: _____

Number of months you are requesting Forbearance: _12months_

**Section 3;**

You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____     Date ___4/10/11___

\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \*

\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\*

---

**THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS!**

1st CO-BORROWER   Cornielo   Hayes   (Deceased / on file)

| | |
|---|---|
| ACCOUNT NUMBER _____ | TELEPHONE NUMBER ( ____ ) _____ |
| ADDRESS _____ | ALTERNATE PHONE NUMBER ( ____ ) _____ |
| CITY _____ STATE _____ ZIP_____ | EMPLOYER NAME _____ |
| EMAIL ADDRESS _____ | EMPLOYER TELEPHONE NUMBER ( ____ ) _____ |
| CO-BORROWER SIGNATURE _____ | DATE _____ |

2nd CO-BORROWER _____

| | |
|---|---|
| ACCOUNT NUMBER _____ | TELEPHONE NUMBER ( ____ ) _____ |
| ADDRESS _____ | ALTERNATE PHONE NUMBER ( ____ ) _____ |
| CITY _____ STATE _____ ZIP_____ | EMPLOYER NAME _____ |
| EMAIL ADDRESS _____ | EMPLOYER TELEPHONE NUMBER ( ____ ) _____ |
| CO-BORROWER SIGNATURE _____ | DATE _____ |

**If you have additional co-signers, please be sure to attach their information to the application including their signatures.**

# Exhibit 12

Exhibit 12



## Fax Cover Sheet

To: AES Pvt. Loan Srvc    Fax #: 717-720-3916

From: Oskar A. Lizarraga-Davis  Date: 6-15-11

Pages (including cover): 3    Time: 12:44pm

Re: Renewal Forbearance Request  E-mail: Jakoam01@yahoo.com

Comments:

Thank You

Confidentiality Clause: The information contained in this fax message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this fax message is not the recipient of the employee or agent responsible to deliver it to the intended recipient, you are hereby on notice that you are in possession of confidential and privileged information. Any dissemination, distribution or copying of this communication is strictly prohibited. Please immediately notify the sender by telephone of your inadvertent receipt, and return the original fax message to the sender at the address above via the U.S. Postal Service.

SC-PRBNCT

# PRIVATELY INSURED LOAN
### Repayment Option Form

BORROWER ACCOUNT NUMBER _____ 6761

BORROWER NAME _____ Oskar Lizarraga-Davis

ADDRESS _____

CITY _____ Redwood City _____ STATE _____ CA _____ ZIP CODE _____ 94061

TELEPHONE NUMBER ( _____ ) 0303

ALTERNATE TELEPHONE NUMBER ( _____ ) _____ - _____ Same

WORK TELEPHONE NUMBER ( _____ ) _____ - _____

EMAIL ADDRESS _____ Takvam Ø1@yahoo.com

**Section 1:**

If your financial situation is making it hard to make timely payments on your education loan(s), you may want to consider a MODIFIED GRADUATED REPAYMENT SCHEDULE (MGRS). This schedule offers:

- 12 months of payments at 50% of the regular monthly principal and interest payment amount.
- 12 months of interest only payments equaling 31 days of interest.
- A return to full principal and interest payments for the balance of your loan period.
  These payments may be higher than your previous monthly payments due to the 24 months of reduced payments listed above.

_____ Yes, I would like to apply for the MGRS (If you are applying for the MGRS, you may skip Section 2 and go to section 3.

✓ No, I am unable to make at least 50% of my regular monthly payment for the following reasons:

I rotake my intl. boards in March and then have to look for full-time job after I pass. I work part-time while studying and have too many bills to afford everything right now.

**Section 2:**

If your financial difficulties prevent you from making timely payments under a Modified Graduated Repayment Schedule (MGRS) on your Privately Insured loan(s), you may be eligible for a Forbearance. Forbearance is granted at the owner's discretion for a few months as an alternative to regular monthly payments. The Forbearance is normally granted in increments of one to three months, with a maximum of twelve months during the life of the loan. The Forbearance period may be backdated to cover periods of delinquency, if any exist. However, any negative reports that were submitted to credit bureaus will not be removed if the Forbearance is granted retroactively.

✓ Yes, I hereby request a Forbearance for all of my eligible Privately Insured loan(s). If the Forbearance is being requested for specific loans, please list the first disbursement dates of each: _____

Number of months you are requesting Forbearance: _____ 6 months

**Section 3:**

You must continue making your regular monthly payments until the Forbearance or MGRS has been approved. You will receive written notice of the approval or denial of this request, after it has been processed.

I certify that I am unable to make payments according to the present terms of my loan(s). I understand that accrued and unpaid interest will be capitalized at the expiration of the MGRS or Forbearance period, and included in a new repayment schedule. This new repayment schedule will decrease my repayment period and increase my monthly payment amount.

I understand this request and all supporting documentation will remain the property of the lender, and/or its agent. The owner reserves the right to obtain a copy of my credit report. Additional debt incurred or preferential payments to other creditors could result in the denial or termination of my forbearance request. I understand that should my situation under which I applied for Forbearance change, I must immediately notify AES Graduate and Professional Services. The above information is true and correct to the best of my knowledge. I understand that misrepresentation may lead to the denial of my request. I have read and understand and agree to the terms of this request. If I selected MGRS, I understand that I have agreed to amend the repayment terms of the original promissory note for my Privately Insured loan(s).

Borrower Signature _____    Date _6_/_15_/_11_

**\* SELECT EITHER MGRS OR ECONOMIC HARDSHIP FORBEARANCE, BUT NOT BOTH \***

**\*\* ALL ITEMS MUST BE COMPLETED OR INDICATE "N/A". ANY INCOMPLETE ITEM WILL BE CAUSE FOR DENIAL. \*\***

## THIS SECTION MUST BE COMPLETED FOR ACCOUNTS WITH CO-BORROWERS

**1st CO-BORROWER** Consuelo Hayes          TELEPHONE NUMBER (_____) _____

**ACCOUNT NUMBER** Deceased & death          ALTERNATE PHONE NUMBER (_____) _____

**ADDRESS** certificate on record          EMPLOYER NAME _____

**CITY** _____ **STATE** _____ **ZIP** _____          EMPLOYER TELEPHONE NUMBER (_____) _____

**EMAIL ADDRESS** _____

**CO-BORROWER SIGNATURE** _____          **DATE** _____

**2nd CO-BORROWER** _____          TELEPHONE NUMBER (_____) _____

**ACCOUNT NUMBER** _____          ALTERNATE PHONE NUMBER (_____) _____

**ADDRESS** _____          EMPLOYER NAME _____

**CITY** _____ **STATE** _____ **ZIP** _____          EMPLOYER TELEPHONE NUMBER (_____) _____

**EMAIL ADDRESS** _____

**CO-BORROWER SIGNATURE** _____          **DATE** _____

If you have additional co-signers, please be sure to attach their information to the application including their signatures.

# Exhibit 13

Exhibit 13

# National™ Collegiate Trust



**FEBRUARY 27, 2010**

**American Education Services**
P.O. Box 2461  Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B164 4387 6902 27L2#
OSKAR A LIZARRAGA-DAVIS
926 WOODSIDE RD
APT 220
REDWOOD CITY CA  94061-3602

**ACCT NUMBER:** ▓▓6761

---

**THIS LETTER IS FOR YOUR INFORMATION ONLY.**

**WHY WE ARE CONTACTING YOU**
Based on enrollment information we recently received, changes were made to the separation date, deferments, and/or forbearances on your education loan(s). Please refer to the reverse side of this letter for complete details regarding the changes that were made.

**ADDITIONAL INFORMATION YOU MAY FIND HELPFUL**

| If: | Then: |
|---|---|
| a deferment was granted/adjusted on a FFELP loan(s)... | ...you will be billed for the accrued interest on loans that are not federally subsidized. If you choose not to pay the interest, it will be *capitalized* (added to the principal balance of the loan) in accordance with the terms of your promissory note(s). Capitalized interest may increase your monthly payment amount. |
| | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, any outstanding interest will be *capitalized* and your loan(s) will be set up for immediate repayment. |
| a deferment was granted/adjusted on an Alternative loan(s)... | ...the interest may be *capitalized* or billed in accordance with the terms of the loan. |
| | ...you retain the option to cancel the deferment on your loan(s). If you cancel the deferment, your loan(s) will be set up for immediate repayment. |
| a deferment or forbearance was ended on your loan(s)... | ...repayment will resume within 60 days of the new end date. |
| a deferment or forbearance was ended on your loan(s) and you had been using Direct Debit, our automatic payment service, prior to the deferment or forbearance,... | ...we will resume automatically withdrawing your payments from your bank account. Please notify us immediately if you no longer wish for your payments to be debited from your bank account or if your account information changed during the deferment/forbearance period. |
| you feel the information listed on the reverse side of this letter is incorrect... | ...in most cases we will automatically receive the new enrollment information that will correct the status of your loan(s). Please allow up to 4 weeks for us to receive and process new information. |

SXP8:PS06BSAPPM
▓▓6761  ▓▓6761     MR 00090100570001403

**'WHAT IS CAPITALIZATION?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your unsubsidized loan(s) during periods of deferment. If you fail to make required interest payments before the resumption of principal repayment, the lender may capitalize such interest. The principal balance of your loan(s) will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When your deferment ends and you begin repaying your loan(s), your monthly payment amount will be higher or, if your loan(s) is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on loans where interest is paid during the deferment and loans where the interest is capitalized. This example uses an interest rate of 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $    0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

* Total amount repaid includes $1,238 of interest paid by the borrower during the deferment.

**Result:** During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

FEBRUARY 27, 2010

AES
SCHOOL ENROLLMENT STATUS CHANGE LOAN DECLARATION

ACCOUNT NUMBER:    ▓▓▓▓ 6761        NAME:    OSKAR A LIZARRAGA-DAVIS

NEW ENROLLMENT STATUS
SCHOOL                 :    FOOTHILL COLL
SEPARATION DATE        :    12/11/09
SEPARATION REASON      :    GRADUATED
SEPARATION SOURCE      :    CH-CLEARINGHOUSE
DATE NOTIFIED          :    02/25/10

LISTED BELOW ARE THE LOANS THAT WERE AFFECTED BY THE ABOVE REQUESTED SCHOOL
ENROLLMENT STATUS CHANGE. AS A RESULT, YOUR REPAYMENT START DATE MAY HAVE
CHANGED AND DEFERMENT OR FORBEARANCES MAY HAVE BEEN EITHER APPLIED TO YOUR
LOAN OR MODIFIED.

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | CURRENT PRINCIPAL | REPAYMENT DATE |
|---|---|---|---|---|
| ALPLN | NCT | 06/26/06 | $26,869.93 | 09/16/06 |

ACTION

CHANGED D-FULL TIME SCHOOL DEFERMENT.  NEW DATES ARE 09/02/08 TO 12/11/09
ADDED F-LATE SCHL NOTIFICA FORBEARANCE FROM 12/12/09 TO 12/31/09

# Exhibit 14

Exhibit 14

```
ITS2C*****4043;;                  AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:30      LOAN FINANCIAL ACTIVITY
                                             PAGE  1 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                 CUST ACCT:  LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:   STATUS: ACTIVE     CURR BAL:     0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 03/03/15 | 03/03/15 | 5003A | 5.00CR | 0.00 | 0.00 |
| 2 | | 03/02/15 | 03/02/15 | 1030A | 29,689.05CR | 11.74 | 0.00 |
| 3 | | 02/27/15 | | 2601A | 5.00 | 58.71 | 29,099.01 |
| 4 | | 02/12/15 | 02/13/15 | 1010C | 100.00CR | 62.63 | 29,099.01 |
| 5 | | 01/27/15 | | 2601A | 5.00 | 58.71 | 29,099.01 |
| 6 | | 01/12/15 | 01/12/15 | 1010C | 100.00CR | 62.63 | 29,099.01 |
| 7 | | 12/27/14 | | 2601A | 5.00 | 117.43 | 29,099.01 |
| 8 | | 11/27/14 | | 2601A | 5.00 | 27.40 | 29,099.01 |
| 9 | | 11/20/14 | 11/21/14 | 1010C | 100.00CR | 93.94 | 29,099.01 |
| 10 | | 10/27/14 | | 2601A | 5.00 | 46.97 | 29,099.01 |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                    AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:35       LOAN FINANCIAL ACTIVITY      PAGE  2 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 1229621P-NCT
GUARANTOR: TERI                CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:    STATUS: ACTIVE    CURR BAL:     0.00
```

|   | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |  | 10/15/14 | 10/16/14 | 1010C | 100.00CR | 70.42 | 29,099.01 |
| 2 |  | 09/27/14 |  | 2601A | 5.00 | 58.59 | 29,099.01 |
| 3 |  | 09/12/14 | 09/15/14 | 1010C | 100.00CR | 62.50 | 29,099.01 |
| 4 |  | 08/27/14 |  | 2601A | 5.00 | 62.50 | 29,099.01 |
| 5 |  | 08/11/14 | 08/12/14 | 1010C | 100.00CR | 58.59 | 29,099.01 |
| 6 |  | 07/27/14 |  | 2601A | 5.00 | 117.22 | 29,099.01 |
| 7 |  | 06/27/14 |  | 2601A | 5.00 | 180.06 | 29,099.01 |
| 8 |  | 05/12/14 | 05/12/14 | 1010C | 125.00CR | 121.36 | 29,099.01 |
| 9 |  | 04/11/14 | 04/14/14 | 1010C | 125.00CR | 39.26 | 29,102.65 |
| 10 |  | 04/01/14 | 04/01/14 | 7001A | 0.00 | 158.66 | 29,188.39 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;              AES/PA        VTAM NAIC       TSX2D
DATE 09/14/16 18:24:35    LOAN FINANCIAL ACTIVITY     PAGE  3 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN   OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:   STATUS: ACTIVE    CURR BAL:    0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/19/14 | 02/20/14 | 1010C | 125.00CR | 127.70 | 28,709.48 |
| 2 | | 01/17/14 | 01/17/14 | 1010C | 125.00CR | 166.82 | 28,709.48 |
| 3 | | 12/05/13 | 12/06/13 | 1010C | 125.00CR | 151.53 | 28,709.48 |
| 4 | | 10/27/13 | | 2601A | 5.00 | 11.65 | 28,709.48 |
| 5 | | 10/24/13 | 10/24/13 | 1010C | 123.92CR | 104.94 | 28,709.48 |
| 6 | | 09/27/13 | | 2601A | 5.00 | 7.78 | 28,709.48 |
| 7 | | 09/25/13 | 09/26/13 | 1010C | 123.12CR | 112.91 | 28,709.48 |
| 8 | | 08/27/13 | 08/27/13 | 1010C | 120.69CR | 163.52 | 28,709.48 |
| 9 | | 08/27/13 | | 2601A | 5.00 | 0.00 | 28,709.48 |
| 10 | | 07/16/13 | 07/16/13 | 1010C | 120.69CR | 112.91 | 28,709.48 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;                    AES/PA        VTAM NAIC      TSX2D
DATE 09/14/16 18:24:36      LOAN FINANCIAL ACTIVITY       PAGE  4 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                CUST ACCT:  LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE     CURR BAL:     0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|-----|----------|----------|-------|----------|---------|-----------|
| 1  |     | 06/17/13 | 06/17/13 | 1010C | 120.69CR | 54.50   | 28,709.48 |
| 2  |     | 06/03/13 | 06/03/13 | 1010C | 122.40CR | 27.25   | 28,709.48 |
| 3  |     | 05/27/13 |          | 2601A | 5.00     | 151.84  | 28,709.48 |
| 4  |     | 04/18/13 | 04/19/13 | 1010C | 122.40CR | 113.00  | 28,709.48 |
| 5  |     | 03/20/13 | 03/20/13 | 1010C | 122.40CR | 85.82   | 28,709.48 |
| 6  |     | 02/26/13 | 02/27/13 | 1010C | 122.40CR | 101.43  | 28,709.48 |
| 7  |     | 01/31/13 | 02/01/13 | 1010C | 122.40CR | 15.60   | 28,709.48 |
| 8  |     | 01/27/13 |          | 2601A | 5.00     | 105.34  | 28,709.48 |
| 9  |     | 12/31/12 | 12/31/12 | 1010C | 122.40CR | 15.65   | 28,709.48 |
| 10 |     | 12/27/12 |          | 2601A | 5.00     | 140.91  | 28,709.48 |

```
       SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;              AES/PA        VTAM NAIC      TSX2D
DATE 09/14/16 18:24:36    LOAN FINANCIAL ACTIVITY    PAGE  5 OF 10


BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                CUST ACCT:  LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE     CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 | | 11/21/12 | 11/21/12 | 1010C | 122.40CR | 105.68 | 28,709.48 |
| 2 | | 10/25/12 | 10/26/12 | 1010C | 122.40CR | 121.34 | 28,709.48 |
| 3 | | 09/24/12 | 09/25/12 | 1010C | 122.40CR | 164.39 | 28,709.48 |
| 4 | | 08/13/12 | 08/14/12 | 1010C | 122.40CR | 109.59 | 28,709.48 |
| 5 | | 07/16/12 | 07/16/12 | 1010C | 111.99CR | 109.90 | 28,709.48 |
| 6 | | 06/18/12 | 06/18/12 | 1010C | 107.35CR | 122.07 | 28,709.48 |
| 7 | | 05/18/12 | 05/18/12 | 1010C | 107.35CR | 137.82 | 28,709.48 |
| 8 | | 04/13/12 | 04/16/12 | 1010C | 107.35CR | 121.77 | 28,709.48 |
| 9 | | 03/13/12 | 03/13/12 | 1010C | 107.35CR | 113.73 | 28,709.48 |
| 10 | | 02/13/12 | 02/13/12 | 1010C | 107.35CR | 129.42 | 28,709.48 |

```
      SELECTION __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C*****4043;;              AES/PA        VTAM NAIC     TSX2D
   DATE 09/14/16 18:24:37   LOAN FINANCIAL ACTIVITY     PAGE  6 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                CUST ACCT: LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:    0.00
```

|     | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|-----|-----|-----------|--------|------|------|----------|-----------|
|     | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 01/11/12 | 01/11/12 | 1010C | 107.35CR | 117.09 | 28,709.48 |
| 2 | | 12/12/11 | 12/13/11 | 1010C | 107.35CR | 109.01 | 28,709.48 |
| 3 | | 11/14/11 | 11/14/11 | 1010C | 107.35CR | 132.37 | 28,709.48 |
| 4 | | 10/11/11 | 10/12/11 | 1010C | 107.35CR | 113.06 | 28,709.48 |
| 5 | | 09/12/11 | 09/12/11 | 1010C | 107.35CR | 124.84 | 28,709.48 |
| 6 | | 08/11/11 | 08/11/11 | 1010C | 107.35CR | 89.73 | 28,709.48 |
| 7 | | 07/19/11 | 07/19/11 | 1010C | 212.31CR | 310.60 | 28,709.48 |
| 8 | | 05/01/11 | 05/02/11 | 7001A | 0.00 | 238.38 | 28,709.48 |
| 9 | | 03/01/11 | 03/01/11 | 7001A | 0.00 | 467.00 | 28,471.10 |
| 10 | | 10/31/10 | 11/01/10 | 7001A | 0.00 | 574.57 | 28,004.10 |

```
      SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C*****4043;;                    AES/PA        VTAM NAIC      TSX2D
   DATE 09/14/16 18:24:37      LOAN FINANCIAL ACTIVITY      PAGE  7 OF 10

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962IP-NCT
GUARANTOR: TERI                    CUST ACCT: LTI1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064    PD AHEAD:    STATUS: ACTIVE    CURR BAL:     0.00

        REV   EFFECTIVE    POSTED     TRAN       TRAN       INTEREST      PRINCIPAL
        REA      DATE       DATE      TYPE      AMOUNT      ACCRUED        BALANCE
  1            06/01/10   06/01/10   7001A       0.00        554.35      27,429.53
  2            01/01/10   02/26/10   7001A       0.00         73.86      26,875.18
  3            12/12/09   02/26/10   7001A       0.00      1,710.40      26,801.32
  4            10/21/08   10/22/08   1010C     176.40CR      375.01      24,892.31
  5            08/07/08   08/08/08   1010C     256.06CR      156.64      24,892.31
  6            07/07/08   07/07/08   1010C     256.06CR      173.77      24,991.73
  7            06/06/08   06/09/08   1010C     256.06CR      166.88      25,074.02
  8            05/08/08   05/08/08   1010C     256.06CR      178.93      25,163.20
  9            04/07/08   04/08/08   1010C     256.06CR      203.49      25,240.33
 10            03/07/08   03/10/08   1010C     256.06CR      189.54      25,292.90

        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;              AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:37   LOAN FINANCIAL ACTIVITY     PAGE  8 OF 10
```

BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN   OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE   CURR BAL:    0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/08/08 | 02/08/08 | 1010C | 256.06CR | 203.50 | 25,359.42 |
| 2 | | 01/09/08 | 01/09/08 | 1010C | 256.06CR | 211.17 | 25,411.98 |
| 3 | | 12/10/07 | 12/10/07 | 1010C | 256.06CR | 221.26 | 25,456.87 |
| 4 | | 11/09/07 | 11/12/07 | 1010C | 256.06CR | 200.29 | 25,491.67 |
| 5 | | 10/12/07 | 10/15/07 | 1010C | 256.06CR | 247.92 | 25,547.44 |
| 6 | | 09/07/07 | 09/10/07 | 1010C | 256.06CR | 204.87 | 25,555.58 |
| 7 | | 08/09/07 | 08/09/07 | 1010C | 283.65CR | 240.60 | 25,606.77 |
| 8 | | 07/06/07 | 07/09/07 | 1010C | 302.59CR | 205.99 | 25,649.82 |
| 9 | | 06/07/07 | 06/08/07 | 1010C | 302.59CR | 220.89 | 25,746.42 |
| 10 | | 05/07/07 | 05/07/07 | 1010C | 302.59CR | 221.59 | 25,828.12 |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C*****4043;;              AES/PA      VTAM NAIC      TSX2D
DATE 09/14/16 18:24:38    LOAN FINANCIAL ACTIVITY    PAGE  9 OF 10


BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT: LT11  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

|     | REV | EFFECTIVE | POSTED   | TRAN  | TRAN        | INTEREST | PRINCIPAL |
|-----|-----|-----------|----------|-------|-------------|----------|-----------|
|     | REA | DATE      | DATE     | TYPE  | AMOUNT      | ACCRUED  | BALANCE   |
| 1   |     | 04/06/07  | 04/09/07 | 1010C | 302.59CR    | 72.15    | 25,909.12 |
| 2   |     | 03/27/07  | 03/27/07 | 1010C | 50.00CR     | 43.32    | 26,139.56 |
| 3   |     | 03/21/07  | 03/21/07 | 1010C | 252.59CR    | 195.38   | 26,146.24 |
| 4   |     | 02/22/07  | 02/23/07 | 1010C | 252.59CR    | 224.54   | 26,203.45 |
| 5   |     | 01/22/07  | 01/22/07 | 1010C | 252.59CR    | 253.72   | 26,228.95 |
| 6   |     | 12/18/06  | 12/19/06 | 1010C | 252.59CR    | 79.83    | 26,228.95 |
| 7   |     | 12/07/06  | 12/07/06 | 0390A | 26,403.13   | 0.00     | 26,228.95 |
| 8   |     | 12/07/06  | 12/07/06 | 0395A | 26,403.13CR | 174.18   | 0.00      |
| 9   |     | 11/13/06  | 11/14/06 | 1010C | 252.59CR    | 181.93   | 26,228.95 |
| 10  |     | 10/19/06  | 10/19/06 | 1010C | 252.59CR    | 222.36   | 26,299.61 |

```
      SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C*****4043;;               AES/PA        VTAM NAIC      TSX2D
   DATE 09/14/16 18:24:38    LOAN FINANCIAL ACTIVITY      PAGE 10 OF 10


BORROWER SSN: ***-**-4043  NAME: LIZARRAGA-DAVIS, OSKAR A
1ST DISB: 06/26/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962IP-NCT
GUARANTOR: TERI                  CUST ACCT: LTL1  ORIG BAL: 26,315.79
BOND ISSUE: NCT20064   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00


     REV   EFFECTIVE    POSTED    TRAN       TRAN      INTEREST    PRINCIPAL
     REA    DATE        DATE      TYPE      AMOUNT     ACCRUED     BALANCE
 1          09/18/06   09/18/06  1010C      189.59CR    189.60    26,315.79
 2          08/22/06   08/23/06  1010C      141.74CR     84.26    26,315.79
 3          08/10/06   08/11/06  1010C      242.82CR    314.34    26,315.79
 4          06/26/06   06/26/06  0101A    26,315.79      0.00     26,315.79
 5
 6
 7
 8
 9
10


     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
  ITS2X*****4043;              AES/PA       VTAM NAIC      TSX2Y
  DATE 09/14/16 18:24:46 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  2

  BORROWER SSN ***-**-4043   NAME OSKAR A LIZARRAGA-DAVIS

          SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
  SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM     OWNER
   1  I   RP      100.00     3    156   02/11/15 06/26/06 ALPLN    NCT
   2  I   L       245.94     2    163   07/11/14 06/26/06 ALPLN    NCT
   3  I   RP      125.00     3    166   04/11/14 06/26/06 ALPLN    NCT
   4  I   L       234.92     2    173   09/11/13 06/26/06 ALPLN    NCT
   5  I   TG      233.97     3    176   06/11/13 06/26/06 ALPLN    NCT
   6  I   TG      122.40     4    187   07/11/12 06/26/06 ALPLN    NCT
   7  I   TG      107.35     4    198   08/11/11 06/26/06 ALPLN    NCT
   8  I   L       212.31     2    200   06/11/11 06/26/06 ALPLN    NCT
   9  I   L       209.82     2    202   04/11/11 06/26/06 ALPLN    NCT
  10  I   L       203.69     2    206   12/11/10 06/26/06 ALPLN    NCT
  11  I   L       195.62     2    211   07/11/10 06/26/06 ALPLN    NCT
  12  I   L       189.61     2    216   02/11/10 06/26/06 ALPLN    NCT

  SELECTION  __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
 ITS2X*****4043;                 AES/PA        VTAM NAIC      TSX2Y
DATE 09/14/16 18:24:47 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  2

BORROWER SSN ***-**-4043    NAME OSKAR A LIZARRAGA-DAVIS

        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE     PGM     OWNER
 1  I   L       213.73     2     216   09/22/08 06/26/06 ALPLN    NCT
 2  I   L       256.06     2     228   09/22/07 06/26/06 ALPLN    NCT
 3  I   L       252.59     2     239   10/22/06 06/26/06 ALPLN    NCT
 4  I   L       242.82     2     239   08/11/06 06/26/06 ALPLN    NCT
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************
 0  ***********************************************************************

 SELECTION  __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

# Exhibit 15

Exhibit 15

## Loan Payment History Report
### Date: 2017-03-10

| Account Number: | ████4043-001-PHEA | | |
|---|---|---|---|
| Social Security Number: | ████4043 | Product: | |
| Name: | LIZARRAGA-DAVIS, OSKAR A | Officer Code: | 777064 |
| Birth Date: | 1983-██ | School: | UNIVERSITY OF CALIFORNIA - DAVIS |
| Address 1: | ████████ | Program Year: | 200506 |
| Address 2: | | | |
| City: | HOLLISTER | Variable Rate Code: | FU QUARTERLY LIBOR |
| State: | CA | Interest Rate: | 5.31% |
| Zip Code: | 95023-0000 | Last Payment Date: | 2015-02-13 |
| | | Last Payment Amount: | $100.00 |
| | | Payment Due Date: | |
| Contract Date: | 2006-06-26 | Last Interest Date: | 2017-03-10 |
| Date Assigned: | 2017-03-07 | Accrued Interest: | $3,046.14 |
| Charge Off Date: | 2015-03-02 | Recovered Interest: | $0.00 |
| Charge Off Amount: | 29689.05 | Net Interest: | $3,046.14 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $29,689.05 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-06-26 | Net Costs: | $0.00 |
| Disbursement Amount: | $26,315.79 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2015-03-31 | 00:01 | 82 | $29,689.05 @ 4.910 / 03/05/2015 - 03/31/2015 | $119.82 |
| System | 2015-04-02 | 00:01 | 82 | $29,689.05 @ 4.910 / 03/31/2015 - 04/02/2015 | $7.99 |
| System | 2015-04-30 | 00:01 | 82 | $29,689.05 @ 4.920 / 04/02/2015 - 04/30/2015 | $112.05 |
| System | 2015-05-31 | 00:01 | 82 | $29,689.05 @ 4.920 / 04/30/2015 - 05/31/2015 | $124.06 |
| System | 2015-06-30 | 00:01 | 82 | $29,689.05 @ 4.920 / 05/31/2015 - 06/30/2015 | $120.06 |
| System | 2015-07-01 | 00:01 | 82 | $29,689.05 @ 4.920 / 06/30/2015 - 07/01/2015 | $4.00 |
| System | 2015-07-31 | 00:01 | 82 | $29,689.05 @ 4.930 / 07/01/2015 - 07/31/2015 | $120.30 |
| System | 2015-08-31 | 00:01 | 82 | $29,689.05 @ 4.930 / 07/31/2015 - 08/31/2015 | $124.31 |
| System | 2015-09-07 | 00:01 | 82 | $29,689.05 @ 4.930 / 08/31/2015 - 09/07/2015 | $28.07 |
| System | 2015-09-30 | 00:01 | 82 | $29,689.05 @ 4.930 / 09/07/2015 - 09/30/2015 | $92.23 |
| System | 2015-10-01 | 00:01 | 82 | $29,689.05 @ 4.930 / 09/30/2015 - 10/01/2015 | $4.01 |
| System | 2015-11-04 | 00:01 | 82 | $29,689.05 @ 4.940 / 10/01/2015 - 11/04/2015 | $136.62 |
| System | 2015-12-31 | 00:01 | 82 | $29,689.05 @ 4.940 / 11/04/2015 - 12/31/2015 | $229.04 |
| System | 2016-01-01 | 00:01 | 82 | $29,689.05 @ 4.940 / 12/31/2015 - 01/01/2016 | $4.01 |
| System | 2016-01-31 | 00:01 | 82 | $29,689.05 @ 4.960 / 01/01/2016 - 01/31/2016 | $120.70 |
| System | 2016-02-29 | 00:01 | 82 | $29,689.05 @ 4.960 / 01/31/2016 - 02/29/2016 | $116.68 |
| System | 2016-03-03 | 00:01 | 82 | $29,689.05 @ 4.960 / 02/29/2016 - 03/03/2016 | $12.07 |

| System | 2016-03-31 | 00:01 | 82 | $29,689.05 @ 4.960 / 03/03/2016 - 03/31/2016 | $112.66 |
|--------|------------|-------|----|----------------------------------------------|---------|
| System | 2016-04-01 | 00:01 | 82 | $29,689.05 @ 4.960 / 03/31/2016 - 04/01/2016 | $4.02 |
| System | 2016-04-30 | 00:01 | 82 | $29,689.05 @ 5.180 / 04/01/2016 - 04/30/2016 | $121.85 |
| System | 2016-05-31 | 00:01 | 82 | $29,689.05 @ 5.180 / 04/30/2016 - 05/31/2016 | $130.26 |
| System | 2016-06-30 | 00:01 | 82 | $29,689.05 @ 5.180 / 05/31/2016 - 06/30/2016 | $126.06 |
| System | 2016-07-01 | 00:01 | 82 | $29,689.05 @ 5.180 / 06/30/2016 - 07/01/2016 | $4.20 |
| System | 2016-08-01 | 00:01 | 82 | $29,689.05 @ 5.220 / 07/01/2016 - 08/01/2016 | $131.26 |
| System | 2016-08-31 | 00:01 | 82 | $29,689.05 @ 5.220 / 08/01/2016 - 08/31/2016 | $127.03 |
| System | 2016-09-06 | 00:01 | 82 | $29,689.05 @ 5.220 / 08/31/2016 - 09/06/2016 | $25.41 |
| System | 2016-09-30 | 00:01 | 82 | $29,689.05 @ 5.220 / 09/06/2016 - 09/30/2016 | $101.62 |
| System | 2016-10-01 | 00:01 | 82 | $29,689.05 @ 5.220 / 09/30/2016 - 10/01/2016 | $4.23 |
| System | 2016-10-05 | 00:00 | 44 | Interest Adjustment | $-7.99 |
| System | 2016-10-05 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/01/2016 - 10/05/2016 | $17.03 |
| System | 2016-10-31 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/05/2016 - 10/31/2016 | $110.73 |
| System | 2016-11-30 | 00:01 | 82 | $29,689.05 @ 5.250 / 10/31/2016 - 11/30/2016 | $127.76 |
| System | 2016-12-31 | 00:01 | 82 | $29,689.05 @ 5.250 / 11/30/2016 - 12/31/2016 | $132.02 |
| System | 2017-01-01 | 00:01 | 82 | $29,689.05 @ 5.250 / 12/31/2016 - 01/01/2017 | $4.27 |
| System | 2017-01-31 | 00:01 | 82 | $29,689.05 @ 5.310 / 01/01/2017 - 01/31/2017 | $129.57 |
| System | 2017-02-28 | 00:01 | 82 | $29,689.05 @ 5.310 / 01/31/2017 - 02/28/2017 | $120.94 |
| System | 2017-03-07 | 00:01 | 82 | $29,689.05 @ 5.310 / 02/28/2017 - 03/07/2017 | $30.23 |
| System | 2017-03-10 | 00:01 | 82 | $29,689.05 @ 5.310 / 03/07/2017 - 03/10/2017 | $12.96 |