**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.,<br><br>Defendant. | Case No. 18-cv-04081-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 33] |

Plaintiff Oskar Lizarraga-Davis filed this suit under the Fair Debt Collection Practices Act ("FDCPA") to challenge collection efforts with respect to his defaulted $25,000 student loan. The loan originated with GMAC Bank, but documents in the record indicate that it was acquired by National Collegiate Student Loan Trust 2006-4 ("the Trust" or "NCSLT 2006-4"). The Trust, through the law firm Patenaude & Felix ("P&F"), sent Plaintiff collection letters regarding the loan debt and sued Plaintiff in state court. Plaintiff claims that P&F's conduct was directed by the Trust's loan servicer, Defendant Transworld Systems, Inc. ("Defendant" or "TSI"). Plaintiff sues TSI (but not the Trust or P&F), asserting a single claim for violation of the FDCPA.

Defendant TSI moves for summary judgment. The motion was filed only six months after the lawsuit was commenced and one day after Plaintiff served his first discovery requests. The deadline for hearing dispositive motions is not until May 5, 2022, and trial is set for September 12, 2022. Plaintiff argues that TSI's motion is premature, and he requests that if the Court is inclined to grant the motion, it first give him leave to take discovery under Federal Rule of Civil Procedure 56(d).

At the hearing, the Court suggested that given the procedural posture of the case, it might be appropriate to terminate the motion and permit Plaintiff to take discovery. Defendant's counsel

urged the Court to decide the motion, arguing that even if the Court were to draw all reasonable inferences for Plaintiff and assume for purposes of the motion that Defendant directed P&F's conduct, Defendant is entitled to summary judgment because that conduct did not violate the FDCPA as a matter of law.  Specifically, Defendant argues that because the Trust owns Plaintiff's student loan debt, the collection efforts on behalf of the Trust were entirely lawful.  The Court finds that Defendant has not satisfied its initial burden of establishing the Trust's ownership of Plaintiff's loan debt, because Plaintiff has raised meritorious evidentiary objections to the documentation of ownership submitted by Defendant, which are SUSTAINED.  Accordingly, Defendant's motion for summary judgment is DENIED.  Plaintiff's request for relief under Rule 56(d) is TERMINATED AS MOOT.  The Court's rulings are without prejudice to Defendant's filing of a limited renewed motion for summary judgment, if appropriate, once the record has been more fully developed.  The scope of such motion is discussed below.

**I.      BACKGROUND**

In June 2006, Plaintiff obtained a $25,000 "Bank Undergraduate Loan" from GMAC Bank for the purpose of attending the University of California, Davis.  Luke Decl. ¶¶ 13-14 and Exhs. 1-2, ECF 45.  Documents in the record indicate that the Trust acquired the loan in December 2006.  Luke Decl. ¶¶ 15-16 and Exhs. 3-4.  Between 2008 and 2011, Plaintiff submitted seven separate requests for forbearance/deferment to the Trust's then-loan servicer, American Education Services ("AES").  Luke Decl. ¶ 17 and Exhs. 5-12.  Plaintiff thereafter made some payments on the student loan, with the last payment posting on February 13, 2015.  Luke Decl. ¶¶ 19-20 and Exhs. 14-15.  An unpaid balance remains due and owing in the amount of $32,726.55.  Luke Decl. ¶ 21.

In early 2017, P&F sent Plaintiff a collection letter stating that he had an outstanding balance of more than $30,000 for a student loan debt owed to the Trust.  Pl.'s Decl. ¶ 2, ECF 41-1.  In response to Plaintiff's request for verification of the debt, P&F sent Plaintiff a letter dated April 21, 2017 along with copies of the Loan Request/Credit Agreement between Plaintiff and GMAC, bearing Plaintiff's signature dated June 10, 2006; the Note Disclosure Statement, identifying the interest rate and finance charge and indicating that the loan proceeds were disbursed on June 26, 2006; and the 2006-4 Pool Supplement, documenting the sale of the loan from GMAC to The

National Collegiate Funding LLC and stating that The National Collegiate Funding LLC in turn would sell the loan to the Trust, NCSLT 2006-4. Pl.'s Decl. ¶ 5 and Exh. 1. Plaintiff claims that those "documents did little to allow me to connect the dots between an old student loan and NCSLT 2006-4." Pl.'s Decl. ¶ 6. He requested "proof of ownership and payment history" on his loan account. Pl.'s Decl. ¶ 7 and Exh. 2. P&F responded by letter dated May 19, 2017, enclosing the same documents sent previously. Pl.'s Decl. ¶ 8 and Exh. 3. Plaintiff sent P&F a letter by certified mail, again requesting "proof of ownership and payment history for this loan/account." Pl.'s Decl. ¶ 9 and Exh. 4. The certified mail receipt shows delivery of Plaintiff's letter on June 5, 2017, but P&F did not respond. Pl.'s Decl. ¶ 10 and Exh. 4.

Meanwhile, on May 6, 2017, P&F filed suit against Plaintiff on behalf of the Trust in the San Benito County Superior Court, asserting a claim for breach of contract arising from default on the student loan. Pl.'s Decl. ¶ 11 and Exh. 5. Plaintiff was served with process on July 16, 2017. Pl.'s Decl. ¶ 11 and Exh. 5. P&F send Plaintiff a letter dated July 18, 2017, stating that was authorized to offer a settlement regarding Plaintiff's outstanding loan balance and that it could "discount a considerable portion" of the loan obligation. Pl.'s Decl. ¶ 12 and Exh. 6. Instead of settling, Plaintiff litigated the state court action, proceeding *pro se* at first and then retaining counsel. Pl.'s Decl. ¶¶ 13-18. In May 2018, shortly before trial was to begin, Plaintiff discovered that the Trust had voluntarily dismissed the state court action. Pl.'s Decl. ¶ 20 and Exh. 9. Plaintiff was dissatisfied with that resolution. Pl.'s Decl. ¶ 21. The state court lawsuit cost him time and money, and he felt anxious and embarrassed. Pl.'s Decl. ¶¶ 21-26. He stated, "I felt like NCSLT was trying to strong arm me into either settling with them or paying money to fight them. They just put me in a lose-lose situation." Pl.'s Decl. ¶ 27.

Plaintiff, represented by the same counsel he retained in the state court action, filed the present FDCPA suit on July 9, 2018, and the operative FAC on October 8, 2018. *See* Compl., ECF 1; FAC, ECF 23. The FAC includes a substantial background section on Defendant TSI, drawn in part from a September 2017 Consent Order that resolved an administrative action the Consumer Financial Protection Bureau ("CFPB") had brought against TSI. *See* FAC ¶¶ 7-17;

Def.'s RJN Exh. 1 (Consent Order), ECF 36.[1]  The Consent Order was issued with TSI's consent but without TSI's admission or denial of the CFPB's findings.  *See* Def.'s RJN Exh. 1 (Consent Order), ECF 36.  The Consent Order stated the CFPB's findings that:  TSI is the agent and service provider for fifteen Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs"); TSI engages law firms to collect on defaulted private student loans; TSI sometimes executes affidavits falsely claiming personal knowledge of the loan account records and consumer debts; and the law firms retained by TSI file hundreds of debt collection lawsuits without the documentation necessary to prove the existence and ownership of the loan debts.  Def.'s RJN Exh. 1 (Consent Order), ECF 36.  The Consent Order requires TSI to identify all collection lawsuits filed between November 1, 2014 and the date of the Consent Order's issuance, and it proscribes certain conduct on the part of TSI going forward.  Def.'s RNJ Exh. 1 (Consent Order) at ¶ 45.

Plaintiff does not assert that his loan falls within the scope of the Consent Order.  The Consent Order appears to be cited as background and as a basis for Plaintiff's "information and belief" allegation that TSI lacks documentation sufficient to prove the Trust's ownership of the loan debt.  FAC ¶ 33.  Plaintiff alleges that "TSI's conduct toward Mr. Lizarraga-Davis parallels its litigation activity that the CFPB has found to be unfair and deceptive to consumers."  FAC ¶ 35.  Plaintiff claims that TSI "has falsely represented the character, amount, or legal status of a debt" in violation of 15 U.S.C. § 1692e(2)(a); "has threatened to take any action that cannot legally be taken or that is not intended to be taken," in violation of 15 U.S.C. § 1692e(5); and "has used a false or deceptive means to collect or attempt to collect a debt," in violation of 15 U.S.C. § 1692e(10).  FAC ¶ 48.  While the factual bases for those alleged violations are not stated in the

---

[1] The FAC cites the Consent Order extensively, indicating that it is attached as an exhibit.  *See* FAC ¶ 12.  The Consent Order is not attached to the FAC, presumably due to a clerical error.  However, Defendant has submitted a copy of the Consent Order attached to its request for judicial notice.  *See* Def.'s RJN Exh. 1 (Consent Order), ECF 36.  The Court may take judicial notice of the Consent Order or, alternatively, may consider it under the incorporation by reference doctrine.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court may take judicial notice of matters of public record); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint).

FDCPA claim itself, it appears from the FAC as a whole that the alleged violations are grounded in Plaintiff's assertion that TSI has attempted to collect a debt over which its principal, the Trust, cannot establish ownership.  Plaintiff has not suggested that the collection letters or state court lawsuit misrepresented any other aspect of the loan debt, such as the loan amount or interest rate.

On January 17, 2019, approximately six months after the action was filed, Plaintiff served his first discovery requests on Defendant TSI.  Heath Decl. ¶ 3, ECF 41-2.  Defendant filed the present motion for summary judgment the next day, on January 18, 2019.  Heath Decl. ¶ 4.  Plaintiff did not receive discovery responses prior to filing opposition to the summary judgment motion.  Heath Decl. ¶ 7.  In the opposition, Plaintiff argues that Defendant has not established its entitlement to summary judgment, but he requests that if the Court finds otherwise, he be permitted to take discovery under Federal Rule of Civil Procedure 56(d).

## II.     LEGAL STANDARD

### A.     Summary Judgment

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*.  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*.  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

### B.     Request for Continuance of Summary Judgment Motion

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

1  present facts essential to justify its opposition, the court may: (1) defer considering the motion or
2  deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any
3  other appropriate order." Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to
4  Rule 56(d) must identify by affidavit the specific facts that further discovery would reveal, and
5  explain why those facts would preclude summary judgment." *SEC v. Stein*, 906 F.3d 823, 833
6  (9th Cir. 2018) (internal quotation marks and citation omitted). "The facts sought must be
7  essential to the party's opposition to summary judgment, and it must be likely that those facts will
8  be discovered during further discovery." *Id.* (internal quotation marks and citations omitted).

### III. DISCUSSION

"To establish a claim under the FDCPA, a plaintiff must prove the following elements: "(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips & Cohen Assocs., Ltd.*, No. 5:14-CV-05539-EJD, 2016 WL 3566981, at *3 (N.D. Cal. June 30, 2016).

Plaintiff argues that Defendant has not established these elements, and in the alternative requests leave to take discovery necessary to oppose Defendant's motion. Plaintiff has submitted a declaration of counsel stating that the motion for summary judgment was filed the day after Plaintiff served his initial discovery requests, and no discovery had been received prior to the filing of Plaintiff's opposition to the motion. Heath Decl. ¶¶ 3-7, ECF 41-2. Counsel identifies the following facts necessary to opposing summary judgment:

> For example, in order to evaluate Defendant's status as a debt collector, Plaintiff needs more documentation on the payment history, the default date, and the date Defendant obtained servicing rights to the loan. In order to flesh out the merits of the FDCPA claim, Plaintiff needs more information on a number of matters, including but not limited to: (a) what documentation Defendant has, and has ever received, concerning this debt, and when; (b) what Defendant's procedures are in reviewing that documentation; (c) any changes in those procedures since the CFPB Consent Order; (d) the extent of Defendant's review of this specific account in response to the Consent Order; (e) any policies and procedures to determine what accounts to send to litigation, as well as any guidelines to determine when to cease litigation; (f) Defendant's intent to follow-through with contested litigation; and (g) statistics of Defendant's litigation tactics.

Heath Decl. ¶ 8. Plaintiff's request for leave to take discovery is addressed in the context of the substantive discussion of the elements of the FDCPA claim.

### A. Collection Activity Arising from a Consumer Debt

Plaintiff clearly has been the subject of collection activity. The letters from P&F advise, "This is an attempt to collect a debt, and any information obtained will be used for that purpose." Pl.'s Decl. Exhs. 1, 3, 6, ECF 41-1. The state court action sought recovery of the outstanding student loan debt. Pl.'s Decl. Exh. 5. The student loan is a consumer debt within the meaning of the FDCPA. *See Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-CV-1704-MC, 2013 WL 3995004, at *3 (D. Or. Aug. 1, 2013) ("[P]laintiff's student loan is 'debt' subject to the FDCPA."). Consequently, the first element is met. Defendant does not argue otherwise.

### B. Debt Collector

Defendant argues that it does not qualify as a debt collector under the FDCPA because the Trust acquired Plaintiff's student loan prior to default and Defendant is merely the loan servicer of the Trust. Defendant relies on *Harmon v. GE Money Corp.*, No. CVF10-0499 LJO GSA, 2010 WL 2219345, at *6 (E.D. Cal. June 1, 2010), for the proposition that an entity that acquires a debt prior to default does not qualify as a debt collector under the FDCPA. *Harmon* addressed whether the defendant *lender* was a debt collector under the FDCPA. *Id*. In discussing that issue, the district court stated that "[a] 'debt collector' does not include a person who collects or attempts to collect a debt 'to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id*. (quoting 15 U.S.C. § 1962a(6)(F)). As Plaintiff points out, *Harmon* does not address whether a *servicer* qualifies as a debt collector if the loan was in default when servicing began. *Harmon* therefore is not on all fours with the present case.

Numerous courts have held that a servicer may qualify as a debt collector if it began servicing the loan after default. *See, e.g, Hoffman v. Transworld Sys. Inc.*, No. C18-1132-JCC, 2018 WL 5734641, at *7 (W.D. Wash. Nov. 2, 2018) (recognizing that loan servicers who begin servicing a loan after default may be debt collectors under the FDCPA); *Myrette-Crosley v. Ditech Home Loans*, No. 3:17-CV-05528-JD, 2018 WL 3159727, at *2 (N.D. Cal. June 28, 2018) ("While the Ninth Circuit has not spoken directly on the issue, district courts in this circuit and

7

other courts of appeal agree that a mortgage loan servicer is a debt collector under the FDCPA if it acquires servicing for a loan after the loan is in default."); *Johnson v. Ocwen Loan Servicing, LLC*, No. EDCV 17-01373 JGB (SPx), 2017 WL 10619758, at *4 (C.D. Cal. Oct. 10, 2017) ("If the loan servicer acquired the loan after it was in default, it constitutes a debt collector under the FDCPA."). Defendant does not state in its briefing when it began servicing Plaintiff's loan, and that date is not clear from the record. At the hearing, Defendant's counsel stated that Defendant was assigned the loan account after Plaintiff defaulted and the loan had been "charged off" in March 2015. Accordingly, Defendant has not carried its burden on summary judgment of establishing that it does not qualify as a debt collector under the FDCPA with respect to Plaintiff's loan. Defendant's motion is DENIED on this issue.

### C.     Prohibited Act under the FDCPA

Defendant contends that Plaintiff has failed to identify any collection activity by Defendant whatsoever, let alone collection activity that violates the FDCPA. Defendant first argues that Plaintiff has not identified any communications between Defendant TSI and Plaintiff. While that is true, Plaintiff's theory is that TSI directed P&F's collection efforts. TSI has not submitted a declaration or other evidence expressly denying that it directed P&F's collection efforts. TSI's failure to do so appears glaring against the backdrop of the Consent Order reflecting the CFPB's findings that TSI has directed other law firms in widescale collection activities with respect to student loan debts. *See* Def.'s RJN Exh. 1 (Consent Order), ECF 36.

Defendant TSI asserts that even if the Court draws the inference that it directed P&F's conduct, Plaintiff's claim is based solely on P&F's litigation related conduct, which TSI argues cannot form the basis of an FDCPA claim. As an initial matter, the Court does not read the FAC or Plaintiff's arguments on this motion to limit Plaintiff's FDCPA claim to P&F's litigation related conduct. The FAC describes P&F's pre-litigation correspondence with Plaintiff in detail, and that correspondence is attached to Plaintiff's declaration submitted in opposition to Defendant's summary judgment motion. *See* FAC ¶¶ 18-29, ECF 23; Pl.'s Decl. ¶¶ 2-12 and Exhs. 1, 3, 6, ECF 41-1. In the Court's view, the FDCPA claim encompasses P&F's pre-litigation correspondence, the filing of the state court action, and the letter offering to settle the case.

Moreover, TSI's blanket assertion that P&F's litigation related conduct cannot form the basis of an FDCPA claim is unsupported by the law. The Supreme Court has held expressly that the FDCPA "applies to the litigating activities of lawyers." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Relying on *Heintz*, the Ninth Circuit has held that "the FDCPA covers both the filing of complaints . . . and the service of settlement letters during the course of litigation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950-51 (9th Cir. 2011) (internal citations omitted). Defendant relies on two cases from outside the Ninth Circuit, *St. John v. Cach, LLC*, 822 F.3d 388 (7th Cir. 2016), and *Delisi v. Midland Funding, LLC*, No. 4:14CV2125 RWS, 2015 WL 4393901 (E.D. Mo. July 16, 2015). Neither are controlling, and *Delisi* actually holds that "the FDCPA's prohibitions apply to collection efforts through litigation," and that "the determination of whether a plaintiff states a claim under the FDCPA based on litigation conduct is best decided on a case-by-case basis." *Delisi*, 2015 WL 4393901, at *4. The *Delisi* court concluded that "the filing of a debt collection lawsuit, without the immediate means of proving the existence of the debt, the amount of the debt, or that the debt collector owned the debt" does not violate the FDCPA, but that "the filing of a debt collection lawsuit, without sufficient evidence at the time of filing, and without the intent to investigate or fully prosecute the case, may constitute a false or misleading representation in violation of the FDCPA." *Id*. at *6. Because there are circumstances in which litigation related conduct may give rise to liability under the FDCPA, TSI's categorical rejection of the state law action as a basis for FDCPA liability is not persuasive.

Finally, TSI asserts that, as a matter of law, the FDCPA was not violated by P&F's collection efforts on behalf of the Trust to recover on a student loan debt owned by the Trust. "In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (internal quotation marks and citation omitted). "The analysis is objective and takes into account whether the least sophisticated debtor would likely be misled by a communication." *Id*. (internal quotation marks and citation omitted). The Court agrees that if indeed the Trust owns Plaintiff's student loan debt and has adequate documentation to prove it, the Court could determine as a matter of law that the collection efforts at issue did not violate the FDCPA. Under those circumstances, P&F's

collection efforts would not constitute a false representation of the character, amount, or legal status of the debt, *see* 15 U.S.C. § 1692e(2)(a); would not constitute a threat of action that cannot legally be taken or is not intended to be taken, *see* 15 U.S.C. § 1692e(5); and would not constitute false or deceptive means to collect or attempt to collect a debt, *see* 15 U.S.C. § 1692e(10).

While Defendant has submitted evidence that the Trust acquired Plaintiff's student loan, Plaintiff objects to that evidence and seeks leave to take discovery regarding Defendant's documentation. Specifically, Plaintiff argues that the original loan documents submitted at Exhibits 1 and 2 to the Luke Declaration, and the 2006-4 Pool Supplement documenting transfer of Plaintiff's loan, submitted as Exhibit 3 to the Luke Declaration, are incomplete and insufficiently authenticated. *See* Pl.'s Objections to Evidence, ECF 50. Plaintiff asserts that the documents are excerpts of larger documents which have not been made available to Plaintiff in their entirety. *See id.* Plaintiff argues that the documents therefore violate the rule of completeness set forth in Federal Rule of Evidence 106, which provides that: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The Court agrees that it is unclear whether the record contains all documents relevant to the loan and its transfer to the Trust, and that Plaintiff is entitled to see the documents in their entirety, subject to redactions based on an applicable privilege or the like. Plaintiff's evidentiary objections to the loan documents submitted by Defendant is SUSTAINED.

The Court DENIES Defendant's motion for summary judgment on the grounds set forth above. Because it concludes that Defendant has not carried its burden on summary judgment based on the current record, the Court TERMINATES AS MOOT Plaintiff's motion for discovery under Rule 56(d). Discovery is open, and Plaintiff's counsel indicated at the hearing that it is proceeding.

As reflected in its Standing Order Re Civil Cases, the Court normally permits only one summary judgment motion per side. However, the Court will permit Defendant to file a limited renewed motion for summary judgment, if appropriate once the record has been more fully

developed, based on the theory that the collection activity on behalf of the Trust was lawful because the Trust owns Plaintiff's student loan debt and has adequate documentation to prove ownership. Such motion shall be limited to 5 pages, with opposition limited to 5 pages, and reply limited to 3 pages. Defendant may not file any other motion for summary judgment other than the limited motion authorized herein, and such limited motion may not be used to relitigate issues other than ownership and documentation of Plaintiff's student loan debt.

## IV. ORDER

(1) Defendant's motion for summary judgment is DENIED; and

(2) Defendant is granted leave to file a limited renewed motion for summary judgment based on ownership and documentation of Plaintiff's student loan debt, if appropriate, once Plaintiff has been afforded access to the loan documents in their entirety and the record has been more fully developed. Any such motion is limited to 5 pages, any opposition is limited to 5 pages, and any reply is limited to 3 pages.

Dated: August 29, 2019

_____
BETH LABSON FREEMAN
United States District Judge