**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| OSKAR LIZARRAGA-DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> TRANSWORLD SYSTEMS INC., <br><br> Defendant. | Case No. 18-cv-04081-BLF <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY; AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Re: ECF 62, 63] |

Plaintiff Oskar Lizarraga-Davis ("Lizarraga-Davis") filed this suit under the Fair Debt Collection Practices Act to challenge debt collection activities of Defendant Transworld Systems, Inc. ("Transworld") with respect to his defaulted student loan. Transworld has filed a motion for summary judgment, and Lizarraga-Davis has filed a cross-motion for partial summary judgment on the issue of liability. For the reasons discussed below, Lizarraga-Davis's motion is GRANTED and Transworld's motion is DENIED.

**I.  BACKGROUND**

On June 10, 2006, Lizarraga-Davis executed a Loan Request/Credit Agreement, seeking a $25,000 loan from GMAC Bank to fund his undergraduate enrollment at the University of California, Davis. *See* Luke Decl. ¶¶ 11-14 & Exh. 2 (Loan Request/Credit Agreement), ECF 62-1. At that time, GMAC Bank participated in a structured loan program ("Loan Program"), under which GMAC Bank originated and then sold "pools" of student loans to "purchaser trusts" formed for the purpose of buying the student loans. *See* Luke Decl. ¶ 15 & Exh. 4 (Note Purchase Agreement). A description of the Loan Program will aid in understanding the issues presented by the parties' cross-motions.

*Loan Program*

On May 30, 2003, GMAC Bank entered into a Note Purchase Agreement with The First Marblehead Corporation ("FMC"). *See* Luke Decl. Exh. 4 (Note Purchase Agreement). GMAC Bank agreed to sell, from time to time, pools of GMAC Bank-originated student loans to FMC or to a designated purchaser trust. *See id.* Each sale of a loan pool is made pursuant to a "Pool Supplement" to the Note Purchase Agreement. *See id.* ¶ 2.03.

FMC has created many purchaser trusts to buy student loans under this Loan Program. *See* Luke Dep. 23:2-7, ECF 63-2; Luke Decl. ¶ 2 & n.1, ECF 62-1. Those purchaser trusts include a series of separate, functionally identical "National Collegiate Student Loan Trusts" ("NCSLTs"): National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2. National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, and National Collegiate Student Loan Trust 2007-4. *See* Luke Decl. ¶ 2 & n.1.

The name of each NCSLT reflects the year the trust was created. *See* Luke Dep. 29:1-4, ECF 63-2. For example, National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4"), is the fourth NCSLT that was created in 2006. *See id.* Defendant Transworld is the custodian of records for the NCSLTs listed above. *See* Luke Decl. ¶ 2 & n.1, ECF 62-1. In the event any student loan owned by one of those NCSLTs goes into default, Transworld also becomes the loan's post-default servicer. *See id.*

Upon default of a student loan owned by one of the NCSLTs listed above, Transworld obtains the loan file through a secure file transfer. *See* Luke Dep. 32:20-33:3. The electronic file contains the loan's account number, the consumer's name and address, the loan balance, and similar information. *See id.* 33:3-6. Transworld also receives the credit agreement, the signature page, and the note disclosure statement. *See id.* 33:16-23. Transworld sets up an account for the

2

1   defaulted student loan in its system and attempts to collect on the loan by placing the account with
2   a collection agency and/or a law firm. *See id.* 47:5-52:25. If an account is placed with a law firm
3   for collection, the law firm may take a number of actions, including sending a collection letter,
4   calling the consumer, and filing a civil suit. *See id.* 53:17-54:9. In the event the law firm recovers
5   on a defaulted loan, the law firm transmits the recovered monies to Transworld, which uses the
6   monies to pay the law firm's fee and its own fee, and then transmits the remaining monies to the
7   NCSLT that owns the student loan. *See id.* 55:21-56:11.

*Lizarraga-Davis's Student Loan*

Transworld asserts that Lizarraga-Davis's student loan was approved pursuant to the Loan Program described above. *See* Luke Decl. ¶ 15, ECF 62-1. The $25,000 in loan proceeds were disbursed to Lizarraga-Davis on June 26, 2006. *See id.* ¶ 14. None of the loan proceeds were returned or refunded. *See id.* Transworld asserts that in the regular course of the Loan Program, Lizarraga-Davis's student loan was included in a loan pool that GMAC Bank sold to NCSLT 2006-4 on December 7, 2006. *See id.* ¶ 16. While Lizarraga-Davis does not dispute that GMAC Bank sold a loan pool to NCSLT 2006-4, he disputes the existence of documentation showing that his student loan was included in that sale.

The sale of the subject loan pool involved a two-part transaction. GMAC Bank sold the loan pool to an intermediary, The National Collegiate Funding LLC, through a "2006-4 Pool Supplement" to the Note Purchase Agreement between GMAC Bank and FMC. *See* Luke Decl. Exh. 5 (2006-4 Pool Supplement). The National Collegiate Funding LLC in turn sold the loan pool to NCSLT 2016-4 through a Deposit and Sale Agreement. *See* Luke Decl. Exh. 6 (Deposit and Sale Agreement). Both parts of the transaction were completed on December 7, 2006. *See* Luke Decl. Exh. 5 (2006-4 Pool Supplement); Exh. 6 (Deposit and Sale Agreement).

Lizarraga-Davis defaulted on his student loan on March 2, 2015. *See* Luke Dep. 64:15-65:5, ECF 63-2. According to Transworld, the loan was charged off and transferred to Transworld for post-default servicing, and Transworld assigned the loan to the law firm Patenaude & Felix ("P&F") for collection on March 7, 2017. *See id.* 65:1-66:19, 106:19-107:3. P&F sent Lizarraga-Davis a letter advising that he had an outstanding balance of more than $30,000 on a student loan

3

debt owed to NCSLT 2006-4. *See* Lizarraga-Davis Decl. ¶ 2, ECF 63-1. In response, Lizarraga-Davis asked P&F to provide him with verification of the debt. *See id.* ¶ 3. P&F sent Lizarraga-Davis a letter dated April 21, 2017, identifying itself as a debt collector and stating that documentation of Lizarraga-Davis's debt was enclosed. *See id.* ¶ 5 & Exh. 1 (P&F Letter dated 4/21/2017). Enclosed with the letter were the following documents: the Loan Request/Credit Agreement signed by Lizarraga-Davis on June 10, 2006; the Note Disclosure Statement dated June 26, 2006, identifying GMAC Bank as the lender and setting forth the annual percentage rate, finance charge, and schedule of payments on Lizarraga-Davis's student loan; and the 2006-4 Pool Supplement dated December 7, 2006, documenting the sale of a loan pool from GMAC Bank to The National Collegiate Funding LLC. *See id.* It does not appear that the documents included Schedule 1 to the 2006-4 Pool Supplement, identifying the loans included in the sale to The National Collegiate Funding LLC, or the Deposit and Sale Agreement transferring the loan pool from The National Collegiate Funding LLC to NCSLT 2006-4. *See id.*

Lizarraga-Davis sent P&F an email on May 15, 2017, asking for proof that NCSLT 2006-4 owned his student loan and for a payment history. *See* Lizarraga-Davis Decl. ¶ 7 and Exh. 2, ECF 63-1. P&F responded with a letter dated May 19, 2017, enclosing the same documents it had sent to Lizarraga-Davis with the prior letter. *See id.* ¶ 8 and Exh. 3. On May 31, 2017, Lizarraga-Davis sent P&F an email stating that the documents did not show how NCSLT 2006-4 was connected to his loan. *See id.* ¶ 9 and Exh. 4. Lizarraga-Davis again requested proof of ownership of the student loan and a payment history. *See id.* P&F did not respond. *See id.* ¶ 10.

In the midst of this correspondence, P&F filed suit against Lizarraga-Davis in the San Benito County Superior Court on behalf of NCSLT 2006-4. *See id.* ¶ 11 & Exh. 5. The complaint in that action was filed on May 6, 2017, asserting a claim for breach of contract and seeking damages in the amount of $32,726.55. *See id.* Shortly after that suit was filed, P&F sent Lizarraga-Davis a letter offering to settle and advising that NCSLT 2006-4 would discount a considerable portion of the student loan debt. *See id.* ¶ 12 & Exh. 6. Lizarraga-Davis, acting *pro se*, filed an answer and appeared at two case management conferences. *See id.* ¶¶ 13-16. Once the trial was scheduled, Lizarraga-Davis retained counsel. *See id.* ¶¶ 17-18. Less than three weeks

1  before the trial was scheduled to start, Lizarraga-Davis discovered that NCSLT 2006-4 had
2  dismissed the suit. *See id.* ¶ 20 and Exh. 9.
3      *The Present Action*
4      Lizarraga-Davis, represented by the same counsel he retained in the state court suit, filed
5  the present action against Transworld on July 9, 2018. *See* Compl., ECF 1.  He filed the operative
6  first amended complaint ("FAC") on October 8, 2018, asserting a single claim for violation of the
7  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq*. *See* FAC, ECF 23.
8  Lizarraga-Davis alleges that Transworld is the agent and service provider for at least fifteen
9  different NCSLTs, including NCSLT 2006-4.  FAC ¶ 7.  He alleges that Transworld engages law
10 firms across the country to collect on defaulted student loans by filing voluminous lawsuits in state
11 courts. *Id.* ¶ 9.  According to Lizarraga-Davis, law firms hired by Transworld have filed
12 approximately 40,000 collection lawsuits nationwide, even though neither the law firms nor
13 Transworld possess the documentation necessary to prove ownership of the accounts by the
14 NCSLTs. *Id.* ¶ 10.  Lizarraga-Davis contends that Transworld relies purely on the volume of
15 litigation, and the assumption that very few targeted consumers will defend the lawsuits. *Id.* ¶ 11.
16     The FAC cites a September 2017 Consent Order that resolved an administrative action the
17 Consumer Financial Protection Bureau ("CFPB") brought against Transworld for alleged unfair
18 and deceptive acts and practices, and a Consent Order in a similar civil suit the CFPB brought
19 against the NCSLTs, including NCSLT 2006-4, in the United States District Court for the District
20 of Delaware.  FAC ¶ 12-17.  Lizarraga-Davis alleges that Transworld's conduct toward him
21 "parallels its litigation activity that the CFPB has found to be unfair and deceptive to consumers."
22 FAC ¶ 35.
23     Lizarraga-Davis claims that Transworld's collection efforts violated the FDCPA, and that
24 those "violations include, but are not limited to, the following" conduct:  Transworld "has falsely
25 represented the character, amount, or legal status of a debt" in violation of 15 U.S.C. §
26 1692e(2)(A); "has threatened to take any action that cannot legally be taken or that is not intended
27 to be taken," in violation of 15 U.S.C. § 1692e(5); and "has used a false or deceptive means to
28 collect or attempt to collect a debt," in violation of 15 U.S.C. § 1692e(10).  FAC ¶ 48.  The alleged

1    violations of the FDCPA are grounded in Lizarraga-Davis's assertion that Transworld attempted
2    to collect on his student loan debt without documentation of NCSLT 2006-4's ownership of the
3    debt. Lizarraga-Davis does not suggest that the collection efforts misrepresented any other aspect
4    of his student loan debt, such as the existence of the loan, the loan amount, or the interest rate.
5         Transworld filed a motion for summary judgment on January 18, 2019, approximately six
6    months after this action was filed and before any meaningful discovery was taken. *See* Prior MSJ,
7    ECF 33. Transworld argued, among other things, that Lizarraga-Davis's FDCPA claim was
8    without merit because NCSLT 2006-4 owns his student loan debt and therefore had the right to
9    attempt collection on that debt. *See id*. The Court denied the motion, finding that it was unclear
10   whether the record contained all documents relevant to the loan and its asserted transfer to NCSLT
11   2006-4, and Lizarraga-Davis was entitled to see the loan documents in their entirety. *See* Order
12   Denying Prior MSJ, ECF 56. Although the Court normally permits only one summary judgment
13   motion per side in the life of a case, the Court indicated that it would permit Transworld to file a
14   limited renewed motion for summary judgment after development of the record. *See id*. at 10-11.
15   The Court limited that motion to Transworld's theory that its collection activities were supported
16   by documentation of NCSLT 2006-4's ownership of Lizarraga-Davis's student loan debt and
17   therefore did not violate the FDCPA. *See id*. The Court also limited any renewed motion to 5
18   pages, with opposition limited to 5 pages, and reply limited to 3 pages. *See id*. at 11.
19        Approximately three years after filing its first summary judgment motion, Transworld filed
20   its current renewed motion on March 22, 2022. *See* Def.'s Mot., ECF 62. Lizarraga-Davis has
21   filed a cross-motion for partial summary judgment on the issue of liability. *See* Pl.'s Mot., ECF
22   63. The Court heard argument on May 4, 2022. *See* Minute Entry, ECF 73.

**II.    LEGAL STANDARD**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Where the

6

1  non-moving party bears the burden of proof at trial, the moving party may satisfy the initial
2  burden on summary judgment by demonstrating an absence of evidence to support the non-
3  moving party's case. *See id.*

4  Once the moving party meets the initial burden, "the burden then shifts to the non-moving
5  party to designate specific facts demonstrating the existence of genuine issues for trial." *In re*
6  *Oracle Corp. Sec. Litig.*, 627 F.3d at 387. "[T]he non-moving party must come forth with
7  evidence from which a jury could reasonably render a verdict in the non-moving party's favor."
8  *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all
9  reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the
10 record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there
11 is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted). "A trial court
12 can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank*
13 *of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

**III. DISCUSSION**

"To establish a claim under the FDCPA, a plaintiff must prove the following elements:
"(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the
defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a
prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips &*
*Cohen Assocs., Ltd.*, No. 5:14-CV-05539-EJD, 2016 WL 3566981, at *3 (N.D. Cal. June 30,
2016).

Transworld's motion focuses only on the third element. Lizarraga-Davis's theory of
liability is that Transworld engaged in conduct prohibited by the FDCPA when it attempted to
collect on his student loan debt without documentation of NCSLT 2006-4's ownership of the debt.
Transworld argues that it engaged in collection activities with adequate documentation of NCSLT
2006-4's ownership of Lizarraga-Davis's student loan debt, and that its collection activities on
behalf of NCSLT 2006-4 therefore did not violate the FDCPA. Transworld seeks summary
judgment on that basis. Lizarraga-Davis opposes Transworld's motion, arguing that its proffered
documentation does not establish NCSLT 2006-4's ownership of his student loan debt.

7

1  In his cross-motion for partial summary judgment, Lizarraga-Davis argues that all three
2  elements of his FDCPA claim are satisfied, and that he is entitled to partial summary judgment on
3  liability.  On the third element, Lizarraga-Davis argues that Transworld engaged in collection
4  activities without documentation to show NCSLT 2006-4's ownership of his student loan debt, in
5  violation of the FDCPA.  Transworld does not dispute that Lizarraga-Davis has proved the first
6  two elements of his FDCPA claim.  Transworld opposes Lizarraga-Davis's motion only with
7  respect to the third element, arguing that its documentation establishes NCSLT 2006-4's
8  ownership of Lizarraga-Davis's student loan debt.

9  Because it is undisputed that the first two elements of Lizarraga-Davis's FDCPA claim are
10 satisfied, the Court touches on those element only briefly and devotes the bulk of its discussion to
11 the third element, which is in dispute.  Before addressing the substance of the parties' cross-
12 motions, however, the Court takes up Lizarraga-Davis's request for judicial notice.

13 Lizarraga-Davis seeks judicial notice of documents filed in other proceedings involving
14 Transworld and NCSLT 2006-4.  *See* Pl.'s RJN, ECF 64.  Those documents include the Consent
15 Order in the administrative action the CFPB brought against Transworld, an Assurance of
16 Discontinuance issued in an investigation of Transworld's debt collection practices commenced by
17 the Office of the Attorney General of the State of New York; and court documents showing the
18 disposition of numerous civil collection actions filed on behalf of NCSLTs.  *See id*.  The Court
19 "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella,*
20 *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  The Court therefore accepts the
21 proffered documents as evidence that Transworld and the NCSLTs have been involved in adverse
22 proceedings regarding their collection activities, and that the NCSLTs have filed numerous civil
23 collection actions on defaulted student loans.  In fact, Transworld has stipulated that
24 approximately 37,689 such suits were filed on behalf of NCSLTs between November 1, 2014 and
25 April 25, 2016.  *See* Stip., ECF 63-3.  The Court will not, however, take judicial notice of any
26 specific facts discussed in the documents.  *See Whitaker v. Nick the Greek Santa Clara LLC*, No.
27 21-CV-09338-BLF, 2022 WL 2343044, at *2 (N.D. Cal. June 29, 2022) (taking judicial notice of
28 publicly filed documents but not the specific factual findings and legal conclusions therein).  As so

1 limited, the request for judicial notice is GRANTED.

2 The Court next turns to the elements of Lizarraga-Davis's FDCPA claim.

### A. Collection Activity Arising from a Consumer Debt

Lizarraga-Davis clearly has been the subject of collection activity. He submits letters sent to him by P&F stating expressly that they were attempts to collect a debt. *See* Lizarraga-Davis Decl. Exhs. 1, 3, ECF 63-1. The San Benito County Superior Court action sought recovery of Lizarraga-Davis's student loan debt. *See id*. Exh. 5. The student loan is a consumer debt within the meaning of the FDCPA. *See Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-CV-1704-MC, 2013 WL 3995004, at \*3 (D. Or. Aug. 1, 2013) ("[P]laintiff's student loan is 'debt' subject to the FDCPA.").

The Court concludes that on his motion for partial summary judgment, Lizarraga-Davis has met his initial burden on the first element of his FDCPA claim. The burden thus shifts to Transworld to demonstrate the existence of disputed facts with respect to the first element. Transworld has not offered any argument on this element. The Court therefore finds that Lizarraga-Davis has established the first element.

### B. Debt Collector

The FDCPA defines debt collector to include any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Numerous courts have held that a loan servicer is a debt collector if it began servicing the loan after it was in default. *See, e.g, Myrette-Crosley v. Ditech Home Loans*, No. 3:17-CV-05528-JD, 2018 WL 3159727, at \*2 (N.D. Cal. June 28, 2018) ("While the Ninth Circuit has not spoken directly on the issue, district courts in this circuit and other courts of appeal agree that a mortgage loan servicer is a debt collector under the FDCPA if it acquires servicing for a loan after the loan is in default."); *Johnson v. Ocwen Loan Servicing, LLC*, No. EDCV 17-01373 JGB (SPx), 2017 WL 10619758, at \*4 (C.D. Cal. Oct. 10, 2017) ("If the loan servicer acquired the loan after it was in default, it constitutes a debt collector under the FDCPA."). At least one court has held that Transworld "can be liable for its attorneys' debt collection activity." *Merrill v. Transworld Sys., Inc.*, No. 1:20-CV-183, 2020 WL 8474736, at \*6

(W.D. Mich. Dec. 1, 2020), *report and recommendation adopted*, No. 1:20-CV-183, 2021 WL 210715 (W.D. Mich. Jan. 21, 2021).

Lizarraga-Davis has presented evidence that Transworld began servicing his student loan after it was in default, and that Transworld placed his loan account with P&F for collection. *See* Luke Dep. 64:15-66:19, 106:19-107:3, ECF 63-2. This evidence is sufficient to meet Lizarraga-Davis's initial burden on the second element of his FDCPA claim. The burden thus shifts to Transworld to demonstrate the existence of disputed facts with respect to the second element. Transworld has not offered any argument on this element. The Court therefore finds that Lizarraga-Davis has established the second element.

### C. Prohibited Act under the FDCPA

In his FAC, Lizarraga-Davis alleges that Transworld's debt collection activities violated the FDCPA, and that those "violations include, but are not limited to" violations of three particular provisions: 15 U.S.C. §§ 1692e(2)(A), 1692e(5) and 1692e(10). Section 1692e provides generally that a "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute gives specific examples of prohibited conduct in sixteen subsections. *See id.* The subsections mentioned in the FAC prohibit the false representation of "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). In his motion for partial summary judgment, Lizarraga-Davis asserts that Transworld's conduct also violated a fourth provision of the FDCPA, 15 U.S.C. § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Transworld argues that Lizarraga-Davis may not seek summary judgment for violation of § 1692f, because that section was not pled in the FAC. As noted above, Lizarraga-Davis pled violations of the FDCPA including, but not limited to, the specified provisions. Moreover, a plaintiff need not plead the specific statutory provision giving rise to liability, so long as the

1  factual bases for the claim are pled.  *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).
2  The Court finds that the FAC encompasses the asserted violation of § 1692f.

### 1.   Transworld's Motion for Summary Judgment

Transworld moves for summary judgment on Lizarraga-Davis's FDCPA claim. Transworld's asserted violations of the statutory provisions discussed above, including § 1692f, are grounded in Lizarraga-Davis's claim that Transworld attempted to collect on his student loan debt on behalf of NCSLT 2006-4 without the ability to prove NCSLT 2006-4's ownership of the debt.  Transworld contends that Lizarraga-Davis cannot prevail on his theory because Transworld had documentation to prove NCSLT 2006-4's ownership of the debt.  Transworld attempts to meet its initial burden on summary judgment with the declaration of Bradley Luke, its Director of Operations, and documents attached thereto.  *See* Luke Decl., ECF 62-1.

As discussed above, Transworld contends that Lizarraga-Davis's loan was sold to NCSLT 2006-4 in a two-part transaction in which GMAC Bank sold a loan pool to The National Collegiate Funding LLC on December 7, 2006, and The National Collegiate Funding LLC immediately resold the loan pool to NCSLT 2016-4 on the same date.  Exhibit 5 to Mr. Luke's Declaration contains the 2006-4 Pool Supplement to the Note Purchase Agreement between GMAC Bank and FMC.  *See* Luke Decl. Exh. 5.  The 2006-4 Pool Supplement identifies the loans included in the pool sold to The National Collegiate Funding LLC as those loans "described in the attached Schedule 1."  *Id*.  There is no document identified as "Schedule 1" attached to the 2006-4 Pool Supplement contained in Exhibit 5.

Transworld asserts that the last two pages of Exhibit 5, neither of which is identified as Schedule 1, prove that Lizarraga-Davis's loan was included in Schedule 1.  The second-to-last page, which is untitled, appears to be a spreadsheet with all but a single line blacked out.  The unredacted line contains information about Lizarraga-Davis's loan.  Mr. Luke represents that the page is an excerpt of the Schedule 1 referenced in the 2006-4 Pool Supplement.  *See* Luke Decl. ¶ 20 & n.3.  Mr. Luke states that Transworld elected not to produce the entire Schedule 1 (which presumably would have been labeled as such) because it contains sensitive consumer information relating to other borrowers.  *See id.*

11

1    Lizarraga-Davis objects to the single-page, redacted excerpt of Schedule 1 on the ground
2    that it was not produced in discovery. *See* Heath Decl. ¶ 5, ECF 63-2. The Federal Rules of Civil
3    Procedure require a party to provide to the opposing party "a copy – or a description by category
4    and location – of all documents, electronically stored information, and tangible things that the
5    disclosing party has in its possession, custody, or control and may use to support its claims or
6    defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). If a
7    party fails to provide such information, "the party is not allowed to use that information or witness
8    to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
9    justified or is harmless." Fed. R. Civ. P. 37(c)(1). Lizarraga-Davis's counsel submits a
10   declaration stating that Transworld did not produce the redacted excerpt of Schedule 1 in
11   discovery. *See* Heath Decl. ¶¶ 4-5, ECF 67-1. Counsel saw the document for the first time when
12   Transworld filed its current motion for summary judgment. *See id.*

13   In its reply in support of its motion for summary judgment, Transworld asserts that "[t]he
14   Schedule 1 excerpt has long been made available to Plaintiff and he cannot credibly challenge the
15   trustworthiness of the information." Def.'s Reply at 2, ECF 69. However, Transworld does not
16   provide any evidence that it produced the redacted excerpt of Schedule 1 in discovery. "A trial
17   court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr*,
18   285 F.3d at 773. The only admissible evidence before the Court on this point is the sworn
19   declaration of Lizarraga-Davis's counsel stating that the redacted excerpt of Schedule 1 was not
20   produced in discovery and was not disclosed to Lizarraga-Davis until Transworld filed its current
21   summary judgment motion in March 2022. *See* Heath Decl. ¶¶ 4-5, ECF 67-1.

22   Transworld's failure to produce the redacted excerpt of Schedule 1 was not justified and
23   was not harmless. The central dispute in this case is ownership of Lizarraga-Davis's loan. The
24   Court denied Transworld's first motion for summary judgment because the record was not
25   sufficiently developed on the loan documents and asserted sale of the loan. The Court finds it
26   startling, to say the least, that Transworld failed to produce in discovery the crucial document –
27   Schedule 1 to the 2006-4 Pool Supplement, which identifies the loans included in the loan pool
28   sold to The National Collegiate Funding LLC. Moreover, Lizarraga-Davis's counsel specifically

12

1  requested all documents relating to assignment of the loan during meet-and-confer regarding

2  discovery responses. *See* Heath Decl. ¶ 4-5. Transworld's failure to produce Schedule 1 is

3  particularly surprising given the backdrop of administrative actions, investigations, and civil

4  lawsuits addressing its loan collection practices. As noted above, the Court takes judicial notice of

5  the existence of those actions.

6  In conclusion, the Court finds that Transworld violated its discovery obligations by failing

7  to produce the redacted excerpt of Schedule 1 that it now seeks to rely on. That violation was

8  neither harmless nor justified. Lizarraga-Davis's objection to the redacted excerpt of Schedule 1,

9  included as the second-to-last page of Exhibit 5, is SUSTAINED.

10  The last page of Exhibit 5 is a document titled "National Collegiate Student Loan Trust

11  2006-4 Roster" ("the Roster"). It contains details of Lizarraga-Davis's loan, including the identity

12  of GMAC Bank as the lender, the disbursement date, and the loan amount. Mr. Luke refers to this

13  Roster as another "excerpt" of Schedule 1. Luke Decl. ¶ 20. However, his deposition testimony

14  makes clear that the Roster is not actually an excerpt of Schedule 1 at all, but rather is a document

15  created from scratch by Transworld after Lizarraga-Davis's loan was placed with the law firm

16  P&F for collection. *See* Luke Dep. 87:15-88:7, 93:5-12, 106:19-107:3.

17  Lizarraga-Davis objects to the Roster as hearsay. Transworld argues that the Roster is

18  admissible under the business records exception to the hearsay rule. Mr. Luke states in his

19  declaration that all documents attached to his declaration are business records. *See* Luke Decl. ¶ 5.

20  Under the business records exception, codified in Federal Rule of Evidence 803(6), "Records of a

21  Regularly Conducted Activity" may be excepted from the hearsay rule. Fed. R. Evid. 803(6). For

22  a record to be admissible as a business record, "it must be (1) made by a regularly conducted

23  business activity, (2) kept in the regular course of that business, (3) the regular practice of that

24  business to make the memorandum, (4) and made by a person with knowledge or from

25  information transmitted by a person with knowledge." *Clark v. City of Los Angeles*, 650 F.2d

26  1033, 1036-37 (9th Cir. 1981) (internal quotation marks and citation omitted). As Lizarraga-

27  Davis points out, Mr. Luke admitted in his deposition that the Roster was created after Lizarraga-

28  Davis's student loan debt was placed with P&F for collection. P&F filed a civil suit against

Lizarraga-Davis shortly thereafter. "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness." *Clark*, 650 F.2d at 1037. The Court finds that Transworld has not established that the Roster is admissible under the business records exception.

Transworld's reliance on *Medina v. Nat'l Collegiate Student Loan Tr. 2*, No. 17-05276-LT7, 2020 WL 5545682 (Bankr. S.D. Cal. Aug. 4, 2020), is misplaced. *Medina* was another case involving the admissibility of loan documents authenticated by Mr. Luke. However, the issue addressed by that decision was whether Mr. Luke could authenticate loan documents that he did not create, but were received by him from other sources. *See id.* at *2. The documents in question were a Note Disclosure Statement, Credit Agreement, Guaranty Agreement, 2006-3 Pool Supplement, Deposit and Sale Agreement, and similar documents. The court held that "[a] current holder of business records may rely on business records created before their receipt, which is common in the case of assigned debt." *Id*. Nothing in the decision speaks to the issue before this Court, whether a "Roster" such as the one created by Transworld for P&F's use in a collection action is admissible under the business records exception to the hearsay rule.

Lizarraga-Davis's objection to the Roster is SUSTAINED.

The redacted excerpt of Schedule 1 and the Roster are the only documents Transworld has submitted to show that Lizarraga-Davis's loan was included in the loan pool sold to The National Collegiate Funding LLC, and ultimately to NCSLT 2016-4, on December 7, 2006. Having concluded that those documents are inadmissible, the Court finds that Transworld has not met its initial burden to show that its collection activities regarding Lizarraga-Davis's student loan did not constitute prohibited conduct under the FCDPA.

Transworld's motion for summary judgment is DENIED.

### 2. Lizarraga-Davis's Motion for Partial Summary Judgment

Lizarraga-Davis moves for partial summary judgment as to Transworld's liability on his FDCPA claim. He seeks to meet his initial burden on the third element of his claim by establishing that Transworld's debt collection activities were undertaken without an ability to prove NCSLT 2016-4's ownership of his student loan debt. Such activity would constitute

14

1  prohibited conduct under both provisions of the FDCPA alleged in this case, 15 U.S.C. §§ 1692e
2  and 1692f.  A debt collector's suit to collect on a debt that it is not entitled to collect, because it
3  lacks the requisite documentation, violates § 1692f (prohibiting use of "unfair or unconscionable
4  means" to collect on a debt), § 1692e(2)(A) (prohibiting use of misrepresentation regarding "the
5  character, amount, or legal status" of the debt); § 1692e(5) (prohibiting use of "deceptive means"
6  to collect on a debt), and § 1692e(10) (prohibiting use of "unfair or unconscionable means" to
7  collect on a debt).  *See Young v. Unifund CCR Partners*, No. 09 C 04206, 2014 WL 4698646, at
8  *4 (N.D. Ill. Sept. 22, 2014); *see also Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549, 551
9  (9th Cir. 2020) (Transworld's attempts to collect debt with false affidavits and without the
10 necessary documentation to support ownership gave rise to claim under § 1692f); *Merrill*, 2020
11 WL 8474736, at *9 (Transworld's attempt to collect debt based on misrepresentation that the
12 Trusts owned the loans in question and the filing of a false or misleading affidavit gave rise to
13 claim under § 1692e(2)(A)).

14 Lizarraga-Davis argues that Transworld engaged in collection activity without
15 documentation to show NCSLT 2016-4's ownership of his student loan debt.  He raises a number
16 of evidentiary objections to the documents submitted by Transworld, including the redacted
17 excerpt of Schedule 1 and the Roster upon which Transworld relies.  For the reasons discussed
18 above, those documents are inadmissible.  Accordingly, the Court finds that Lizarraga-Davis has
19 met his initial burden of showing that Transworld's collection activities violated the FDCPA.  The
20 burden thus shifts to Transworld to demonstrate the existence of disputed facts.

21 Transworld argues that the documents attached to Mr. Luke's declaration are sufficient to
22 prove ownership, but Transworld's argument is without merit absent documents showing that
23 Lizarraga-Davis's loan was included in Schedule 1, that is, the pool of loans sold to The National
24 Collegiate Funding LLC, and ultimately to NCSLT 2016-4.  Transworld also suggests that
25 Lizarraga-Davis lacks standing to challenge the assignment of his student loan.  That argument
26 misses the mark.  Lizarraga-Davis is not challenging the assignment per se; he is challenging
27 Transworld's documentation of NCSLT 2016-4's ownership of his loan.  He is entitled to raise
28 that challenge because collection activity without an ability to show ownership of the debt violates

the FDCPA.

Mr. Luke states in his declaration that he is "certain" that Lizarraga-Davis's loan was included in Schedule 1 to the 2006-4 Pool Supplement, which identifies the loans included in the loan pool sold to The National Collegiate Funding LLC. Luke Decl. ¶ 26. Mr. Luke's bare certainty is not enough to create disputed issues of fact. The Court can consider only admissible *evidence* in ruling on summary judgment. *See Orr,* 285 F.3d at 773. The issue before the Court is whether Transworld has presented evidence sufficient to dispute Lizarraga-Davis's showing that Transworld engaged in collection activity without documentation to prove NCSLT 2016-4's ownership of his student loan debt. The redacted excerpt of Schedule 1 and the Roster, upon which Transworld relies, are inadmissible. The Court finds that Transworld has failed to present evidence sufficient to create a factual dispute whether it engaged in collection activity prohibited by the FDCPA.

Having reached this conclusion, the Court need not address Lizarraga-Davis's other evidentiary objections to the loan and transfer documents. The Court finds that Lizarraga-Davis is entitled to summary judgment on his claim that Transworld violated §§ 1692e and 1692f of the FDCPA.

Lizarraga-Davis's motion for partial summary judgment on liability is GRANTED.

**IV. ORDER**

(1) Lizarraga-Davis's motion for partial summary judgment is GRANTED;

(2) Transworld's motion for summary judgment is DENIED; and

(3) This order terminates ECF 62 and 63.

Dated: July 15, 2022

*[signature: Beth Labson Freeman]*

BETH LABSON FREEMAN
United States District Judge